# No. 15-5139

In The

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

**G.G.M., a minor, by and through
her Guardian ad Litem LORENA MORA,**
*Petitioner—Appellant,*

*v.*

**SECRETARY OF HEALTH & HUMAN SERVICES,**
*Defendant—Appellee.*

---

APPEAL FROM THE UNITED STATES COURT OF FEDERAL CLAIMS
ELAINE D. KAPLAN, JUDGE • CASE NO. 1:13-vv-00421-EDK

---

## UNOPPOSED MOTION FOR JUDICIAL NOTICE; DECLARATION OF SCOTT P. DIXLER

---

**HORVITZ & LEVY LLP**
PEDER K. BATALDEN
SCOTT P. DIXLER
15760 VENTURA BOULEVARD, 18TH FLOOR
ENCINO, CALIFORNIA  91436-3000
(818) 995-0800

**LAW OFFICES OF DANNY SOONG**
DANNY C. SOONG
100 NORTH BARRANCA STREET, SUITE 700
WEST COVINA, CALIFORNIA  91791
(626) 858-2068

ATTORNEYS FOR PETITIONER AND APPELLANT
**G.G.M., A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM LORENA MORA**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................ii

UNOPPOSED MOTION FOR JUDICIAL NOTICE ................................ 1

    A.    Introduction.................................................................. 1

    B.    Filings in state and federal courts are judicially noticeable, and such documents are relevant to this appeal. .................................................................... 1

    C.    The Court should judicially notice eight documents from *G.M. v. Sanofi*.......................................................... 2

CONCLUSION ...................................................................... 4

DECLARATION OF SCOTT P. DIXLER ................................... 5

EXHIBITS

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Biomed. Patent Mgmt. Corp. v. Cal., Dep't of Health Servs.,*
  505 F.3d 1328 (Fed. Cir. 2007) ............................................................1

*Harris v. Cnty. of Orange,*
  682 F.3d 1126 (9th Cir. 2012) ...............................................................2

## Rules

Court of Federal Claims, rule 60(b) .........................................................2

Fed. R. Civ. P. 11 ....................................................................................6

Fed. R. Evid.
  201(b)(2) .................................................................................................1
  201(c)(2) .................................................................................................1
  201(d).......................................................................................................1

# UNOPPOSED MOTION FOR JUDICIAL NOTICE

## A.    Introduction.

Appellant G.G.M. asks this Court to take judicial notice of certain pleadings and orders filed in a pending, related case entitled *G.M. v. Sanofi Pasteur, Inc.*, No. 2:14-cv-9549-FMO-AS (C.D. Cal.).  Citations to these documents are included in G.G.M.'s opening brief, which is filed concurrently with this motion.

## B.    Filings in state and federal courts are judicially noticeable, and such documents are relevant to this appeal.

A court may "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  The court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2). Circuit courts may properly exercise these powers.  *See* Fed. R. Evid. 201(d).

Courts routinely take judicial notice of "court filings, which are matters of public record."  *Biomed. Patent Mgmt. Corp. v. Cal., Dep't of Health Servs.*, 505 F.3d 1328, 1331 n.1 (Fed. Cir. 2007) (considering

"several court filings from prior litigation between the[ ] parties"); *see also Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts.").

Here, G.G.M. requests that this Court take judicial notice of several documents filed in connection with her pending lawsuit against Sanofi Pasteur, Inc. (Sanofi), the manufacturer of the vaccine that injured her. These documents provide procedural context to the motion to reinstate G.G.M.'s Vaccine Act petition under Rule 60(b) of the United States Court of Federal Claims, the subject of the appeal. These documents also show that G.G.M.'s efforts to obtain compensation from Sanofi have been unsuccessful, illustrating the necessity of Rule 60(b) relief in this case.

**C.    The Court should judicially notice eight documents from *G.M. v. Sanofi*.**

G.G.M. asks this Court to take judicial notice of the eight documents described below (true and correct copies of which are attached as exhibits to the accompanying declaration).

<u>Exhibit 1</u> is the complaint that G.G.M. filed in California state court against Sanofi on October 14, 2014.

Exhibit 2 is Sanofi's notice of removal, filed on December 16, 2014.

Exhibit 3 is Sanofi's motion to dismiss G.G.M.'s complaint, filed on February 10, 2015.

Exhibit 4 is a district court order granting Sanofi's motion to dismiss, dated April 28, 2015.

Exhibit 5 is G.G.M.'s first amended complaint, filed on May 14, 2015.

Exhibit 6 is Sanofi's motion to dismiss G.G.M.'s first amended complaint, filed on June 29, 2015.

Exhibit 7 is Sanofi's motion for sanctions under Fed. R. Civ. P. 11, filed on July 16, 2015.

Exhibit 8 is a district court order on Sanofi's sanctions motion, dated October 19, 2015.

## CONCLUSION

This Court should take judicial notice of the exhibits attached to the accompanying declaration.

January 4, 2016            **HORVITZ & LEVY LLP**
                            PEDER K. BATALDEN
                            SCOTT P. DIXLER
                          **LAW OFFICES OF DANNY SOONG**
                            DANNY C. SOONG


                          By:  s/ *Scott P. Dixler*
                          _____
                                    Scott P. Dixler

                          Attorneys for Petitioner and Appellant
                          **G.G.M., a minor, by and through her**
                          **Guardian ad Litem LORENA MORA**

4

# DECLARATION OF SCOTT P. DIXLER

I, Scott P. Dixler, declare:

1.    I am counsel of record for plaintiff and appellant G.G.M., a minor, by and through her Guardian ad Litem Lorena Mora, in this appeal.

2.    Attached as Exhibit 1 to this declaration is a true and correct copy of the complaint that G.G.M. filed in California state court against Sanofi Pasteur, Inc. (Sanofi) on October 14, 2014.

3.    Attached as Exhibit 2 to this declaration is a true and correct copy of Sanofi's notice of removal, filed on December 16, 2014.

4.    Attached as Exhibit 3 to this declaration is a true and correct copy of Sanofi's motion to dismiss G.G.M.'s complaint, filed on February 10, 2015.

5.    Attached as Exhibit 4 to this declaration is a true and correct copy of a district court order granting Sanofi's motion to dismiss, dated April 28, 2015.

6.    Attached as Exhibit 5 to this declaration is a true and correct copy of G.G.M.'s first amended complaint, filed on May 14, 2015.

7. Attached as Exhibit 6 to this declaration is a true and correct copy of Sanofi's motion to dismiss G.G.M.'s first amended complaint, filed on June 29, 2015.

8. Attached as Exhibit 7 to this declaration is a true and correct copy of Sanofi's motion for sanctions under Fed. R. Civ. P. 11, filed on July 16, 2015.

9. Attached as Exhibit 8 to this declaration is a true and correct copy of a district court order on Sanofi's sanctions motion, dated October 19, 2015.

10. On December 30, 2015, I e-mailed Claudia Gangi, counsel for appellee, and informed her of this motion. She responded on January 4, 2016, that she has no objection to the motion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on January 4, 2016, at Encino, California.

s/ *Scott P. Dixler*

1

**SUMMONS**
*(CITACION JUDICIAL)*

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

SANOFI PASTEUR INC. and DOES 1 through 100 *inclusive*

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

GENESIS MORA, a minor, by and through Her Guardian Ad Litem, LORENA MORA



FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ORIGINAL FILED

NOV 12 2014

LOS ANGELES
SUPERIOR COURT

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*  Los Angeles Superior Court

CASE NUMBER:
*(Número del Caso):*  **BC560804**

Central District-
Stanley Mosk Courthouse

111 N. Hill St.
Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Office of Danny Soong-100 N. Barranca St., Suite 700, West Covina, CA 91791 626 858-2068

DATE: **NOV 12 2014**
*(Fecha)*

SHERRI R. CARTER

Clerk, by
*(Secretario)*  MARIA E. VALENZUELA

, Deputy
*(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.

2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):*  SANOFI PASTEUR INC.

under: ☒ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☒ by personal delivery on *(date):*  11/26/14     12:25 pm

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CIV-010

| | |
|---|---|
| ATTORNEY *(Name, State Bar number, and address):*<br>Law Office of Danny Soong (SBN 192045)<br>100 N. Barranca St., Suite 700<br>West Covina, CA. 91791<br><br>TELEPHONE NO.: 626-858-2068   FAX NO. *(Optional):*  626-858-1922<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):*  Plaintiff, GENESIS MORA, a minor | FOR COURT USE ONLY<br><br>**CONFORMED COPY**<br>**ORIGINAL FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>OCT 1 5 2014<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By James Cho, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS: 111 N. Hill St.
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Central Stanely Mosk

PLAINTIFF/PETITIONER: GENESIS MORA, a minor

DEFENDANT/RESPONDENT: SANOFI PASTEUR INC.

| | |
|---|---|
| **APPLICATION AND ORDER FOR APPOINTMENT**<br>**OF GUARDIAN AD LITEM—CIVIL**<br>☑ **EX PARTE** | CASE NUMBER:<br>BC5 6 0 8 0 4 |

**NOTE:** *This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.*

1. Applicant *(name):* LORENA MORA                                                                      is
   a. ☑ the parent of *(name):* GENESIS MORA
   b. ☐ the guardian of *(name):*
   c. ☐ the conservator of *(name):*
   d. ☐ a party to the suit.
   e. ☐ the minor to be represented *(if the minor is 14 years of age or older).*
   f. ☐ another interested person *(specify capacity):*

2. This application seeks the appointment of the following person as guardian ad litem *(state name, address, and telephone number):*
   LORENA MORA        (323) 712-9666
   393 N. Prospero Dr.
   Covina, 91723

3. The guardian ad litem is to represent the interests of the following person *(state name, address, and telephone number):*
   GENESIS MORA        (323) 712-9666
   393 N. Prospero Dr.
   Covina, 91723

4. The person to be represented is:
   a. ☑ a minor *(date of birth):* February 8, 2010
   b. ☐ an incompetent person.
   c. ☐ a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. ☑ the person named in item 3 has a cause or causes of action on which suit should be brought *(describe):*
      1. STRICT PRODUCT LIABILITY (Manufacturing Defect)
      2. STRICT PRODUCT LIABILITY (Design Defect: Consumer Expectation Test)
      3. STRICT PRODUCT LIABILITY (Design Defect: Risk-Benefit Test)
      4. STRICT PRODUCT LIABILITY (Failure to Warn)  5. NEGLIGENT PRODUCT LIABILITY
   ☐ Continued on Attachment 5a.                                    (Failure to WARN)

Page 1 of 2

**APPLICATION AND ORDER FOR APPOINTMENT**
**OF GUARDIAN AD LITEM—CIVIL**
Code of Civil Procedure,
§ 372 et seq.

CIV-010

| | CASE NUMBER: |
|---|---|
| PLAINTIFF/PETITIONER: GENESIS MORA, a minor | |
| DEFENDANT/RESPONDENT: SANOFI PASTEUR INC. | |

5. b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

   c. ☐ the person named in item 3 has no guardian or conservator of his or her estate.

   d. ☐ the appointment of a guardian ad litem is necessary for the following reasons (specify):

   ☐ Continued on Attachment 5d.

6. The proposed guardian ad litem's relationship to the person he or she will be representing is:
   a. ☑ related (state relationship): Mother
   b. ☐ not related (specify capacity):

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person. (If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed):

   ☐ Continued on Attachment 7.

Danny C. Soong
_____
(TYPE OR PRINT NAME)                                    ▶ _____
                                                          (SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: October 1, 2014

LORENA MORA
_____
(TYPE OR PRINT NAME)                                    ▶ _____
                                                          (SIGNATURE OF APPLICANT)

**CONSENT TO ACT AS GUARDIAN AD LITEM**

I consent to the appointment as guardian ad litem under the above petition.
Date: October 1, 2014

LORENA MORA
_____
(TYPE OR PRINT NAME)                                    ▶ _____
                                                          (SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

ORDER  ☒ EX PARTE

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that (name): Lorena Mora
is hereby appointed as the guardian ad litem for (name): Genesis Mora
for the reasons set forth in item 5 of the application.

Date: OCT 2 1 2014

ROBERT HARRISON
_____
JUDICIAL OFFICER
☐ SIGNATURE FOLLOWS LAST ATTACHMENT

CIV-010 [Rev. January 1, 2008]

**APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL**

Page 2 of 2

1  Danny Soong, Bar No. 192045
   **LAW OFFICES OF DANNY SOONG**
2  100 N. Barranca St, Suite 700
   West Covina, CA 91791
3  Telephone:   (626) 858-2068
   Fax:         (626) 858-1922
4
   Attorney for Plaintiff, GENESIS MORA,
5  a minor, by and through Her Guardian Ad
   Litem, LORENA MORA
6

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 14 2014

Sherri R. Carter, Executive Officer/Clerk
By Myrna Beltran, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES (CENTRAL)

BC 5 6 0 8 0 4

| | |
|---|---|
| GENESIS MORA, a minor, by and through her Guardian Ad Litem, LORENA MORA | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | 1. **STRICT PRODUCT LIABILITY (Manufacturing Defect)** |
| SANOFI PASTEUR INC. and DOES 1 through 100, inclusive, | 2. **STRICT PRODUCT LIABILITY (Design Defect: Consumer Expectation Test)** |
| Defendants. | 3. **STRICT PRODUCT LIABILITY (Design Defect: Risk-Benefit Test)** |
| | 4. **STRICT PRODUCT LIABILITY (Failure to Warn)** |
| | 5. **NEGLIGENT PRODUCT LIABILITY (Failure to Warn)** |

Comes now, Plaintiff, GENESIS MORA, a minor, by and through her Guardian Ad Litem, LORENA MORA, alleges and complains as follows:

<u>GENERAL ALLEGATIONS</u>

1.      Plaintiff, GENESIS MORA, is a minor residing in the County of Los Angeles, State of California, and, at all times, relevant hereto was under the age of 18.

1

COMPLAINT FOR DAMAGES

2.      At all times relevant hereto, Plaintiff, LORENA MORA, is an adult residing in the County of Los Angeles, State of California and the mother and Guardian Ad Litem of Plaintiff, GENESIS MORA.

3.      Plaintiff, GENESIS MORA, was born on February 8, 2010.

4.      The pregnancy and vaginal delivery of GENESIS MORA by LORENA MORA, were normal and without any complications, respectively.

5.      On September 5, 2012, at the age of two years and approximately seven months, GENESIS MORA received an influenza vaccination from Chhoeuy Ov Yam, M.D. at Kaiser Permanente in Baldwin Park, California.

6.      Prior to the administration of her September 5, 2012, influenza vaccination, GENESIS MORA was in good health and did not suffer from any medical conditions.

7.      On the morning of September 7, 2011, two days after receiving her influenza vaccination at Kaiser Permanente in Baldwin Park, GENESIS MORA started to complain of stomach pain to her mother, LORENA MORA.   LORENA MORA told GENESIS MORA to go sit on the couch.   As GENESIS MORA attempted to walk toward the couch, she stumbled forward onto the floor, started crawling on her hands and was unable to stand up to walk.   LORENA MORA immediately drove GENESIS MORA to the Emergency Room (E.R.) at Kaiser Permanente in Baldwin Park, California to be seen by Chhoeuy Ov Yam, M.D.

8.      Following a physical examination of GENESIS MORA on September 7, 2012, Dr. Chhoeuy Ov Yam diagnosed paralysis and rendered the differential diagnoses of botulism, transverse myelitis and Guillain-Barre Syndrome.

9.      On September 7, 2012, GENESIS MORA was transferred by ambulance from Kaiser Permanente in Baldwin Park to Kaiser Permanente on Sunset, in Los Angeles for further medical testing and treatments.

10.     From September 7, 2012, until October 6, 2012, GENESIS MORA was hospitalized at Kaiser Permanente on Sunset, in Los Angeles where she underwent extensive medical testing and treatments.   The reasons for admission were identified as ascending paralysis, weakness of leg,

2

COMPLAINT FOR DAMAGES

transverse myelitis and radiological examination.   The principal/secondary diagnoses were transverse myelitis, neurogenic bladder and paraplegia.

11.     Plaintiff GENESIS MORA has remained a permanent paraplegic since September 7, 2012, as direct result of her influenza vaccination on September 5, 2012, at Kaiser Permanente in Baldwin Park, California.

12.     At all times relevant hereto, Defendant SANOFI PASTEUR INC. is incorporated with its principal place of business located on Discovery Drive in Swiftwater, Pennsylvania.

13.     Defendant SANOFI PASTEUR INC. is in the business of designing, manufacturing, testing, inspecting, assembling, distributing, selling, supplying and placing into the stream of commerce influenza vaccinations across the United States including the subject influenza vaccination ultimately administered to Plaintiff GENESIS MORA at Kaiser Permanente in Baldwin Park, California on September 5, 2012.

14.     At all times relevant herein, Defendant SANOFI PASTEUR INC. was engaged in the business of designing, manufacturing, testing, inspecting, assembling, distributing, selling, supplying and placing into the stream of commerce influenza vaccinations in California and, therefore, availed itself to the jurisdiction of the courts of State of California.

15.     At all times relevant herein, Defendant SANOFI PASTEUR INC. profited from designing, manufacturing, testing, inspecting, assembling, distributing, selling, supplying and placing into the stream of commerce influenza vaccinations in California and, therefore, availed itself to the jurisdiction of the courts of the State of California.

16.     At all times relevant herein, Defendant SANOFI PASTEUR INC. was obligated to pay state taxes, payroll taxes, business taxes to the State of California for influenza vaccinations which were distributed, sold, supplied and placed in California and, therefore, availed itself to the jurisdiction of the courts of the State of California.

17.     On or about July 25, 1988, Defendant SANOFI PASTEUR INC. filed a business registration with the California Secretary of State as an active corporation with its entity address on Discovery Drive, in Swiftwater, Pennsylvania.   As of September 29, 2014, the business registration has remained current on the Secretary of State of California Business Portal.  CT Corporation System has

3

COMPLAINT FOR DAMAGES

1 | been designated as the Agent of Service of Process for Defendant SANOFI PASTEUR INC. in
2 | California and is located at 818 West Seventh St., 2nd Floor, Los Angeles, CA.

3 | 18.  On or about June 18, 2013, Plaintiff GENESIS MORA filed a Petition for Vaccine
4 | Compensation in the U.S. Court of Federal Claims.  After more than a year of litigation in the Vaccine
5 | Court, the Vaccine Court entered judgment and dismissed the Petition on August 29, 2014.  On
6 | September 26, 2014, Plaintiff GENESIS MORA filed a Notice of Election to File A Civil Action.
7 | Attached hereto as Exhibit "A" is a copy of the Judgment.  Attached hereto as Exhibit "B" is a copy of
8 | the Notice of Election to File A Civil Action.

9 | 19.  The true names and capacities, whether individual, corporate, associate or otherwise and
10 | the true involvement of Defendants sued herein as DOES 1 through 100, inclusive, are unknown to
11 | Plaintiff, who therefore sues said Defendants by fictitious names and will amend this Complaint to show
12 | the true names, capacities and involvement when ascertained.  Plaintiff is informed and believes and
13 | thereon alleges that each of the Defendants designated as a DOE is responsible in some manner for the
14 | events and happenings herein referred to and thereby legally caused the injuries and damages herein
15 | alleged.

16 | 20.  Plaintiff is informed and believes and thereon alleges that at all times herein mentioned,
17 | each of the Defendants sued herein was the agent and/or employee of each of the remaining Defendants,
18 | and each of them, was at all times acting within the purpose and scope of such agency and employment.

19 | **FIRST CAUSE OF ACTION**
20 | **STRICT PRODUCT LIABILITY (Manufacturing Defect)**
21 | **(By Plaintiff GENESIS MORA, a minor, by and through**
22 | **her Guardian Ad Litem, LORENA MORA**
23 | **Against Defendants SANOFI PASTEUR INC. and Does 1-100)**

24 | 21.  Plaintiff, GENESIS MORA, a minor, by and through her Guardian Ad Litem, LORENA
25 | MORA, incorporates by reference paragraphs 1 through 20 of this Complaint as though fully set forth
26 | herein.

27 | 22.  At all times herein referenced, Defendants SANOFI PASTEUR INC. and DOES 1 to 10,
28 | were engaged in the business of designing, manufacturing, testing, inspecting, assembling, distributing,

4

COMPLAINT FOR DAMAGES

selling, supplying and placing into the stream of commerce, an influenza vaccination given to Plaintiff GENESIS MORA on or about September 5, 2012 as alleged in paragraph 5 of the Complaint.

23.    Plaintiff is informed and believes and thereon alleges that at the time the said influenza vaccination was put into the stream of commerce, said influenza vaccination contained a manufacturing defect when it left the possession of Defendants SANOFI PASTEUR INC. and DOES 1 to 10.

24.    Plaintiff is informed and believes and thereon alleges that at the time the said influenza vaccination was put into the stream of commerce, said influenza vaccination was dangerous, defective, and unsafe for its reasonable foreseeable and intended use and purpose of preventing and/or reducing the odds of becoming sick from the flu.    The subject influenza vaccination was not misused in any manner.

25.    Plaintiff is informed and believes and thereon alleges that the dangerous, defective and unsafe condition of the influenza vaccination was a substantial factor in causing Plaintiff GENESIS MORA's injury and harm, resulting in permanent paraplegia.

26.    As a direct, proximate and legal result of the dangerous, defective and unsafe condition of the influenza vaccination, plaintiff has received and will continue to receive medical, hospital and related care for reasonable and necessary treatment and services, all to her special damages and according to proof at the time of trial.

27.    As a further direct, proximate and legal result of the dangerous, defective and unsafe condition of the influenza vaccination, plaintiff became a permanent paraplegic, which have caused and will continue to cause her great pain and suffering and mental and emotional distress, all to her general damages according to proof at the time of trial.

## SECOND CAUSE OF ACTION

### STRICT PRODUCT LIABILITY (Design Defect-

#### Consumer Expectation Test)

(By Plaintiff GENESIS MORA, a minor, by and through

her Guardian Ad Litem, LORENA MORA Against and Does 1-100)

28.    Plaintiff, GENESIS MORA, a minor, by and through her Guardian Ad Litem, LORENA MORA, incorporates by reference paragraphs 1 through 27 of this Complaint as though fully set forth herein.

5

COMPLAINT FOR DAMAGES

29.     Plaintiff is informed and believes and thereon alleges that the influenza vaccination was substantially the same when it left the possession of Defendants SANOFI PASTEUR INC. and DOES 1 to 10 up until the time it was administered to Plaintiff GENESIS MORA at Kaiser Permanente on or about September 5, 2012.

30     Plaintiff is informed and believes and thereon alleges that the influenza vaccination designed, manufactured, tested, inspected, assembled, distributed, sold, supplied and placed into the stream of commerce by Defendants SANOFI PASTEUR INC. and DOES 1 to 10 failed to perform as safely as an ordinary consumer would have expected by causing Plaintiff GENESIS MORA to become a paraplegic resulting from the Guillain-Barre Syndrome.

31.     Plaintiff is informed and believes and thereon alleges that at the time the said influenza vaccination was put into the stream of commerce, said influenza vaccination was dangerous, defective, and unsafe for its reasonable foreseeable and intended use and purpose, in that among others things, preventing and/or reducing the odds of becoming sick from the flu.   The subject influenza vaccination was not misused in any manner.

32.     As a direct, proximate, legal result and substantial factor of the dangerous, defective and unsafe design of the influenza vaccination, plaintiff has received and will continue to receive medical, hospital and related care for reasonable and necessary treatment and services, all to her special damages and according to proof at the time of trial.

33.     As a further direct, proximate, legal result and substantial factor of the dangerous, defective and unsafe condition of the influenza vaccination, plaintiff became a permanent paraplegic, which have caused and will continue to cause her great pain and suffering and mental and emotional distress, all to her general damages according to proof at the time of trial.

\\\
\\\
\\\
\\\
\\\
\\\

6

COMPLAINT FOR DAMAGES

## THIRD CAUSE OF ACTION

### STRICT PRODUCT LIABILITY (Design Defect-Risk Benefit Test)

### (By Plaintiff GENESIS MORA, a minor, by and through

### her Guardian Ad Litem, LORENA MORA Against and Does 1-100)

34.     Plaintiff, GENESIS MORA, a minor, by and through her Guardian Ad Litem, LORENA MORA, incorporates by reference paragraphs 1 through 33 of this Complaint as though fully set forth herein.

35.     Plaintiff is informed and believes and thereon alleges that the influenza vaccination was substantially the same when it left the possession of Defendants SANOFI PASTEUR INC. and DOES 1 to 10 up until the time it was administered to Plaintiff GENESIS MORA at Kaiser Permanente on or about September 5, 2012.

36.     Plaintiff is informed and believes and thereon alleges that at the time the said influenza vaccination was put into the stream of commerce, said influenza vaccination was dangerous, defective, and unsafe for its reasonable foreseeable and intended use and purpose, in that among others things, preventing and/or reducing the odds of becoming sick from the flu.  The subject influenza vaccination was not misused in any manner.

37.     Prior to the time and place alleged in paragraph 5 of the Complaint, Defendants SANOFI PASTEUR INC. and DOES 1 through 10, had actual and/or constructive knowledge that the influenza vaccinations Defendants had designed, manufactured, tested, inspected, assembled, distributed, sold, supplied and placed into the stream of commerce had previously caused other recipients of influenza vaccinations to become paralyzed from the Guillain-Barre Syndrome.

38.     Plaintiff is informed and believes and thereon alleges that at the time the subject influenza vaccination was designed,, tested, inspected, assembled and subsequently distributed, sold, supplies and placed into the stream, the costs of designing a less dangerous, defective and unsafe influenza vaccination were not outweighed by the benefit of preventing recipients of influenza vaccination from developing complete paraplegia from the Guillain-Barre Syndrome.

39.     As a direct, proximate, legal result and substantial factor of the dangerous, defective and unsafe design of the influenza vaccination, plaintiff has received and will continue to receive medical,

7

1  hospital and related care for reasonable and necessary treatment and services, all to her special damages

2  and according to proof at the time of trial.

3       40.    As a further direct, proximate, legal result and substantial factor of the dangerous,

4  defective and unsafe design of the influenza vaccination, plaintiff became a permanent paraplegic,

5  which have caused and will continue to cause her great pain and suffering and mental and emotional

6  distress, all to her general damages according to proof at the time of trial.

7  **FOURTH CAUSE OF ACTION**

8  **STRICT PRODUCT LIABILITY (Failure to Warn)**

9  (By Plaintiff GENESIS MORA, a minor, by and through

10  her Guardian Ad Litem, LORENA MORA Against and Does 1-100)

11       41.    Plaintiff, GENESIS MORA, a minor, by and through her Guardian Ad Litem, LORENA

12  MORA, incorporates by reference paragraphs 1 through 40 of this Complaint as though fully set forth

13  herein.

14       42.    Plaintiff is informed and believes and thereon alleges that prior to September 5, 2012,

15  Defendants SANOFI PASTEUR INC. and DOES 1 through 10, designed, manufactured, tested,

16  inspected, assembled, distributed, sold, supplied and placed into the stream of commerce, an influenza

17  vaccination which was dangerous, defective and unsafe to Plaintiff GENESIS MORA as alleged in

18  paragraphs 7-11 of the Complaint.

19       43.    Plaintiff is and believes that prior to September 5, 2012, SANOFI PASTEUR INC. and

20  DOES 1 through 10, knew that the influenza vaccinations had potential risks, side effects, allergic

21  reactions and dangers that were known or knowable through the use of scientific knowledge at the time

22  of the design, manufacture, test, inspection, assembly, distribution, sale, supply and placement into the

23  stream of commerce.

24       44.    Plaintiff GENESIS MORA is informed and believes that the potential risks, side effects

25  and allergic reactions presented substantial dangers to the recipients of the influenza vaccinations.

26       45.    Plaintiff GENESIS MORA is further informed and believes that as an ordinary consumer,

27  she would not have recognized the potential risks, side effects, allergic reactions and dangers of the

28  influenza vaccine.

8

COMPLAINT FOR DAMAGES

46.     Plaintiff GENESIS MORA is informed and believes that Defendants SANOFI PASTEUR INC. and DOES 1 through 10 failed to adequately warn or instruct recipients of the potential risks, side effects, allergic reactions and dangers, of the influenza vaccinations.

47.     Plaintiff GENESIS MORA is further informed and believes that the influenza vaccination was used in a way that was reasonable foreseeable to Defendants SANOFI PASTEUR INC. and DOES 1 through 10.   The subject influenza vaccination was not misused in any manner.

48.     As a direct, proximate, legal result and substantial factor of the failure of Defendants SANOFI PASTEUR INC. and DOES 1 through 10 to adequately warn or instruct the consumers as to all of the potential risks side effects, allergic reactions and dangers of the influenza vaccination, Plaintiff GENESIS MORA received and will continue to receive medical, hospital related care for reasonable and necessary treatment and services, all to her special damages according to proof at the time of trial.

49.     As a direct, proximate, legal result and substantial factor of the failure of Defendants SANOFI PASTEUR INC. and DOES 1 through 10 to adequately warn or instruct the consumers as to all of the potential risks side effects, allergic reactions and dangers of the influenza vaccination, Plaintiff GENESIS MORA became a permanent paraplegic which have caused and will continue to cause her great pain and suffering, mental and emotional distress, all to her general damages according to proof at the time of trial.

## FIFTH CAUSE OF ACTION

### PRODUCT LIABILITY (Negligent Failure to Warn)

**(By Plaintiff GENESIS MORA, a minor, by and through**

**her Guardian Ad Litem, LORENA MORA Against and Does 1-100)**

50.     Plaintiff, GENESIS MORA, a minor, by and through her Guardian Ad Litem, LORENA MORA, incorporate by reference paragraphs 1 through 49 of this Complaint as though fully set forth herein.

51.     Plaintiff is informed and believes and thereon alleges that prior to September 5, 2012, Defendants SANOFI PASTEUR INC. and DOES 1 through 10, negligently designed, manufactured, tested, inspected, assembled, distributed, sold, supplied and placed into the stream of commerce, an

9

COMPLAINT FOR DAMAGES

influenza vaccination which was dangerous, detective and unsafe to Plaintiff GENESIS MORA as alleged in paragraphs 7-11 of the Complaint.

52.     Plaintiff is and believes that prior to September 5, 2012, Defendants SANOFI PASTEUR INC. and DOES 1 through 10, knew or should have reasonably known that the influenza vaccinations had potential risks, side effects, allergic reactions and dangers that were dangerous or likely to be dangerous when used in a reasonably foreseeable manner.

53.     Plaintiff GENESIS MORA is further informed and believes that Defendants SANOFI PASTEUR INC. and DOES 1 through 10 knew or should have reasonably known that the recipient of an influenza vaccination such as Plaintiff GENESIS MORA and/or her Mother and Guardian Ad Litem, LORENA MORA would not have recognized the potential risks, side effects, allergic reactions and dangers of the influenza vaccine.

54.     Plaintiff GENESIS MORA is further informed and believes that Defendant SANOFI PASTEUR INC. failed to adequately warn or instruct of the potential risks, side effects, allergic reactions and dangers of the subject influenza vaccination.

55.     Plaintiff GENESIS MORA is further informed and believes a reasonable manufacturer, distributor, seller under the same or similar circumstances would have warned or instructed the users of all the potential risks, side effects, allergic reactions and dangers of the use of the influenza vaccination.

56.     As a direct, proximate, legal result and substantial factor of the negligent failure of Defendants SANOFI PASTEUR INC. and DOES 1 through 10 to adequately warn or instruct the consumers as to all of the potential risks side effects, allergic reactions and dangers of the influenza vaccination, Plaintiff GENESIS MORA received and will continue to receive medical, hospital related care for reasonable and necessary treatment and services, all to her special damages according to proof at the time of trial.

57     As a direct, proximate, legal result and substantial factor of the negligent failure of Defendants SANOFI PASTEUR INC. and DOES 1 through 10 to adequately warn or instruct the consumers as to all of the potential risks side effects, allergic reactions and dangers of the influenza vaccination, Plaintiff GENESIS MORA sustained complete paraplegia which have caused and will

10

COMPLAINT FOR DAMAGES

1  continue to cause her great pain and suffering, mental and emotional distress, all to her general damages

2  according to proof at the time of trial.

3  WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

4      1.    For general damages according to law and proof;

5      2.    For special damage according to law and proof, including, but not limited to statutory

6          fines;

7      3.    For costs of suit;

8      4.    For pre-judgment interest according to law;

9      5.    For such other and further relief as the Court may deem proper;

10  Dated:  September 29, 2014           LAW OFFICE OF DANNY SOONG

11

12

13

14  DANNY SOONG, Esq.
Attorney for Plaintiff, GENESIS MORA, a minor,
by and through her Guardian Ad Litem, LORENA
MORA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

COMPLAINT FOR DAMAGES

EXHIBIT A

# In the United States Court of Federal Claims

## No. 13-421 V

G.G.M., a Minor, by and
Through her Guardian Ad
Litem, LORENA MORA

**JUDGMENT**

v.

SECRETARY OF THE
DEPT. OF HEALTH
AND HUMAN SERVICES

Pursuant to the special master's decision of July 21, 2014,

IT IS ORDERED AND ADJUDGED this date, pursuant to Vaccine Rule 11(a), that the petition is dismissed.

Hazel C. Keahey
Clerk of Court

August 29, 2014      By:     s/ Debra L. Samler

Deputy Clerk

NOTE: As to election, 90 days from this date, see Vaccine Rule 12.

Represented petitioners' motions for attorneys' fees and costs shall be filed within 180 days of judgment, see Vaccine Rule 13. Pro se petitioners may seek litigation costs within 180 days of judgment.

EXHIBIT B

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

OFFICE OF SPECIAL MASTERS

GENESIS GRACE MORA, a minor, by and
through her Guardian Ad Litem, LORENA
MORA,

        Petitioner,

vs.

SECRETARY OF HEALTH AND HUMAN
SERVICES,

        Respondent.

Case No.: __13-421V

Special Master Laura D.
Millman_____

## NOTICE OF ELECTION TO FILE A CIVIL ACTION

Petitioner hereby elects, pursuant to 42 U.S.C. § 300aa-21(a), to reject the
Judgment entered in the above captioned matter and to file a civil action.

By: _____

Petitioner's Counsel:
Danny C. Soong, Esq.
Law Office of Danny Soong
100 N. Barranca St., Suite 700
West Covina, CA. 91791
Tel: (626) 858-2068
Fax: (626) 858-1922
E-mail: dsoong_esq@yahoo.com

1

**PROOF OF SERVICE**
Code of Civil Procedure §§ 1013a, 2015.5

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action. My business address is 100 N. Barranca St., Suite 700, West Covina, CA. 91791. On September 15, 2014, I served the following document(s):

**NOTICE OF ELECTION TO FILE A CIVIL ACTION**

X    By placing the document(s) listed above in a sealed envelope, addressed to Respondent by first class U.S. mail as set forth below, and placing the envelope for collection and mailing in the place designated for such in our offices, following ordinary business practices.

_____ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth above on this date before 5:00 p.m.

By causing a true copy thereof to be delivered by e-mail to
X    claudia.gangi@usdoj.gov, vaccine.ecf@usdoj.gov

Ms. Claudia Gangi
Secretary of Health and Human Services
c/o Director, Division of Vaccine Injury Compensation
Officer of Special Programs
Health Resources and Services Administration
5600 Fishers Lane, Room 16C-17
Rockville, Maryland 20857

I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on September 15, 2014, at West Covina, California.

NIKKI ACUNA

2

NOTICE OF ELECTION TO FILE A CIVIL ACTION

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LO. NGEL.
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL PERSONAL INJURY CASE

Case Number _____

**BC 5 6 0 8 0 4**

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

**Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)).**

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Gregory Keosian | 91 | 635 | | | |
| Hon. Elia Weinbach | 92 | 633 | | | |
| Hon. Gail Feuer | 93 | 631 | | | |
| Hon. Teresa Beaudet | 97 | 630 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

OSC: 0 3 / 2 9 / 2016 TRIAL: 0 4 / 1 4 / 2016 OSC: 1 0 / 1 6 / 2017

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____     SHERRI R. CARTER, Executive Officer/Clerk

LACIV PI 190 (Rev09/13)
LASC Approved 05-06
For Optical Use

By _____, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT –
UNLIMITED CIVIL CASE**

**FILED**
Superior Court Of California
County Of Los Angeles

**APR 0 4 2014**

Sherri R. Carter, Executive Officer/Clerk

By _____, Deputy
Wayne H. Smith

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

|  |  |
|---|---|
| In re Personal Injury Cases Assigned to the Personal Injury Courts (Departments 91, 92, 93, and 97) | Case No.: <br><br>SECOND AMENDED GENERAL ORDER RE PERSONAL INJURY COURT ("PI Court") PROCEDURES (Effective as of January 6, 2014) |

**DEPARTMENT:**    91    92    93    97

**FINAL STATUS CONFERENCE ("FSC"):**

- Date: _____ at 10:00 a.m.

**TRIAL:**

- Date: _____ at 8:30 a.m.

**OSC re DISMISSAL (Code Civ. Proc., § 583.210):**

- Date: _____ at 8:30 a.m.

TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY:

Pursuant to the California Code of Civil Procedure ("C.C.P."), the California Rules of Court, and the Los Angeles County Court Rules ("Local Rules"), the Los Angeles Superior Court ("LASC" or "Court") HEREBY AMENDS AND SUPERSEDES ITS July 15, 2013 AMENDED GENERAL ORDER AND

1

4/4/14

GENERALLY ORDERS AS FOLLOWS IN THIS AND ALL OTHER GENERAL JURISDICTION PERSONAL INJURY ACTIONS:

Effective March 18, 2013, the Court responded to systemic budget reductions by centralizing the management of more than 18,000 general jurisdiction personal injury cases in the Stanley Mosk Courthouse. LASC opened three Personal Injury Courts ("PI Courts") (Departments 91, 92 and 93), and on January 6, 2014, a fourth (Department 97) to adjudicate all pretrial matters for these cases. It also established a Master Calendar Court (Department One), to manage the assignment of trials to 31 dedicated Trial Courts located countywide. This Amended General Order lays out the basic procedures for the PI Courts' management of pretrial matters. The parties will find additional information about the PI Courts on the court's website, *www.lasuperiorcourt.org.*

1.      To ensure proper assignment to a PI Court, Plaintiff(s) must carefully fill out the Civil Case Cover Sheet Addendum (form LACIV 109). The Court defines "personal injury" as:

> "an unlimited civil case described on the Civil Case Cover Sheet Addendum and Statement of Location (LACIV 109) as Motor Vehicle-Personal Injury/Property Damage/Wrongful Death; Personal Injury/Property Damage/Wrongful Death-Uninsured Motorist; Product Liability (other than asbestos or toxic/environmental); Medical Malpractice-Physicians & Surgeons; Other Professional Health Care Malpractice; Premises Liability; Intentional Bodily Injury/Property Damage/Wrongful Death; or Other Personal Injury/Property Damage/Wrongful Death. An action for intentional infliction of emotional distress, defamation, civil rights/discrimination, or malpractice (other than medical malpractice), is not included in this definition. An action for injury to real property is not included in this definition."   Local Rule 2.3(a)(1)(A).

4/4/14

The Court will assign a case to the PI Courts if plaintiff(s) check any of the following boxes in the Civil Case Cover Sheet Addendum:

    ☐ A7100 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death

    ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist

    ☐ A7260 Product Liability (not asbestos or toxic/environmental)

    ☐ A7210 Medical Malpractice – Physicians & Surgeons

    ☐ A7240 Medical Malpractice – Other Professional Health Care Malpractice

    ☐ A7250 Premises Liability (e.g., slip and fall)

    ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism etc.)

    ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death

The Court will not assign cases to the PI Courts if plaintiff(s) check any boxes elsewhere in the Civil Case Cover Sheet Addendum (any boxes on pages two and three of that form).

2.    The Court sets the above dates in this action in the PI Court circled above (Department 91, 92, 93, or 97) at the Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, CA 90012. Cal. Rules of Court, Rules 3.714(b)(3), 3.729.

SERVICE OF SUMMONS AND COMPLAINT

3.    Plaintiff(s) shall serve the summons and complaint in this action upon defendant(s) within three years of the date when the complaint is filed. C. C. P. § 583.210, subd. (a). On the OSC re Dismissal date noted above, the PI Court will dismiss the action and/or all

3

4/4/14

unserved parties unless the plaintiff(s) show cause why the action or the unserved parties should not be dismissed. C.C.P. §§ 583.250; 581, subd. (b)(4).

4.      The Court sets the above trial and FSC dates on condition that plaintiff(s) effectuate service on defendant(s) of the summons and complaint within six months of filing the complaint.  Upon a showing that the plaintiff(s) failed to effect service within six months, the PI Court will vacate the trial and FSC date noted above.

**STIPULATIONS TO CONTINUE TRIAL**

5.      Provided that all parties agree (and there is no violation of the "five-year rule," C.C.P. § 583.310), the parties may advance or continue any trial date in the PI Courts without showing good cause or articulating any reason or justification for the change.  To continue or advance a trial date, the parties (or their counsel of record) should jointly execute and file (in Room 102 of the Stanley Mosk Courthouse; fee required) a Stipulation to Continue Trial, FSC and Related Motion/Discovery Dates (form available on the court's website, Personal Injury Court link).  The PI Courts schedule FSCs for 10:00 a.m., eight (8) court days before the trial date.  Parties seeking to continue the trial and FSC dates shall file the Stipulation at least eight court days before the FSC date.  Parties seeking to advance the trial and FSC dates shall file the Stipulation at least eight court days before the proposed advanced FSC date.  Code Civ. Proc., § 595.2;   Govt. Code § 70617, subd. (c)(2).

**NO CASE MANAGEMENT CONFERENCES**

6.      The PI Courts do not conduct Case Management Conferences.  The parties need not file a Case Management Statement.

**LAW AND MOTION**

**Chambers Copies Required**

7.    In addition to filing original motion papers in Room 102 of the Stanley Mosk Courthouse, the parties must deliver, directly to the PI Court courtrooms, an extra copy (marked "Chambers Copy") of reply briefs and all other motion papers filed less than seven (7) court days before a hearing calendared in the PI Courts. The PI Courts also strongly encourage the parties filing and opposing lengthy motions, such as motions for summary judgment/adjudication, to submit one or more three-ring binders organizing the Chambers Copies behind tabs.

**Reservation of Hearing Date**

8.    Parties are directed to reserve hearing dates for motions in the PI Courts using the Court Reservation System available online at *www.lasuperiorcourt.org* (link on homepage). Parties or counsel who are unable to utilize the online Court Reservation System may reserve a motion hearing date by telephoning the PI Court courtroom, Monday through Friday, between 3:00 p.m. and 4:00 p.m.

**Withdrawal of Motion**

9.    California Rules of Court, Rule 3.1304(b) requires a moving party to notify the court immediately if a matter will not be heard on the scheduled date. In keeping with that rule, the PI Courts urge parties who amend pleadings in response to demurrers to file amended pleadings before the date when opposition to the demurrer is due so that the PI Courts do not needlessly prepare tentative rulings on demurrers.

**Discovery Motions**

10.    Informal Discovery Conferences ("IDCs"). On a daily basis, the PI Court judges are available to conduct 30-minute, in-person IDCs with lead trial counsel on each side (or another attorney who has full authority to make binding agreements in discovery disputes).

The PI Court judges will not make rulings in an IDC. The purpose of the IDC is to help the parties resolve discovery disputes by agreement rather than by motion practice. To that end, an IDC judge may refer the parties to applicable code sections or other legal authorities. The IDC judge may also promote compromise by suggesting agreements to narrow the scope of the requests, to provide amended responses that better explain the responding party's compliance, or to use an alternative, more efficient means of discovery. The PI Court judges find that, in nearly every case, the parties amicably resolve their discovery disputes at, or as a result of, the IDCs.

11. <u>Scheduling IDCs</u>. Parties should reserve (and, if necessary, promptly cancel) appointments for IDCs via email to *PISMC@lasuperiorcourt.org*. Parties should schedule an IDC as soon as a discovery dispute arises, and before any party files a discovery motion. The PI Court judges expect the parties to make every effort to resolve discovery disputes by conferring in person or on the telephone before the PI Court judge invests time in the IDC. Scheduling or participating in an IDC does not extend any deadlines imposed by the Code of Civil Procedure for noticing and filing motions to compel or motions to compel further discovery. In order to avoid unnecessary *ex parte* applications, the PI Courts recommend that the parties extend deadlines for filing discovery motions and for serving discovery responses pending their participation in the IDC.

12. <u>Motions to Compel Further Responses</u>. The PI Courts will not hear motions to compel further discovery unless and until (a) the parties participate in an IDC; or (b) the moving party submits evidence, by way of declaration, that the opposing party has failed or refused to participate in an IDC. To allow time for an IDC at least 16 court days before the motion hearing, parties must reserve a hearing on any motion to compel further discovery at

4/4/14

10:00 a.m. on a date at least 60 days after the date when the reservation is made. Parties must reserve an IDC with the same judge who is scheduled to hear any discovery motion involving the same discovery. Likewise, a party who participates in an IDC regarding certain discovery requests, and then files a motion to compel further responses to the same discovery requests, must calendar the motion for a hearing before the same judge who conducted the IDC. After participating in an IDC, a moving party may advance the hearing on a motion to compel further discovery to 10:00 a.m. on any available hearing date that complies with the notice requirements of the Code of Civil Procedure. The PI Courts may consider a party's failure or refusal to participate in an IDC as a factor in deciding whether or not to award sanctions on a motion to compel further discovery.

**Ex Parte Applications**

13.     Under the California Rules of Court, courts may only grant *ex parte* relief upon a showing, by admissible evidence, that the moving party will suffer "irreparable harm," "immediate danger," or where the moving party identifies "a statutory basis for granting relief ex parte." Cal. Rules of Court, Rule 3.1202(c). With over 6,000 cases in each docket, the three PI Courts have no capacity to hear multiple *ex parte* applications or to shorten time to add hearings to their fully booked motion calendars. The PI Courts do not regard the Court's unavailability for timely motion hearings as an "immediate danger" or threat of "irreparable harm" justifying *ex parte* relief. Instead of seeking *ex parte* relief, counsel should reserve the earliest available motion hearing date, and stipulate with all parties to continue the trial to a date thereafter using the Stipulation to Continue Trial, FSC and Related Motion/Discovery Dates (form available on the court's website, PI Court Tab). Counsel

should also check the Court Reservation System from time to time because earlier hearing dates may become available as cases settle or counsel otherwise take hearings off calendar.

## REQUEST FOR TRANSFER TO INDEPENDENT CALENDAR DEPARTMENT

14.     Parties seeking to transfer a case from a PI Court to an Independent Calendar ("I/C") Court shall file (in Room 102 of the Stanley Mosk Courthouse) and serve the Court's "Motion to Transfer Complicated Personal Injury Case to Independent Calendar Court" (form available on the Court's website, PI Courts link).   The PI Courts will transfer a matter to an I/C Court if the case is not a "Personal Injury" case as defined in the General Order re General Jurisdiction PI Cases, or if it is "complicated."   In determining whether a personal injury case is too "complicated" for the PI Courts to manage, the PI Courts will consider, among other things, whether the case will involve numerous parties, cross-complaints, witnesses (including expert witnesses), and/or pretrial hearings.

15.     Parties opposing a motion to transfer have five court days to file (in Room 102) an Opposition (using the same Motion to Transfer form).

16.     The PI Courts will not conduct a hearing on any Motion to Transfer to I/C Court. Although the parties may stipulate to transfer a case to an Independent Calendar Department, the PI Courts will make an independent determination whether to transfer the case or not.

## GENERAL ORDER – FINAL STATUS CONFERENCE

17.     Parties shall comply with the requirements of the PI Courts' "Amended General Order – Final Status Conference," which shall be served with the summons and complaint.

## JURY FEES

18.     Parties must pay jury fees no later than 365 calendar days after the filing of the initial complaint. (Code Civ. Proc., § 631, subds. (b) and (c).)

8

4/4/14

**JURY TRIALS**

19.     The PI Courts do not conduct jury trials.  On the trial date, a PI Court will transfer the case to the Master Calendar Court in Department One in the Stanley Mosk Courthouse.  Department One assigns the case out for trial to one of 31 dedicated Trial Courts located in the Stanley Mosk, Chatsworth, Van Nuys, Santa Monica, Torrance, Long Beach, Pomona, and Pasadena courthouses.

**SANCTIONS**

20.     The Court has discretion to impose sanctions for any violation of this general order.  (C.C.P. §§ 128.7, 187 and Gov. Code, § 68608, subd. (b).)

Dated: April 4, 2014

Daniel J. Buckley
Supervising Judge, Civil
Los Angeles Superior Court

9                                                    4/4/14

FILED
Superior Court Of California
County Of Los Angeles

APR 04 2014

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
Wayne M. Smith

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

| | |
|---|---|
| In re Personal Injury Cases Assigned to the Personal Injury Courts (Departments 91, 92, 93, and 97), | Case No.: _____<br><br>SECOND AMENDED GENERAL ORDER - FINAL STATUS CONFERENCE, PERSONAL INJURY ("PI") COURTS (Effective as of January 6, 2014) |

The dates for Trial and Final Status Conference ("FSC") having been set in this matter, the Court

HEREBY AMENDS AND SUPERSEDES ITS July 19, 2013 AMENDED GENERAL

ORDER – FINAL STATUS CONFERENCE AND GENERALLY ORDERS AS

FOLLOWS IN THIS AND ALL OTHER GENERAL JURISDICTION PERSONAL

INJURY ACTIONS:

1. **PURPOSE OF THE FSC**

      The purpose of the FSC is to verify that the parties/counsel are completely ready to

proceed with trial continuously and efficiently, from day to day, until verdict.   The PI Courts

will verify at the FSC that all parties/counsel have (1) prepared the Exhibit binders and Trial

Document binders and (2) met and conferred in an effort to stipulate to ultimate facts, legal

issues, motions *in limine*, and the authentication and admissibility of exhibits.

/

## 2.  TRIAL DOCUMENTS TO BE FILED

At least five calendar days prior to the Final Status Conference, the parties/counsel shall serve and file (in Room 102 of the Stanley Mosk Courthouse) the following Trial Readiness Documents:

### A.    TRIAL BRIEFS (OPTIONAL)

Each party/counsel may file, but is not required to file, a trial brief succinctly identifying:

    (1) the claims and defenses subject to litigation;

    (2) the major legal issues (with supporting points and authorities);

    (3) the relief claimed and calculation of damages sought; and

    (4)  any other information that may assist the court at trial.

### B.    MOTIONS *IN LIMINE*

Before filing motions *in limine*, the parties/counsel shall comply with the statutory notice provisions of Code of Civil Procedure ("C.C.P.") Section 1005 and the requirements of Los Angeles County Court Rule ("Local Rule") 3.57(a).  The caption of each motion *in limine* shall concisely identify the evidence that the moving party seeks to preclude.  Parties filing more than one motion *in limine* shall number them consecutively.  Parties filing opposition and reply papers shall identify the corresponding motion number in the caption of their papers.

### C.    JOINT STATEMENT TO BE READ TO THE JURY

For jury trials, the parties/counsel shall work together to prepare and file a joint written statement of the case for the court to read to the jury.  Local Rule 3.25(i)(4).

### D.    JOINT WITNESS LIST

The parties/counsel shall work together to prepare and file a joint list of all witnesses that each party intends to call (excluding impeachment and rebuttal witnesses). Local Rule 3.25(i)(5). The joint witness list shall identify each witness by name, specify which witnesses are experts, and estimate the length of the direct, cross examination re-direct examination (if any) of each witness. The parties/counsel shall identify and all potential witness scheduling issues and special requirements. Any party/counsel who seeks to elicit testimony from a witness not identified on the witness list must first make a showing of good cause.

**E.   LIST OF PROPOSED JURY INSTRUCTIONS (JOINT AND CONTESTED)**

The parties/counsel shall jointly prepare and file a list of proposed jury instructions, organized in numerical order, specifying the instructions upon which all sides agree and the contested instructions, if any.

**F.   JURY INSTRUCTIONS (JOINT AND CONTESTED)**

The parties/counsel shall prepare a complete set of full-text proposed jury instructions, editing all proposed California Civil Jury Instructions for Judges and Attorneys ("CACI") instructions to insert party names and eliminate blanks and irrelevant material. The parties shall prepare special instructions in a format ready for submission to the jury (placing citations of authority and the identity of the requesting party above the text in compliance with Local Rules 3.170 and 3.171).

**G.   JOINT VERDICT FORM(S)**

The parties/counsel shall prepare and jointly file a proposed general verdict form or special verdict form (with interrogatories) acceptable to all sides. If the parties/counsel cannot agree on

a joint verdict form, each party must separately file a proposed verdict form. Local Rule 3.25(i)(7) and (8).

/

### H.    JOINT EXHIBIT LIST

The parties/counsel shall prepare and file a joint exhibit list organized with columns identifying each exhibit and specifying each party's evidentiary objections, if any, to admission of each exhibit. To comply with Local Rules 3.52(i)(5) and 3.53, the parties shall meet and confer in an effort to resolve objections to the admissibility of each exhibit.

### 3.  EVIDENTIARY EXHIBITS

The parties/counsel shall jointly prepare (and be ready to temporarily lodge for inspection at the FSC), three sets of tabbed, internally paginated and properly-marked exhibits, organized numerically in three-ring binders (a set for the Court, the Judicial Assistant and the witnesses). The parties/counsel shall mark all non-documentary exhibits and insert a simple written description of the exhibit behind the corresponding numerical tab in the exhibit binder.

### 4.  TRIAL BINDERS REQUIRED IN THE PI COURTS

The parties/counsel shall jointly prepare (and be ready to temporarily lodge for inspection at the FSC) the Trial Documents, tabbed and organized into three-ring binders as follows:

Tab A: Trial Briefs

Tab B: Motions *in limine*

Tab C: Joint Statement to Be Read to the Jury

Tab D: Joint Witness List

Tab E: Joint List of Jury Instructions (identifying the agreed upon and contested instructions)

Tab F: Joint and Contested Jury Instructions

Tab G: Joint and/or Contested Verdict Forms

The parties shall organize motions *in limine* (tabbed in numerical order) behind tab B with the opposition papers and reply papers for each motion placed directly behind the moving papers. The parties shall organize proposed jury instructions behind tab F, with the agreed upon instructions first in order followed by the contested instructions (including special instructions) submitted by each side.

## 5. FAILURE TO COMPLY WITH FSC OBLIGATIONS

The court has discretion to require any party/counsel who fails or refuses to comply with this General Order to Show Cause why the court should not impose monetary, evidentiary and/or issue sanctions (including the entry of a default or the striking of an answer).

Dated this 4th day of April, 2014

Daniel J. Buckley
Supervising Judge, Civil
Los Angeles Superior Court

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Danny Soong SBN (192045)
Law Office Of Danny Soong
100 N. Barranca Ave., Suite 700
West Covina, CA 91791

TELEPHONE NO.: (626) 858-2068     FAX NO.: (626) 858-1922
ATTORNEY FOR (Name): Plaintiff, GENESIS MORA, a minor

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS: 111 N. Hill St.
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Central District-Stanley Mosk Courthouse

**FOR COURT USE ONLY**

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 14 2014

Sherri R. Carter, Executive Officer/Clerk

By Myrna Beltran, Deputy

CASE NAME:
MORA v. SANOFI PASTEUR, INC.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: BC 5 6 0 8 0 4 |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[✓] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action (specify): See Attachment
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. (You may use form CM-015.)

Date: October 6, 2014

Danny C. Soong
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

SHORT TITLE: MORA v. SONOFI PASTEUR, INC.

CASE NUMBER:

1. STRICT PRODUCT LIABILITY (Manufacturing Defect)

2. STRICT PRODUCT LIABILITY (Design Defect: Consumer Expectation Test)

3. STRICT PRODUCT LIABILITY (Design Defect: Risk-Benefit Test)

4. STRICT PRODUCT LIABILITY (Failure to Warn)

5. NEGLIGENT PRODUCT LIABILITY (Failure to Warn)

*(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, not line numbers):*

This page may be used with any Judicial Council form or any other paper filed with the court.

Page _____

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

ADDITIONAL PAGE
**Attach to Judicial Council Form or Other Court Paper**

CRC 201, 501

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
            or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
        domain, landlord/tenant, or
        foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

| SHORT TITLE: MORA v. SANOFI PASTEUR, INC. | CASE NUMBER: BC 5 6 0 8 0 4 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

**Item I:** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 10-14 ☐ HOURS/ ☑ DAYS

**Item II. Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):**

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☑ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

Local Rule 2.0

| SHORT TITLE: | | CASE NUMBER |
|---|---|---|
| MORA v. SANOFI PASTEUR, INC. | | |

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109 Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012 Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009 Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031 Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation    Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032 Quiet Title | 2., 6. |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |

| SHORT TITLE: MORA v. SANOFI PASTEUR, INC. | CASE NUMBER | |
|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: MORA v. SANOFI PASTEUR, INC. | CASE NUMBER |
|---|---|

Item III. **Statement of Location:** Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. | ADDRESS: 1011 Baldwin Park Blvd. |
|---|---|
| ☐1. ☐2. ☑3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | |

| CITY: Baldwin Park | STATE: CA | ZIP CODE: 91706 |
|---|---|---|

Item IV. *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the STANLEY MOSK courthouse in the CENTRAL District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: October 6, 2014

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**2**

MICHAEL A. ZUK, ESQ. (Bar # 83102)
mzuk@hrllp-law.com
VADIM BRASLAVSKY, ESQ. (Bar # 223920)
vbraslavsky@hrllp-law.com
**HERZFELD & RUBIN LLP**
1925 Century Park East, Suite 900
Los Angeles, California 90067-2783
Telephone:   (310) 553-0451
Facsimile:   (310) 553-0648


Attorneys for Defendant,
SANOFI PASTEUR INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GENESIS MORA, a minor, by and through her Guardian Ad Litem, LORENA MORA, <br><br> Plaintiff, <br><br> vs. <br><br> SANOFI PASTEUR INC. and DOES 1 through 100, inclusive <br><br> Defendants. | CASE NO.: <br><br> **NOTICE OF REMOVAL WITH ATTACHED COMPLAINT** <br><br> [Los Angeles Superior Court Case No. BC560804] <br><br> Complaint Filed:      October 14, 2014 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, Defendant Sanofi Pasteur Inc. ("Sanofi") hereby removes this civil action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California, Western Division, pursuant to 28 U.S.C. §§ 1441 and 1446. For the reasons stated below, removal of this action is proper, pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiff and Sanofi and Plaintiff has alleged that more than $75,000 is at issue in their dispute.

Removal is also proper because Plaintiff challenges the safety of an influenza vaccine, including claims of design and manufacturing defects. However, claims for personal injuries against a vaccine manufacturer, such as Sanofi, are governed by, and are subject to the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§300aa-1-33. ("Vaccine Act.") Therefore, Plaintiff's claims are completely preempted by the Vaccine Act and this Court has federal question jurisdiction under 28 U.S.C. § 1331. See, *Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068 (U.S. 2011) - holding that the Vaccine Act preempts all design defect claims against manufacturers to recover for injuries or deaths caused by a vaccine's side effects. See also 42 U.S.C. 300aa-22(c), which expressly preempts all failure to warn claims.

## I.   PROCEEDINGS TO DATE

On October 14, 2014, Plaintiff Genesis Mora, a minor, by and through her Guardian Ad Litem, Lorena Mora, filed her Complaint in the Superior Court of the State of California for the County of Los Angeles, a copy of which is attached hereto as Exhibit A ("Complaint"). Sanofi was served with the Complaint on November 26, 2014.[1] All documents filed in the state court action or served on Sanofi to date are

---

[1] In addition to Sanofi, the Complaint also lists as defendants "Does 1-100" and states that they are "fictitious names." (Exhibit A, Complaint ¶19.) After reasonable diligence, Sanofi has no knowledge of any Doe Defendants that have been identified (footnote continued)

NOTICE OF REMOVAL WITH ATTACHED COMPLAINT

included in Exhibit A.

## II.    PLAINTIFF'S COMPLAINT

The Complaint sets out five causes of action: (1) Strict Product Liability (Manufacturing Defect); (2) Strict Product Liability (Design Defect: Consumer Expectation Test); (3) Strict Product Liability (Design Defect: Risk-Benefit Test); (4) Strict Product Liability (Failure to Warn); and (5) Negligent Product Liability (Failure to Warn).[2] Each cause of action, however, is rooted in Plaintiff's allegation that the influenza vaccine she was administered "was dangerous, defective and unsafe" (Exhibit A, Complaint ¶24), and that Plaintiff "has remained a permanent paraplegic… as a direct result of her influenza vaccination." (Exhibit A, Complaint ¶11.)

## III.   GROUNDS FOR REMOVAL

### A.    Diversity Jurisdiction

This case may be removed pursuant to 28 U.S.C. § 1441(a) because there is complete diversity between Plaintiff and Sanofi and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332.

### 1.    Diversity of Citizenship

The parties are "citizens of different states." *Id*. § 1332(a). Plaintiff accurately alleges that "[Sanofi's] principal place of business [is] located …in Swiftwater, Pennsylvania."[3] (Exhibit A, Complaint ¶12.) Thus, for purposes of Section 1332,

_____

or served. Consent of unnamed and unidentified "Doe" Defendants is not required for removal. See *Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir. 1984); see also *Lopez v. BNSF Railway Co.*, 2007 U.S. Dist. LEXIS 92939, at 12-13 (E.D. Cal. 2007) (citing *Milstead Supply Co. v. Casualty Ins. Co.*, 797 F. Supp. 569 573 (W.D. Tex. 1992)).

[2] Complaint also indicates that Plaintiff's Petition for Vaccine Compensation in the U.S. Court of Federal Claims was dismissed on August 29, 2014 and that Plaintiff filed a Notice of Election to File a Civil Action, a copy of which is attached to the Complaint. (Exhibit A, Complaint ¶18.)

[3] However, Plaintiff incorrectly alleges that Sanofi is incorporated in Pennsylvania as (footnote continued)

Sanofi is a citizen of Pennsylvania [and/or Delaware.] See 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."). At no time has Sanofi been a citizen of California.[4]

Plaintiff further alleges that she is "a minor residing in the County of Los Angeles, State of California…" (Exhibit A, Complaint ¶1) Thus, Plaintiff is a citizen of California for the purpose of establishing diversity jurisdiction, and complete diversity exists between Sanofi and Plaintiff.

### 2.    Amount in Controversy

Based on Plaintiff's allegations, the amount in controversy exceeds the sum or value of $75,000, excluding interest and costs. The Complaint does not allege a damage amount to any of the causes of action. Removal is therefore proper if, from the allegations of the Complaint and the Notice of Removal, it is more likely than not that the claims exceed $75,000. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).

In determining whether the jurisdictional minimum is met, the Court considers *all* recoverable damages including emotional distress damages, punitive damages, statutory penalties, and attorneys' fees. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347.48 (1977); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998).[5]

_____

Sanofi's state of incorporation is Delaware.

[4] The naming of "DOE" Defendants does not impact diversity jurisdiction. See 28 U.S.C. § 1441 ("For purposes of removal under this chapter [28 USCS §§ 1441, et seq.], the citizenship of Defendants sued under fictitious names shall be disregarded.").

[5] See *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. (footnote continued)

NOTICE OF REMOVAL WITH ATTACHED COMPLAINT

As to each causes of action, Plaintiff alleges that she was diagnosed with "transverse myelitis, neurogenic bladder and paraplegia." (Exhibit A, Complaint ¶10.) Plaintiff further alleges that as a result of these injuries, she "has received and will continue to receive medical, hospital and related care for reasonable and necessary treatment and services, all to her special damages…" (Exhibit A, Complaint ¶¶26, 32, 39, 48, 56.) To wit, by Plaintiff's own admission, she will require extensive life-time medical and attendant care, which the Court may reasonably surmise will be in access of the jurisdictional minimum of $75,000.

Plaintiff further claims damages for emotional distress. Specifically, Plaintiff alleges that she "became paraplegic, which have caused and will continue to cause her great pain and suffering and mental and emotional distress, all to her general damages…" (Exhibit A, Complaint, ¶¶27, 33, 40, 49, 57.) Allegations like Plaintiff's relating to emotional distress have been held sufficient to satisfy the amount in controversy requirement. See *Egan v. Premier Scales & Sys.*, 237 F. Supp. 2d 774, 776 (W.D. Ky. 2002) (where plaintiff sought damages for embarrassment, humiliation, and willful, malicious and outrageous conduct, the court held that the defendant could "easily make the case that the claims are more likely than not to reach the federal amount in controversy requirement")

In sum, the total amount sought by Plaintiff exceeds the jurisdictional minimum of $ 75,000.

---

2008) ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe.") Sanofi in no way concedes that Plaintiff is entitled to recover any amount. In fact, Sanofi disputes that Plaintiff is entitled to any recovery.

### B.    <u>The Vaccine Act Preemption</u>

This Court also has federal question jurisdiction because Plaintiff's claims are completely preempted by the Vaccine Act. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). The preemptive effect of the Vaccine Act has been recently affirmed by the United States Supreme Court in *Bruesewitz v. Wyeth LLC.*, 131 S. Ct. 1068 (2011), where a majority of the Court held that the Vaccine Act  preempts *all* design defect claims against manufacturers to recover for injuries or deaths caused by a vaccine's side effects.

Parsing the language of the statute, Justice Scalia stated that "even though" clause modifies the word "unavoidable," and concluded that side effects--including those resulting from design defects--are considered "unavoidable" if the vaccine is properly manufactured and accompanied by proper warnings. According to the majority's logic, if a manufacturer was subject to liability for failure to use a different design, the word "unavoidable" would be meaningless. This is because a "side effect of a vaccine could always have been avoidable by use of a differently designed vaccine not containing the harmful element." *Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1075 (2011).

As further support for its conclusion, the Court surmised that if Congress had intended to preserve design defect claims, it would have mentioned them along with the other two types of claims. The Court next dispelled the notion that Congress incorporated comment k of the Restatement (Second) of Torts in § 300aa-22(b)(1), despite the fact that both use a form of the term "unavoidable."

The Court also found support for the preemption of design defect claims in the structure of the Vaccine Act and of vaccine regulation in general, which is completely silent on the issue of design defects. Leaving aside its statutory construction analysis, the Court next suggested that design defect claims are unnecessary because the Vaccine Act provides means for achieving the same

NOTICE OF REMOVAL WITH ATTACHED COMPLAINT

1   beneficial effects of tort claims: "(1) prompting the development of improved
2   designs, and (2) providing compensation for inflicted injuries." The Vaccine Act's
3   "structural quid pro quo" (i.e., manufacturers' funding of compensation schemes in
4   exchange for protection from costly litigation) was one more factor weighing in
5   favor of preemption. Although legislative history did not play a part in the analysis,
6   the Court stated that it would not contradict its conclusion.

7       Courts continue to interpret § 41 U.S.C. § 300aa-22(b)(1) broadly in light of
8   the Vaccine Act's central purpose of protecting the manufacturers from tort liability.
9   A Ninth Circuit panel, in *Holmes v. Merck & Co.*, 697 F.3d 1080, 1085-1089 (9th
10  Cir. 2012) concluded that § 300aa-22(b)(1) preempts all design-defect claims
11  seeking compensation for injury or death caused by a vaccine's unavoidable side
12  effects, even those brought by parents in their individual capacities. The panel flatly
13  rejected the parents' argument that because Section 11 of the Vaccine Act rendered
14  them ineligible for compensation through the Vaccine Court, no other part of the Act
15  applied.

16      In addition, the Vaccine Act expressly preempts *any* failure to warn claims.
17  See 42 U.S.C. 300aa-22(c) - "Direct warnings. No vaccine manufacturer shall be
18  liable in a civil action for damages arising from a vaccine-related injury or death
19  associated with the administration of a vaccine after the effective date of this part
20  [effective Oct. 1, 1988] solely due to the manufacturer's failure to provide direct
21  warnings to the injured party (or the injured party's legal representative) of the
22  potential dangers resulting from the administration of the vaccine manufactured by
23  the manufacturer."

24      In this lawsuit, Plaintiff alleges "that the dangerous, defective and unsafe
25  condition of the influenza vaccination was a substantial factor in causing [her] injury
26  and harm, resulting in permanent paraplegia." (Exhibit A, Complaint ¶25.) Plaintiff
27  repeatedly alleges that the vaccine "was dangerous, defective and unsafe." (Exhibit
28  A, Complaint ¶¶24, 31, 36, 42, 51. In fact, Plaintiff specifically refers to the

"designing" and/or the "unsafe design" of the vaccine throughout the Complaint. (Exhibit A, Complaint ¶¶13-15, 17, 19, 22, 30, 32, 37-39, 42, 43, 51) Likewise, Plaintiff expressly sets forth failure to warn claims in the Complaint. (Exhibit A, Complaint ¶¶46, 48, 49, 54-57)

These allegations make it clear that Plaintiff's lawsuit seeks to recover damages arising out of the design and manufacturing of an influenza vaccine. Therefore, all of Plaintiff's claims are subject to, and preempted by the Vaccine Act.

## IV.    SUPPLEMENTAL JURISDICTION

Each of Plaintiff's five counts in the Complaint is completely preempted by the Vaccine Act, as described above. If this Court were to find that any claim asserted by Plaintiff is not preempted, however, the removal still would be proper based on the preemption of Plaintiff's other claims, and this Court would have supplemental jurisdiction over any non-preempted claims under 28 U.S.C. §§ 1367 and 1441(c).

## V.    VENUE

Plaintiff filed her Complaint in the Superior Court of the State of California for the County of Los Angeles, which is within this judicial district and division. See 28 U.S.C. § 84(c)(2). This Court is thus the proper court for removal under 28 U.S.C. §§ 1441(a), 1446(a).

## VI.    TIMELINESS

Because Sanofi was served with the Complaint on November 26, 2014, this Notice of Removal is timely filed. See 28 U.S.C. § 1446(b) ("notice of removal. . . shall be filed within thirty days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based").

## VII.   <u>NOTICE</u>

As required by 28 U.S.C. § 1446(d), Sanofi will give written notice of this notice of removal to Plaintiff and will file a copy of it with the clerk of the state court.

## VIII.   <u>CONCLUSION</u>

For the foregoing reasons, Sanofi respectfully states that this action, previously pending in the Superior Court for the State of California, County of Los Angeles, is properly removed to this Court, and Sanofi respectfully requests that this Court proceed as if this case had been originally initiated in this Court.

DATED:   December 15, 2014          HERZFELD & RUBIN LLP

By: _____

        MICHAEL A. ZUK
        VADIM BRASLAVSKY
        Attorneys for Defendant,
        SANOFI PASTEUR INC.

NOTICE OF REMOVAL WITH ATTACHED COMPLAINT

**3**

1  MICHAEL A. ZUK, ESQ. (Bar # 83102)
   mzuk@hrllp-law.com
2  VADIM BRASLAVSKY, ESQ. (Bar # 223920)
   vbraslavsky@hrllp-law.com
3  **HERZFELD & RUBIN LLP**
4  1925 Century Park East, Suite 900
   Los Angeles, California 90067-2783
5  Telephone:  (310) 553-0451
6  Facsimile:    (310) 553-0648

7
   Attorneys for Defendant,
8  SANOFI PASTEUR INC.

9
10              **UNITED STATES DISTRICT COURT**
11    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

12  GENESIS MORA, a minor, by and      CASE NO.: 2:14-cv-09549-FMO (ASx)
    through her Guardian Ad Litem,      Honorable Fernando M. Olguin
13  LORENA MORA,                        Courtroom: 25
14                Plaintiff,
                                        **DEFENDANT SANOFI PASTEUR**
15        vs.                           **INC.'S CORRECTED NOTICE OF**
                                        **MOTION AND MOTION TO**
16                                      **DISMISS PLAINTIFF'S**
    SANOFI PASTEUR INC. and DOES 1      **COMPLAINT PURSUANT TO**
17  through 100, inclusive              **RULE 12(b)(6); MEMORANDUM**
                                        **OF POINTS AND AUTHORITIES;**
18                Defendants.           **AND DECLARATION OF VADIM**
                                        **BRASLAVSKY IN SUPPORT**
19                                      **THEREOF; AND [PROPOSED]**
20                                      **ORDER**
21
22                                      Hearing Date:  April 30, 2015
                                        Hearing Time: 10:00 a.m.
23
24                                      Complaint Served:   November 26, 2014
25
26
27
28

**TO THE HONORABLE COURT, AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Thursday, April 30, 2015 at 10:00 a.m., or soon thereafter as the matter may be heard in Courtroom 25 of the above entitled Court, located at 312 North Spring Street, Los Angeles, CA 90012, Defendant Sanofi Pasteur Inc. ("Sanofi") will and hereby moves the Court pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure* for an Order dismissing Plaintiff's Complaint for Damages with prejudice.

The basis for this motion is that Plaintiff has failed to state a claim upon which relief can be granted because all of Plaintiff's product liability claims challenge the safety of an influenza vaccine. However, such claims for personal injuries against a vaccine manufacturer, such as Sanofi, are subject to, and barred by the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§300aa-1-33. ("Vaccine Act") and *Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068 (U.S. 2011).

Complaint therefore must be dismissed pursuant to *Federal Rule of Civil Procedure* 12(b)(6).

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on January 29, 2015.

The Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Declaration of Vadim Braslavsky, the records and files in this action, any other matters of which this Court may take judicial notice, and on such other and further arguments, documents and grounds as may be advanced before, during, and after the hearing on this matter.

DATED:   February 9, 2015          HERZFELD & RUBIN LLP

                                   By:   /s/ Vadim Braslavsky
                                         MICHAEL A. ZUK
                                         VADIM BRASLAVSKY
                                         Attorneys for Defendant,
                                         SANOFI PASTEUR INC.

DEFENDANT SANOFI PASTEUR INC.'S CORRECTED NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF VADIM BRASLAVSKY IN SUPPORT THEREOF

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION..........................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND....................3

III.    LEGAL STANDARDS.....................................................4

        A.    Motion To Dismiss For Failure To State A Claim Under
              Rule 12(b)(6).....................................................4

        B.    The Vaccine Act .................................................4

IV.     ARGUMENT ................................................................7

        A.    The Vaccine Act Preempts Plaintiff's Design Defect
              Claims As A Matter Of Law...................................7

              1.    Questions Of Vaccine Design Are Subject Solely To
                    Federal Law ............................................7

              2.    Courts Unanimously Agree That The Vaccine
                    Act Bars Design Defect Claims, Such as
                    Those Asserted Here, And Removes All
                    Questions of Vaccine Design From A Jury's
                    Purview .................................................9

        B.    Plaintiff's Manufacturing Defect is Preempted Under the
              Vaccine Act......................................................14

        C.    Plaintiffs' Failure To Warn Claim Is Barred Under The
              Vaccine Act......................................................14

V.      CONCLUSION .............................................................15

DEFENDANT SANOFI PASTEUR INC.'S CORRECTED NOTICE OF MOTION AND
MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6);
MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF VADIM
BRASLAVSKY IN SUPPORT THEREOF; AND [PROPOSED] ORDER

# Table of Authorities

Page(s)

## Cases

*Althen v. Sec'y of Health & Human Servs.*,
    418 F.3d 1274, 1280 (Fed. Cir. 2005) .................................................... 5, 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................ 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007) .......................................................... 4

*Blackmon v. American Home Products Corp.*,
    328 F. Supp. 2d 659 (S.D. Tex. 2004)…………………………………12, 13, 15

*Brice v. Sec'y of Health & Human Servs.*,
    240 F.3d 1367, 1368 (Fed. Cir. 2001)…………………………………..7, 9

*Bruesewitz v. Wyeth LLC*,
    131 S. Ct. 1068, 1075, 1082 (2011)……………………..……………...7, 9, 10

*Freightliner Corp. v. Myrick*,
    514 U.S. 280, 287 (1995) ........................................................ 7

*Holmes v. Merck & Co.*,
    697 F.3d 1080, 1085-1089 (9th Cir. 2012)........................................... 7, 11

*Irving v. Mazda Motor Corp.*,
    136 F.3d 764 (11th Cir. 1998) ................................................... 6

*Sprewell v. Golden State Warriors*,
    266 F.3d 979, 988 (2001) ....................................................... 4, 5

*Sykes v. Glaxo-SmithKline*,
    484 F. Supp. 2d at 299...................................................... 11, 12

DEFENDANT SANOFI PASTEUR INC.'S CORRECTED NOTICE OF MOTION AND
MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6);
MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF VADIM
BRASLAVSKY IN SUPPORT THEREOF; AND [PROPOSED] ORDER

**Statutes**

21 U.S.C. § 301 et seq. ........................................................................8

28 U.S.C. § 1332 .................................................................................3

42 U.S.C. § 262 ...................................................................................8

42 U.S.C. § 262(a) ..............................................................................8

42 U.S.C. §§300aa-1-33 ..................................................................3, 4

42 U.S.C. § 300aa-1, 2 ...............................................................4, 5, 7

42 U.S.C. §§ 300aa-2(a)(2) and (7) ...................................................8

42 U.S.C. §§ 300aa-11, 12, 13, 14....................................................5

42 U.S.C. § 300aa-11(a)(2) ................................................................6

42 U.S.C. § 300aa-21(a) .....................................................................6

42 U.S.C. § 300aa-22(a) ......................................................................9

42 U.S.C. § 300 aa- 22(b) ...............................................6, 7, 9, 13

42 U.S.C. 300aa-22(b)(1) ......................................................9, 10, 11

42 U.S.C.A. § 300aa-22 ...................................................................11

42 U.S.C.A. § 300aa-22(b) ..............................................................11

42 U.S.C.A. § 300aa-22(b)(1) ..........................................................12

42 U.S.C. § 300aa-22(b)(c) .................................................................6

42 U.S.C. § 300aa-22(c) ...................................................................15

42 U.S.C. §300aa-23(d)(2)..................................................................6

42 U.S.C. § 300aa-27 ..........................................................................8

42 U.S.C. § 300aa-33(3) ......................................................................6

21 C.F.R. § 600 et seq..........................................................................8

21 C.F.R. § 600.3(h) ............................................................................8

21 C.F.R. §§ 601.2 ..............................................................................8

21 C.F.R. §§ 601.2(a)...........................................................................8

21 C.F.R. §§601.12 ..............................................................................8

DEFENDANT SANOFI PASTEUR INC.'S CORRECTED NOTICE OF MOTION AND
MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6);
MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF VADIM
BRASLAVSKY IN SUPPORT THEREOF; AND [PROPOSED] ORDER

## Rules of Court

*Federal Rule of Civil Procedure* 12(b)(6)……………………………………..4

*Local Rule of Court* 7-3 ..................................................................... 1

## United States Code Congressional and Administrative News

1986 U.S.C.C.A.N. at 6368 ......................................................…..15

## Secondary Authorities

Restatement Second, Torts § 402A Comment k  .......................……12

## Constitution of the United States

U.S. Const. art. VI, cl. 2.............................................……...7

iv

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This action arises out of an administration of an FDA-approved influenza vaccine, manufactured by Defendant Sanofi Pasteur Inc. ("Sanofi") ("Vaccine"), to Plaintiff Genesis Mora ("Mora" or "Plaintiff") on or about September 5, 2011. Plaintiff alleged that the Vaccine caused her to become a permanent paraplegic because the Vaccine was defectively manufactured and designed, and because Sanofi failed to warn Plaintiff of the Vaccine's risks and side effects.

Plaintiff's claims against Sanofi cannot survive this Motion because they are all preempted by federal law. Specifically, the Complaint ("Compl.") sets out five state-law claims: (1) Strict Product Liability (Manufacturing Defect); (2) Strict Product Liability (Design Defect: Consumer Expectation Test); (3) Strict Product Liability (Design Defect: Risk-Benefit Test); (4) Strict Product Liability (Failure to Warn); and (5) Negligent Product Liability (Failure to Warn). Although labeled differently, each count sets forth identical allegations that Sanofi created a defective and unsafe Vaccine, which caused the alleged injuries.  Specifically, Plaintiff alleged as follows:

First purported Cause of Action for Manufacturing Defect: Plaintiff alleged that, "[Sanofi] negligently designed, manufactured, tested, inspected, assembled, distributed, sold, supplied and placed into the stream of commerce, an influenza vaccination which was dangerous, detective and unsafe" (Compl., p. 4:27 – 5:1). Plaintiff also alleged that, "[a]s a further direct, proximate and legal result of the dangerous, defective and unsafe condition of the influenza vaccination, plaintiff became a permanent paraplegic." (Compl. p. 5:17-18)

Second purported Cause of Action Design Defect – Consumer Expectation Test: Plaintiff alleged that, "influenza vaccination was dangerous, defective and unsafe. (Compl., p. 6:11-12). Plaintiff further alleged that, "the influenza vaccination

DEFENDANT SANOFI PASTEUR INC.'S CORRECTED NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF VADIM BRASLAVSKY IN SUPPORT THEREOF; AND [PROPOSED] ORDER

1  designed, manufactured, tested, inspected, assembled, distributed, sold, supplied and

2  placed into the stream of commerce by failed to perform as safely as an ordinary

3  consumer would have expected by causing [Plaintiff] to become a paraplegic

4  resulting from the Guillain-Barre Syndrome.

5      Third purported Cause of Action for Design Defect (Risk-Benefit Test):

6  Plaintiff alleged that, "influenza vaccination was dangerous, defective, and unsafe."

7  (Compl., p. 7, 13-14) Plaintiff further alleged that, "[a]s a…direct, proximate, legal

8  result and substantial factor of the dangerous, defective and unsafe design of the

9  influenza vaccination, plaintiff became a permanent paraplegic." (Compl., p. 8:3-4).

10      Fourth purported Cause of Action for Failure to Warn: Plaintiff alleged that,

11  "[Sanofi] designed, manufactured, tested, inspected, assembled, distributed, sold,

12  supplied and placed into the stream of commerce, an influenza vaccination which

13  was dangerous, detective and unsafe." (Compl., p. 8:14-17) Plaintiff further alleged

14  that, "[a]s a direct, proximate, legal result and substantial factor of the failure of

15  [Sanofi] to adequately warn or instruct the consumers as to all of the potential risks

16  side effects, allergic reactions and dangers of the influenza vaccination, Plaintiff has

17  become paraplegic." (Compl., p. 9:12-15)

18      Fifth purported Cause of Action for Negligent Failure to Warn: Plaintiff

19  alleged that, "[Sanofi] negligently designed, manufactured, tested, inspected,

20  assembled, distributed, sold, supplied and placed into the stream of commerce, an

21  influenza vaccination which was dangerous, detective and unsafe." (Compl., p. 9: 26

22  – p. 10:1) Plaintiff further alleged that, "[a]s a direct, proximate, legal result and

23  substantial factor of the negligent failure of [Sanofi] to adequately warn or instruct

24  the consumers as to all of the potential risks side effects, allergic reactions and

25  dangers of the influenza vaccination, Plaintiff sustained complete paraplegia."

26  (Compl., p. 10:24-27)

27

28

DEFENDANT SANOFI PASTEUR INC.'S CORRECTED NOTICE OF MOTION AND
MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6);
MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF VADIM
BRASLAVSKY IN SUPPORT THEREOF; AND [PROPOSED] ORDER

In essence, each count arises from, and is rooted in Plaintiff's allegation that the influenza vaccine she was administered was dangerous, defective and unsafe. However, claims for personal injuries against a vaccine manufacturer, such as Sanofi, are governed by, and are subject to the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§300aa-1-33. ("Vaccine Act.")  Therefore, all of Plaintiff's claims are completely preempted by federal law.

This Motion should therefore be granted.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On September 5, 2011, Mora, then approximately two years and seven months old, was administered the Vaccine at Kaiser Permanente in Baldwin Park, California. ("Compl., p. 2:10:11). Two days after the administration of the Vaccine, Mora started to complain of stomach pain and became unable to stand up to walk. Mora was taken to the Emergency Room at Kaiser at Kaiser Permanente in Baldwin Park, California, where she was diagnosed with a paralysis and was rendered the differential diagnoses of botulism, transverse myelitis and Guillain-Barre Syndrome. She was hospitalized and has remained a paraplegic ever since. (Compl., p. 2:12 – p. 3:5).

On or about June 18, 2013, Mora filed a Petition for Vaccine Compensation in the U.S. Court of Federal Claims. On or about August 29, 2014 the Vaccine Court entered judgment and dismissed the Petition. On or about September 26, 2014, Mora filed a Notice of Election to File a Civil Action and initiated this matter in the Los Angeles County Superior Court on or about October 14, 2014. (Compl., p. 3-8.)

On December 16, 2014, Sanofi removed the action to this Court pursuant to 28 U.S.C. § 1332 on the grounds that complete diversity of citizenship exists between Plaintiff and Sanofi and that Plaintiff has alleged that more than $75,000 is at issue

3

DEFENDANT SANOFI PASTEUR INC.'S CORRECTED NOTICE OF MOTION AND
MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6);
MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF VADIM
BRASLAVSKY IN SUPPORT THEREOF; AND [PROPOSED] ORDER

in their dispute.[1]

## III.   LEGAL STANDARDS

### A.   Motion To Dismiss For Failure To State A Claim Under Rule 12(b)(6)

Under *Federal Rule of Civil Procedure* 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, a complaint *must* state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); see also *Ashcroft v. Iqbal*, 556 U.S. 662 (2009.)

The Amended Complaint need not contain detailed factual allegations, but the Plaintiff *must* "provide the 'grounds' of his 'entitle[ment] to relief'"; this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.,* 550 U.S. at 555.

Finally, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. The court need not, however, accept as true allegations that *contradict matters properly subject to judicial notice or by exhibit.*" *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (2001.) (Emphasis added)

### B.   The Vaccine Act

Reflecting both the importance of universal childhood immunization to national health policy and a Congressional determination that preventing disease through immunization requires a comprehensive, national program, the Vaccine Act established a National Vaccine Program ("NVP") in the Department of Health and

---

[1] Sanofi argued that Removal is also proper because Plaintiff challenges the safety of an influenza vaccine. However, claims for personal injuries against a vaccine manufacturer, such as Sanofi, are governed by, and are subject to the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§300aa-1-33.

DEFENDANT SANOFI PASTEUR INC.'S CORRECTED NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF VADIM BRASLAVSKY IN SUPPORT THEREOF; AND [PROPOSED] ORDER

Human Services ("HHS"). See 42 U.S.C. § 300aa-1, 2. Created by Congress to "achieve optimal prevention of human infectious diseases through immunization and to achieve optimal prevention against adverse reactions to vaccines," the NVP entrusts federal agencies with national vaccine licensing, testing, research, development, production, distribution and safety evaluation. See *Id.*

Among the agencies appointed to these tasks are the Food and Drug Administration's Office of Biologics Research and Review, the National Institutes of Health, and the Centers for Disease Control and Prevention (along with other agencies named in the Vaccine Act, the "NVP Agencies"). See 42 U.S.C. § 300aa-1 et seq. Congress has charged these NVP Agencies, not state juries, with developing and implementing a cohesive, consistent and comprehensive national vaccine policy, and ensuring safety and efficacy in childhood vaccines. See *Id.*

The Vaccine Act also established a special court ("Vaccine Court"), as part of the United States Court of Federal Claims, to hear claims of alleged vaccine-related injury and to award compensation to injured individuals. See 42 U.S.C. §§ 300aa-11, 12. The Vaccine Court uses more lenient substantive and evidentiary standards than those that would apply in a state or federal court civil action. See 42 U.S.C. §§ 300aa-11, 13, 14. A Vaccine Court claimant may recover compensation simply by proving an injury caused by the administration of a vaccine covered by the Vaccine Act, and under "the system created by Congress . . . close calls regarding causation are resolved in favor of the injured claimants." *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1280 (Fed. Cir. 2005).

Critically, a petitioner in Vaccine Court is not required to prove that the vaccine at issue was unreasonably dangerous by virtue of a design defect to obtain compensation. Id. The Vaccine Act prohibits an individual from filing a civil action

5

1  for damages (over $1,000) against a vaccine manufacturer[2] unless he or she first files
2  a petition under the Act. See 42 U.S.C. § 300aa-11(a)(2). After receiving the Vaccine
3  Court's judgment, a petitioner may elect to reject the judgment and pursue a civil
4  action in state or federal court. See 42 U.S.C. § 300aa-21(a).

5      However, to protect vaccine manufacturers if an elective civil action is filed
6  after the completion of Vaccine Court proceedings, Section 22(b) of the Vaccine Act
7  expressly limits a manufacturer's liability to cases where injury resulted from (i) a
8  manufacturing defect or (ii) inadequate labeling as a consequence of material non-
9  compliance with federal regulatory requirements through intentional, fraudulent or
10 criminal conduct. See 42 U.S.C. §§ 300aa-22(b)(c), 300aa-23(d)(2). To the extent
11 that a plaintiff could previously argue that an FDA-approved childhood vaccine was
12 "defectively designed" and should have used some allegedly safer design, the
13 Vaccine Act precludes litigation of that claim. See *Id*.

14     In addition, the Vaccine Act expressly preempts *any* failure to warn claims.
15 See 42 U.S.C. 300aa-22(c) - "Direct warnings. No vaccine manufacturer shall be
16 liable in a civil action for damages arising from a vaccine-related injury or death
17 associated with the administration of a vaccine after the effective date of this part
18 [effective Oct. 1, 1988] solely due to the manufacturer's failure to provide direct
19 warnings to the injured party (or the injured party's legal representative) of the
20 potential dangers resulting from the administration of the vaccine manufactured by
21 the manufacturer."

25 [2] Under the Vaccine Act, "manufacturer" is defined as "any corporation,
26 organization, or institution . . . which manufacturers, imports, processes, or
27 distributes any vaccines set forth in the Vaccine Injury table . . . ." 42 U.S.C. §
   300aa-33(3).

28

6

DEFENDANT SANOFI PASTEUR INC.'S CORRECTED NOTICE OF MOTION AND
MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6);
MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF VADIM
BRASLAVSKY IN SUPPORT THEREOF; AND [PROPOSED] ORDER

# IV.  ARGUMENT

## A.  The Vaccine Act Preempts Plaintiff's Design Defect Claims As A Matter Of Law

Plaintiff alleges that "the influenza vaccination, designed, manufactured, tested, inspected, assembled, distributed, sold, supplied and placed into the stream of commerce [by Sanofi] failed to perform as safely as an ordinary consumer would have expected." (Compl. p. 6:5-8) Plaintiff further alleges that "[Sanofi's] influenza vaccination was dangerous, defective, and unsafe for its reasonable foreseeable and intended use and purpose." (Compl., p. 6:11-12.)

Plaintiff does not allege that that there was a manufacturing defect. Instead, plaintiff's claims are predicated on a design defect theory (i.e., that the Vaccine to the minor plaintiff was defectively designed because of the alleged availability of an alternative, safer vaccine design) and consequently are barred by the Vaccine Act.

Sanofi cannot be held liable for any vaccine-related injuries based on allegations that its FDA-approved Vaccine was improperly designed or that a differently-designed, unapproved vaccine would have been safer or better. 42 U.S.C. § 300aa-22(b). See *Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1075 (2011); *Holmes v. Merck & Co.*, 697 F.3d 1080, 1085-1089 (9th Cir. 2012). Federal preemption of plaintiff's design defect claim is appropriate under the facts of this case, as the Vaccine Act bars all design defect claims, and here no alternative design for the Vaccine was licensed by the FDA in April, 2007 for use with infants of minor plaintiff's age.

## 1.  Questions Of Vaccine Design Are Subject Solely To Federal Law

Congress, in the exercise of its delegated powers, can supersede not only state statutory or regulatory law, but common law as well. See U.S. Const. art. VI, cl. 2; *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995); *Irving v. Mazda Motor Corp.*, 136 F.3d 764 (11th Cir. 1998). In enacting the Vaccine Act and establishing

the NVP, Congress superseded certain state tort law standards and created legal protections that apply nationally and uniformly in any civil action brought against a vaccine manufacturer. See 42 U.S.C. § 300aa-1; *Brice v. Sec'y of Health & Human Servs.*, 240 F.3d 1367, 1368 (Fed. Cir. 2001) (recognizing that the Vaccine Act modifies state tort law).

The Vaccine Act builds upon existing law under which the FDA strictly regulates the formulation, production and labeling of childhood vaccines.[3] See 21 U.S.C. § 301 et seq.; 21 C.F.R. § 600 et seq. Any manufacturer seeking a license to distribute a new vaccine must submit an extensive formal application to the FDA, setting forth information relating to the formulation, safety, efficacy, manufacturing and labeling of the specific vaccine.[4] See 42 U.S.C. § 262(a); 21 C.F.R. § 601.2(a).

Approval of a license application is based on the applicant's demonstration to the FDA that the product is "safe, pure and potent." See 42 U.S.C. § 262(a). The FDA licenses each vaccine in accordance with a specific formula and also approves the specific labeling information to accompany each vaccine. See 21 C.F.R. §§ 601.2; 601.12. All constituent materials of the vaccine, including ingredients and preservatives, are strictly regulated. See 21 C.F.R. § 600 et seq.; 42 U.S.C. § 262(a).

Following licensure, neither the vaccine formula nor the labeling may be changed without FDA approval. See 21 C.F.R. §§ 601.2(a); 21 C.F.R. § 601.12. Under the NVP, the FDA may also coordinate vaccine safety testing, evaluation of adverse effects of vaccines, and other responsibilities integral to the successful

---

[3] Section 351 of the Public Health Service Act creates a licensing process specifically for biological products, including vaccines. See 42 U.S.C. § 262. Biological products include "any virus, therapeutic serum, toxin, anti-toxin, or analogous product applicable to the prevention, treatment or cure of diseases or injuries of man." See 21 C.F.R. § 600.3(h).

[4] The substance of the applicable FDA laws and regulations is the same today as it was in 2011, when the minor plaintiff received the immunization at issue in this case.

DEFENDANT SANOFI PASTEUR INC.'S CORRECTED NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF VADIM BRASLAVSKY IN SUPPORT THEREOF; AND [PROPOSED] ORDER

operation of a national immunization program with the NVP Agencies. See 42 U.S.C. § 300aa-27; 42 U.S.C. § 300aa-2(a)(2) and (7). Congress has made clear that decisions regarding whether, and under what circumstances, the FDA might have licensed differently-designed vaccines belong to the FDA, not in litigation applying state law to questions of vaccine design.

Section 22 of the Vaccine Act limits any civil action arising from a vaccine-related injury by providing that "[e]xcept as provided in subsections [22](b), [22](c), and [22](e) of this section State law shall apply to a civil action for damages arising from a vaccine-related injury or death." 42 U.S.C. § 300aa-22(a) (emphasis added). Section 22(b)(1) of the Act states:

> No vaccine manufacturer shall be liable in a civil action for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, if the injury or death resulted from side effects that were unavoidable even though the vaccine was properly prepared and was accompanied by proper directions and warnings.

42 U.S.C. § 300aa-22(b)(1).

Thus, Section 22 of the Vaccine Act expressly preempts state law claims based allegations of injury arising from a vaccine that "was properly prepared and accompanied by proper direction and warnings." *Id*. To wit, Section 22(b) is not limited to any particular type of tort claim. The plain language of this section precludes all civil actions, regardless of legal theory, based on such allegation.

## 2. Courts Unanimously Agree That The Vaccine Act Bars Design Defect Claims, Such as Those Asserted Here, And Removes All Questions of Vaccine Design From A Jury's Purview

The preemptive effect of Section 22(b) has been affirmed by the United States Supreme Court in *Bruesewitz v. Wyeth LLC.*, 131 S. Ct. 1068 (2011), where a

DEFENDANT SANOFI PASTEUR INC.'S CORRECTED NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF VADIM BRASLAVSKY IN SUPPORT THEREOF; AND [PROPOSED] ORDER

majority of the Court held that the Vaccine Act preempts *all* design defect claims against manufacturers to recover for injuries or deaths caused by a vaccine's side effects. *Bruesewitz v. Wyeth LLC.*, 131 S. Ct. at 1082.

Parsing the language of the statute, Justice Scalia stated that the "even though" clause modifies the word "unavoidable," and concluded that side effects--including those resulting from design defects--are considered "unavoidable" if the vaccine is properly manufactured and accompanied by proper warnings. *Bruesewitz*, 131 S. Ct. at 1075. According to the majority's logic, if a manufacturer was subject to liability for failure to use a different design, the word "unavoidable" would be meaningless. This is because a "side effect of a vaccine could always have been avoidable by use of a differently designed vaccine not containing the harmful element." *Id.*

As further support for its conclusion, the Court surmised that if Congress had intended to preserve design defect claims, it would have mentioned them along with the other two types of claims. *Id.* at 1076. The Court next dispelled the notion that Congress incorporated comment k of the Restatement (Second) of Torts in § 300aa-22(b)(1), despite the fact that both use a form of the term "unavoidable." *Id.* at 1076-1078.

The Court also found support for the preemption of design defect claims in the structure of the Vaccine Act and of vaccine regulation in general, which is completely silent on the issue of design defects. Leaving aside its statutory construction analysis, the Court next suggested that design defect claims are unnecessary because the Vaccine Act provides means for achieving the same beneficial effects of tort claims: "(1) prompting the development of improved designs, and (2) providing compensation for inflicted injuries." *Id.* at 1079.

The Act's "structural quid pro quo" (i.e., manufacturers' funding of compensation schemes in exchange for protection from costly litigation) was one more factor weighing in favor of preemption. *Id.* at 1080. Although legislative

history did not play a part in the analysis, the Court stated that it would not contradict its conclusion. Justice Breyer wrote a concurring opinion, in which he relied on legislative history, statutory purpose, and agency opinion to reach the same conclusion as the majority. *Id.* at 1082.

A Ninth Circuit panel, in *Holmes v. Merck & Co.*, 697 F.3d 1080, 1085-1089 (9th Cir. 2012) concluded that § 300aa-22(b)(1) preempts all design-defect claims seeking compensation for injury or death caused by a vaccine's unavoidable side effects, even those brought by parents in their individual capacities. The panel flatly rejected the parents' argument that because Section 11 of the Vaccine Act rendered them ineligible for compensation through the Vaccine Court, no other part of the Act applied. *Holmes v. Merck & Co.*, 697 F.3d at 1084.

In *Sykes v. Glaxo-SmithKline*, 484 F. Supp. 2d 289 (E.D. Pa. 2007), the court held that strict liability defective design and negligent design claims brought under state law against a vaccine manufacturer were expressly preempted by the Vaccine Act. The plaintiffs alleged that their child suffered neurological injuries from an injection the mother received while pregnant and from pediatric vaccines the child received, all of which contained the mercury-containing preservative thimerosal. The court noted that the statute in 42 U.S.C.A. § 300aa-22 clearly provides that state law will apply to civil actions for vaccine-related injuries, except in certain instances when federal law will moderate state law.

One modification is the provision in 42 U.S.C.A. § 300aa-22(b) that "no vaccine manufacturer shall be liable . . . if the injury or death resulted from side effects that were unavoidable." The defendants argued that any vaccine-related injury should be deemed "unavoidable" if the vaccine was properly prepared and accompanied by proper warnings. The plaintiffs, on the other hand, argued that the Vaccine Act only bars design defect claims if the side effects are determined, on a

---

11

DEFENDANT SANOFI PASTEUR INC.'S CORRECTED NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF VADIM BRASLAVSKY IN SUPPORT THEREOF; AND [PROPOSED] ORDER

1  case-by-case basis, to be "unavoidable." *Sykes v. Glaxo-SmithKline*, 484 F. Supp. 2d

2  at 299.

3      After reviewing the legislative history, the court concluded that the defendants'

4  construction was the correct one, and that in fact the Vaccine Act bars all defective

5  design claims and relegates them to its compensation system, provided that the

6  vaccine was manufactured and distributed according to federal standards. *Id.* at 299-

7  304. The plaintiffs' argument, the court noted, would undermine the congressional

8  mandate by replacing the federal agencies' role with state juries and further would

9  destroy the uniformity Congress intended to establish with the Vaccine Act. *Id.*, at

10 309-312. The court therefore partially granted the defendant manufacturer's motion

11 for dismissal. *Id.* at 324

12     In *Blackmon v. American Home Products Corp*., 328 F. Supp. 2d 659 (S.D.

13 Tex. 2004), the court held that the Vaccine Act entirely preempts design defect

14 claims under state tort law. The plaintiffs on behalf of their minor son filed a

15 products liability action in Texas state court against vaccine manufacturers, alleging

16 that the mercury-based preservative thimerosal caused the child to suffer

17 neurological injuries.

18     The defendants moved for summary judgment, arguing that 42 U.S.C.A. §

19 300aa-22(b)(1), which barred liability if a vaccine-related injury "resulted from side

20 effects that were unavoidable," imposed a total bar on design defect claims. The

21 plaintiffs, on the other hand, argued that unavoidability was to be determined on a

22 case-by-case basis, and in this case, the injuries could have been avoided if the

23 defendants had used a mercury-free preservative. *Blackmon v. American Home

24 Products Corp*., 328 F. Supp. 2d 659, 663.

25     The court held that the statutory language expressed Congress' intent to

26 foreclose all design defect claims against vaccine manufacturers. It reasoned that

27 there are three types of product liability claims -- (a) defective design; (b) defective

28

---

12

DEFENDANT SANOFI PASTEUR INC.'S CORRECTED NOTICE OF MOTION AND
MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6);
MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF VADIM
BRASLAVSKY IN SUPPORT THEREOF; AND [PROPOSED] ORDER

1   manufacture; and (c) inadequate warning or failure to warn -- and that, because the

2   statute identifies only the second and third, the drafters must have intended that the

3   first category be considered "unavoidable." This conclusion, it noted, was reinforced

4   by both the legislative history and the origins of subsection 22(b) in Comment k of

5   Restatement Second, Torts § 402A.

6       Further, the court found, allowing plaintiffs to show that an alleged defect was

7   not unavoidable by proving a feasible alternative design would be not only

8   inconsistent with the policy underlying the Vaccine Act, but also would strip the

9   statute of all meaning. *Id.* at 665 Permitting juries in each state to pass judgment on

10  the design of childhood vaccines could interfere with the federal government's efforts

11  to establish a uniform national standard for childhood vaccines. For all these reasons,

12  the court granted the defendants' motion for partial summary judgment. *Id.* at 661-

13  668.

14      Here, at least two of Plaintiff's counts are claims of defective design: i.e., the

15  purported second cause of action for Strict Product Liability (Design Defect:

16  Consumer Expectation Test); and the purported third cause of action for Strict

17  Product Liability (Design Defect: Risk-Benefit Test).

18      As discussed above, the Supreme Court made it clear that Congress enacted

19  Section 22(b) to foreclose all design defect claims against vaccine manufacturers to

20  prevent plaintiffs from mounting just such a collateral attack on FDA decisions to

21  approve vaccines for use. If a jury were allowed to opine that an FDA-approved

22  vaccine design were defective and that an unlicensed design should have been used

23  instead, it would undermine the FDA's authority to determine the uniform national

24  design for childhood vaccines and the NVP as a whole.

25      Moreover, vaccine manufacturers would be placed in an intolerable position of

26  facing ongoing liability under state law as a consequence of complying with FDA

27  approval and regulatory oversight. This result could ultimately threaten the supply of

28

13

DEFENDANT SANOFI PASTEUR INC.'S CORRECTED NOTICE OF MOTION AND
MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6);
MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF VADIM
BRASLAVSKY IN SUPPORT THEREOF; AND [PROPOSED] ORDER

1 | childhood vaccines - the exact problem Congress intended to address by enacting the
2 | Vaccine Act. See *Blackmon*, 328 F. Supp. 2d at 665.

3 |        Plaintiff's design defect claims; i.e., second and third causes of action, should
4 | be dismissed without leave to amend as such amendment would be futile.

5 |     **B.**    **Plaintiff's Purported Manufacturing Defect Claim is Preempted**
6 |          **Under the Vaccine Act.**

7 |        Plaintiff's purported "manufacturing defect" claim must also fail to the extent
8 | that it is simply a repackaged version of their preempted design defect claims.
9 | Indeed, under the purported first cause of action for Strict Liability (Manufacturer's
10 | Defect), Plaintiff alleges that, "at the time the said influenza vaccination was put into
11 | the stream of commerce, said influenza vaccination was dangerous, defective, and
12 | unsafe."

13 |        To wit, plaintiff's labeling of this count as "manufacturer defect" not-
14 | withstanding, it appears that such claim is inextricably related, and cannot be
15 | separated from the defective design claim; i.e., Plaintiff's allusion to and that an
16 | "alternative safer design" for the Vaccine existed at the time of minor Plaintiff's
17 | immunization in September, 2011. As such this claim must likewise fail.

18 |     **C.**    **Plaintiffs' Failure To Warn Claim Is Barred Under The Vaccine**
19 |          **Act**

20 |        To the extent plaintiff alleges any failure to warn, they do so solely in the
21 | context of a boilerplate negligence allegation that is directed to every aspect of
22 | Sanofi's conduct. Specifically, Plaintiff alleges that "[Sanofi] failed to adequately
23 | warn or instruct recipients of the potential risks, side effects, allergic reactions and
24 | dangers, of the influenza vaccinations." (Compl., p. 9:8-10; p. 10:12-14).

25 |        Plaintiff does not plead any particular respect in which the vaccine warnings
26 | were defective - nor do they plead what information allegedly would have made the
27 | warnings adequate. To the extent that plaintiff's failure to warn assertion is based on
28 |

1 │ a claim that Sanofi did not provide direct warnings to plaintiff or the public

2 │ generally, such claims are explicitly foreclosed by the Vaccine Act.

3 │      Section 22(c) of the Vaccine Act provides:

4 │      No vaccine manufacturer shall be liable in a civil action for damages

5 │      arising from a vaccine-related injury or death associated with the

6 │      administration of a vaccine after October 1, 1988, solely due to the

7 │      manufacturer's failure to provide direct warnings to the injured party (or

8 │      the injured party's legal representative) of the potential dangers resulting

9 │      from the administration of the vaccine manufactured by the

10 │      manufacturer.

11 │ 42 U.S.C. § 300aa-22(c).

12 │      Vaccines are distributed and administered exclusively through physicians and

13 │ health professionals; Congress recognized this area as one in which the safe and

14 │ effective use of the product did not depend on direct warnings to persons receiving

15 │ vaccines (or their legal representatives). See 1986 U.S.C.C.A.N. at 6368. As the

16 │ Blackmon court wrote, "the Vaccine Act clearly bars claims based on a

17 │ manufacturer's failure to provide warnings to the public or to consumers." *Blackmon*,

18 │ 328 F. Supp. 2d at 666.

19 │      Therefore, these claims are barred by Section 22(c).

20 │ **V.    CONCLUSION**

21 │      For all the foregoing reasons, it is respectfully requests that the Court dismiss

22 │ Plaintiff's Complaint with prejudice.

23 │ DATED:  February 9, 2015       HERZFELD & RUBIN LLP

24 │

25 │            By:   /s/ Vadim Braslavsky

26 │               MICHAEL A. ZUK

              VADIM BRASLAVSKY

27 │               Attorneys for Defendant,

              SANOFI PASTEUR INC.

28 │

---

15

## **DECLARATION OF VADIM BRASLAVSKY**

I, Vadim Braslavsky, declare as follows:

1.     I am an attorney licensed to practice law in the State of California and before this Court.  I am a senior associate at Herzfeld and Rubin LLP, attorneys of record for Defendant Sanofi Pasteur Inc. ("Sanofi") in this action.  I have personal knowledge of the matters set forth herein, and if called upon as a witness, I could and would competently testify thereto.

2.     I am one of the attorneys responsible for representing Sanofi in this matter.  I am, therefore, familiar with the pleadings in this matter.

3.     I have met and conferred with Danny Soong, counsel for Plaintiff, pursuant to Local Rule 7-3. On January 21, 2015, I contacted Mr. Soong via telephone, and left a message informing him of Sanofi's intent to file a Motion to Dismiss. On January 29, 2015 Mr. Soong and I met and conferred by telephone about Sanofi's Motion to Dismiss.

4.     We were unable to informally resolve any issues addressed by Sanofi's Motion to Dismiss. Mr. Soong stated that Plaintiff would not amend her Complaint or dismiss any of her state law claims, even in light of the Vaccine Act's complete preemption arguments made in Sanofi's Notice of Removal that I stated would be included in Sanofi's Motion to Dismiss.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 9, 2015 at Los Angeles, California.

/s/ Vadim Braslavsky
VADIM BRASLAVSKY

DEFENDANT SANOFI PASTEUR INC.'S CORRECTED NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF VADIM BRASLAVSKY IN SUPPORT THEREOF; AND [PROPOSED] ORDER

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 1925 Century Park East, Suite 900, Los Angeles, California 90067.

On February 10, 2014, I served the foregoing document described as: **DEFENDANT SANOFI PASTEUR INC.'S CORRECTED NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF VADIM BRASLAVSKY IN SUPPORT THEREOF; AND [PROPOSED] ORDER** on the interested parties in this action by placing a true and correct copy thereof in a sealed envelope addressed as follows:

### See attached service list.

☐   (MAIL) I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.

☐   (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express , an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy  of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

☐   (MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed and provided them to a professional messenger service for service. A separate Personal Proof of Service provided by the professional messenger service will be filed under separate cover.

☐    (FACSIMILE) Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☐    (E-MAIL or ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☑    (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

     I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

     Executed on **February 10, 2015**, at Los Angeles, California.

| Joe Huang | /s/ Joe Huang |
|:---:|:---:|
| (Type or print name) | (Signature) |

---

DEFENDANT SANOFI PASTEUR INC.'S CORRECTED NOTICE OF MOTION AND
MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6);
MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF VADIM
BRASLAVSKY IN SUPPORT THEREOF; AND [PROPOSED] ORDER

*Mora vs. Sanofi Pasteur Inc.*
## SERVICE LIST

Danny Soong
LAW OFFICES OF DANNY SOONG
100 N. Barranca Street, Suite 700
West Covina, CA 91791
Telephone: (626) 858-2068
Fax: (626) 858-1922
Counsel for Plaintiff *Genesis Mora, a minor, by and through her Guardian Ad Litem, Lorena Mora*

**4**



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

G.M., a minor, by and through her          )     Case No. CV 14-9549 FMO (ASx)
Guardian Ad Litem, LORENA MORA,            )
                                           )
                Plaintiff,                 )
                                           )
        v.                                 )     ORDER
                                           )
SANOFI PASTEUR INC., et al.                )
                                           )
                Defendants.                )
_____    )

Having reviewed all the briefing filed with respect to defendant Sanofi Pasteur Inc.'s ("defendant") Motion to Dismiss ("Motion"), the court concludes as follows.

Many motions to dismiss can be avoided if the parties confer in good faith (as required by Local Rule 7-3), especially for perceived defects in a complaint, answer or counterclaim that could be corrected by amendment.  See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment).  Moreover, a party has the right to amend the complaint "once as a matter of course[.]"  Fed. R. Civ. P. 15(a)(1).  A Rule 12(b)(6) motion is not a responsive pleading and therefore plaintiff might have a right to amend.  See, e.g., St. Michael's Convalescent Hosp. v. California, 643 F.2d 1369, 1374 (9th Cir. 1981); Nolen v. Fitzharris, 450 F.2d 958, 958 (9th Cir. 1971).  Even after a complaint has been amended or a responsive pleading has been served, the Federal Rules of Civil Procedure provide that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ.

P. 15(a)(2). The Ninth Circuit requires that this policy favoring amendment be applied with "extreme liberality." <u>Morongo Band of Mission Indians v. Rose</u>, 893 F.2d 1074, 1079 (9th Cir. 1990).

Given the policy favoring amendment of complaints and that plaintiff is, in effect, entitled to amend the complaint, "once as a matter of course," <u>see</u> Fed. R. Civ. P. 15(a)(1), the court will grant defendant's Motion and dismiss plaintiff's Complaint with leave to amend. In preparing the First Amended Complaint, plaintiff shall carefully evaluate the contentions set forth in defendant's Motion, including whether plaintiff's product liability claims are preempted. The court expects that defendant will agree to any amendment(s) that will cure the alleged defect(s).

Based on the foregoing, IT IS ORDERED THAT:

1. Defendant's Motion to Dismiss **(Document No. 14)** is **granted**, and the hearing on defendant's Motion, currently set for April 30, 2015, is hereby **vacated**.

2. The Complaint is **dismissed with leave to amend**.

3. If plaintiff still wishes to pursue this action, she is granted until **May 14, 2015**, to file a First Amended Complaint attempting to cure, to the extent she believes is warranted by existing law, the alleged defects outlined in defendant's Motion.

4. The First Amended Complaint must be labeled "First Amended Complaint," filed in compliance with Local Rule 3-2 and contain the case number assigned to the case, <u>i.e.</u>, Case No. CV 14-9549 FMO (ASx). In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make her First Amended Complaint complete. Local Rule 15-2 requires that an amended pleading be complete in and of itself without reference to any prior pleading. This is because, as a general rule, an amended pleading supersedes the original pleading. <u>See</u> <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967), <u>overruled in part</u>, <u>Lacey v. Maricopa County</u>, 693 F.3d 896 (9th Cir. 2012) (<u>en</u> <u>banc</u>).

5. Plaintiff is cautioned that failure to timely file a First Amended Complaint may result in this action being dismissed without prejudice for failure to prosecute and/or failure to comply with a court order. <u>See</u> Fed. R. Civ. P. 41(b); <u>Link v. Wabash R.R. Co.</u>, 370 U.S. 626, 629-30, 82 S.Ct. 1386, 1388 (1962).

6.     Defendant Sanofi Pasteur Inc. shall file its Answer to the First Amended Complaint or a motion pursuant to Fed. R. Civ. P. 12 no later than **May 28, 2015**.

7.     In the event defendant wishes to file another motion to dismiss, then counsel for the parties shall, on **May 21, 2015, at 10:00 a.m.**[1] meet and confer to discuss defendant's motion to dismiss.  Defendant's motion must include copies of all meet and confer letters as well as a declaration that sets forth, in detail, the entire meet and confer process (i.e., when and where it took place, how long it lasted and the position of each attorney with respect to each disputed issue that will be the subject of the motion).  Failure to include such a declaration will result in the motion being denied.

Dated this 28th day of April, 2015.

_____
/s/
Fernando M. Olguin
United States District Judge

---

[1]   Counsel may agree to meet and confer at another time and place without seeking court approval for such an agreement.

5

Danny Soong, Bar No. 192045
**LAW OFFICES OF DANNY SOONG**
100 N. Barranca St, Suite 700
West Covina, CA  91791
Telephone:     (626) 858-2068
Fax:               (626) 858-1922

Attorney for Plaintiff, G.M., a minor,
by and through Her Guardian Ad
Litem, LORENA MORA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| G.M., a minor, by and through her Guardian Ad Litem, LORENA MORA<br><br>Plaintiff,<br><br>v.<br><br>SANOFI PASTEUR INC. and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 2:14-CV-09549-FMO (ASx)<br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND**<br><br>1. **STRICT LIABILITY (Manufacturing Defect)**<br>2. **NEGLIGENCE (Negligent Manufacturing)**<br>3. **STRICT LIABILITY (Inadequate Warnings)**<br>4. **MISREPRESENTATION BASED ON CONCEALMENT**<br>5. **BREACH OF EXPRESS WARRANTY**<br>6. **BREACH OF IMPLIED WARRANTY** |

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff G.M. ("Plaintiff"), a minor, by and through her Guardian Ad Litem, LORENA MORA, and her counsel, hereby sues the Defendant, Sanofi Pasteur, Inc. ("Defendant Sanofi" or "Defendant"), a Delaware corporation with its principal offices located at 1 Discovery Drive, Swiftwater, Pennsylvania, 18370, and for her cause of action states:

1

---

FIRST AMENDED COMPLAINT

# I. **INTRODUCTION**

1. Fluzone is an influenza virus vaccine manufactured, distributed and sold by Sanofi for active immunization against influenza disease. Fluzone can cause and precipitate Transverse Myelitis resulting in injury across the spinal cord, affecting sensation below the injury. G.M., a two year old minor, was injected with Fluzone and suffered Transverse Myelitis, which has resulted in complete paraplegia below T9/T10 at the thoracic spine levels.

## II. **PARTIES**

### A. **PLAINTIFF**

2. Plaintiff G.M. is a five year old U.S. citizen and resident of the State of California, residing in Covina, California.

3. At all times relevant hereto, LORENA MORA, is an adult residing in Covina, California and the mother and Guardian Ad Litem of Plaintiff, G.M.

4. Plaintiff G.M. was prescribed and injected with Fluzone, and as a result thereof suffered Transverse Myelitis, resulting in complete paraplegia. As is the case with patients suffering from paraplegia, Plaintiff G.M. is at risk for needing invasive procedures or surgeries in the future should her condition require it or should it deteriorate further.

### B. **DEFENDANT**

5. Defendant Sanofi is a Delaware corporation with its corporate headquarters located at 1 Discovery Drive, Swiftwater, Pennsylvania 18370.

6. At all times relevant hereto, Defendant Sanofi was engaged in the business of marketing, manufacturing, selling and distributing Fluzone, at present or in the past, markets and distributes Fluzone throughout the world including all fifty states in the United States, and throughout California.

## III. **JURISDICTION**

7. Plaintiff's action was originally filed in the Superior Court of the State of California, County of Los Angeles, civil case number BC 560804. Defendant Sanofi filed a Notice of Removal Action on December 15, 2014, based on diversity jurisdiction under 28 U.S.C. § 1332 or, in the alternative, federal question jurisdiction under 28 U.S.C. § 1331. Defendant Sanofi asserts subject matter jurisdiction based on diversity jurisdiction because the amount in controversy exceeds $75,000 exclusive of interest

2

1  and costs, and because this is an action by an individual Plaintiff who is a citizen of a different state

2  from the Defendant.

### IV. FACTUAL BACKGROUND

#### A. Plaintiff G.M.'s Story

8.  Plaintiff, G.M., was born a healthy baby girl on February 8, 2010.

9.  The pregnancy and vaginal delivery of Plaintiff G.M. by LORENA MORA, were normal and without any complications.

10.  On September 5, 2012, LORENA MORA took her twelve year old son, Mario Mora to Kaiser Permanente at 1011 Baldwin Park Blvd. in Baldwin Park, California for a sprained ankle.   Plaintiff G.M., who was approximately two years and seven months at the time, accompanied them.

11.  While at Kaiser on September 5, 2012, a pediatrician, Chhoeuy Ov Yam, M.D. and Shirley Williams, a licensed vocational nurse (LVN), recommended that Plaintiff G.M. receive an influenza vaccine.  Plaintiff G.M. was not scheduled for an influenza vaccine.   When Shirley William LVN initially offered Plaintiff G.M. an influenza vaccine, LORENA MORA declined. After Shirley Williams LVN persisted again with recommending that Plaintiff G.M. receive an influenza vaccine, LORENA MORA agreed to one for Plaintiff G.M.   Shirley Williams LVN injected the influenza vaccine, Fluzone, manufactured by Defendant in the thigh of Plaintiff G.M.

12.  Prior to the administration of her September 5, 2012, influenza vaccination, Plaintiff G.M. was in good health and did not suffer from any medical conditions.

13.  On the morning of September 7, 2011, two days after receiving her influenza vaccination at Kaiser Permanente in Baldwin Park, Plaintiff G.M. started to complain of stomach pain to LORENA MORA.   LORENA MORA told Plaintiff G.M. to go sit on the couch.   As Plaintiff G.M. attempted to walk toward the couch, she stumbled forward onto the floor, started crawling on her hands and was unable to stand up to walk.   LORENA MORA immediately drove Plaintiff G.M. to the Emergency Room (E.R.) at Kaiser Permanente in Baldwin Park, California to be seen by her pediatrician, Chhoeuy Ov Yam, M.D.

3

14.    Following a physical examination of Plaintiff G.M. on September 7, 2012, Dr. Chhoeuy Ov Yam diagnosed paralysis and rendered the differential diagnoses of botulism, transverse myelitis and Guillain-Barre Syndrome.

15.    On September 7, 2012, Plaintiff G.M. was transferred by ambulance from Kaiser Permanente in Baldwin Park to Kaiser Permanente on Sunset, in Los Angeles for further medical testing and treatments.

16.    From September 7, 2012, until October 6, 2012, Plaintiff G.M. was hospitalized at Kaiser Permanente on Sunset, in Los Angeles where she underwent extensive medical testing and treatments including intravenous immunoglobulin, plasma exchanges, spinal tabs, CT scans, MRIs and X-rays. The reasons for admission were identified as ascending paralysis, weakness of leg, transverse myelitis and radiological examination.    The principal/secondary discharge diagnoses were transverse myelitis, neurogenic bladder and paraplegia.

17.    Plaintiff G.M. has remained a complete paraplegic since September 7, 2012, to the present as a direct result of her influenza vaccination manufactured by Defendant and administered to her on September 5, 2012, at Kaiser Permanente in Baldwin Park, California.    Plaintiff G.M. suffers from a myriad of current medical conditions described below.

18.    Plaintiff G.M. is unable to ambulate with her lower extremities and maneuvers around in a wheelchair due to her paraplegic condition.

19.    Plaintiff G.M. experiences random headaches with blurred vision.

20.    Plaintiff G.M. suffers from pain to her bilateral shoulders, elbows, hands, lower back and has prominent scoliosis of her lower back from the frequent arching of her back due to ambulating with her upper extremities on the floor.

21.    When Plaintiff G.M. lies on her back, both of her legs plop open, also known as the frog syndrome, a medical condition which prohibits her from extending her legs completely due to hip flexor tightness.

22.    Plaintiff G.M. has slight knock knees, a medical condition used to describe an inward angle of the thighs when a squat is performed or while standing in a neutral position.

4

FIRST AMENDED COMPLAINT

23.     Plaintiff G.M. has pressure sores from leg braces and red marks on the bottom of her legs and buttocks from sitting too much.

24.     Plaintiff G.M. cannot urinate on her own and has constipation all the time.   She has a permanent catheter and has to be changed every three to four hours.

25.     Plaintiff G.M. is susceptible to urinary tract infections (UTI) due to her neurogenic bladder and has been admitted to the emergency room numerous times for UTI since September 5, 2012, to the present.

26.     The physicians who have treated Plaintiff G.M. has advised LORENA MORA that Plaintiff G.M. may not be able to have children in the future due to her paraplegia.

27.     Plaintiff G.M. is often depressed and laments the inability to use her legs while she watches other children play at school and other playground settings.

28.     Due to the orthopedic and urinary conditions from her paraplegic condition from the influenza vaccination manufactured by Defendant, her life care planner and physicians have opined that Plaintiff G.M. will necessitate, among various operative procedures, including, but not limited to, posterior spinal fusion with instrumentation and bone graft of the thoracolumbar spine, steroid injections to the bilateral shoulders, arthroscopic acromioplasty of the bilateral shoulders, steroid injections to the bilateral wrists, innominate osteotomy with internal fixation of the bilateral hips,  a hemorrhoidectomy, myocutaneous flap and repair of decubitus ulcer.

**B.     Defendant's Company's History**

29.     On information and belief, SANOFI is a French multinational pharmaceutical company headquartered in Paris, France and as of 2013, is the fifth largest by prescriptive sales.

30.     On information and belief, Defendant SANOFI PASTEUR. INC. is the vaccine division of SANOFI and is the largest company in the world devoted entirely to vaccines.

31.     Defendant SANOFI PASTEUR INC. is in the business of manufacturing, selling and distributing influenza vaccinations across the world and throughout the fifty states of the United States including the subject influenza vaccination ultimately administered to Plaintiff GENESIS MORA at Kaiser Permanente in Baldwin Park, California on September 5, 2012.

\\\

5

### C. Prescription Information for and Complaints of Lot Number U4482BA

32. The Fluzone influenza vaccination manufactured by Defendant and administered to Plaintiff G.M. on September 5, 2012, came from Lot Number "U4482BA".

33. Prior to Plaintiff G.M.'s incident, the influenza vaccinations manufactured by Defendant have been known by Defendant to cause and precipitate, among others, two separate and distinct medical conditions known as the Guillain-Barre Syndrome and Transverse Myelitis.

34. Guillain-Barre Syndrome (GBS) is a disorder in which the body's immune system attacks part of the peripheral nervous system. The first symptoms of this disorder include varying degrees of weakness or tingling sensation in the legs and in many instances, the symmetrical weakness and abnormal sensations spread up to the arms and upper body.

35. Transverse Myelitis is a neurologic syndrome caused by inflammation of the spinal cord or lesion usually in the thoracic spine which can be diagnosed by an MRI. A person with Transverse Myelitis can be paralyzed from the lesion down and symptoms include limb weakness, sensory disturbance, bowel and bladder dysfunction, back pain and radicular pain in the spinal nerves.

36. Prescription information for the influenza vaccinations for Lot Number U4482BA include specific warnings and precautions of only GBS but not Transverse Myelitis. Attached hereto as Exhibit "A" is a copy of the Prescription Information for the Fluzone influenza vaccine provided by Defendant in the Initial Disclosure Statement.

37. Page one of the Prescription Information for Fluzone sets forth warnings of only GBS but not Transverse Myelitis as follows: "If Guillain-Barre syndrome (GBS) has occurred within 6 weeks of previous influenza vaccination, the decision to give Fluzone should be based on careful consideration of the potential benefits and risks. (5.1)"

38. On page five of the Prescription Information for Fluzone, paragraph 5.1 again sets forth warnings of the Guillain-Barre Syndrome but not Transverse Myelitis as follows "The 1976 swine influenza vaccine was associated with an elevated risk of Guillain-Barre syndrome (GBS). Evidence for a causal reaction of GBS with other influenza vaccines is inconclusive; if an excess risk exists, it is probably slightly more than 1 additional case per 1 million persons vaccinated. If GBS has occurred

6

within 6 weeks of previous influenza vaccination, the decision to give Fluzone should be based on careful consideration of the potential benefit and risks."

39. The National Childhood Vaccine Injury Act (NCVIA) of 1986 requires health professional and vaccine manufacturers to report to the U.S. Department of Health and Human Services (HHS) specific adverse events that occur after the administration of routinely recommended vaccines. In response to NCVIA, CDC and FDA established the Vaccine Adverse Event Reporting System (VAERS).

40. In 1990, the CDC and FDA established VAERS which is a national vaccine safety surveillance program. VAERS is a post-marketing safety program that collects information about adverse events (possible side effects) that occur after the administration of vaccines licensed for use in the United States.

41. According to VAERS in 2012, a child in the state of Vermont received an influenza vaccination manufactured by Defendant SANOFI PASTEUR INC. from Lot Number U4482BA and subsequently developed fever, underwent an MRI and an EEG and was diagnosed with epilepsy.

42. According to VAERS in 2013, a child in the state of New Hampshire received an influenza vaccine manufactured by Defendant SANOFI PASTEUR INC. from Lot Number U4482BA on or about June 6, 2013. The day after receiving the influenza vaccine manufactured by Defendant, the child died.

### D. Miscellaneous

43. On or about June 18, 2013, Plaintiff GENESIS MORA filed a Petition for Vaccine Compensation in the U.S. Court of Federal Claims. On August 29, 2014, the Vaccine Court entered judgment and dismissed the Petition on August 29, 2014. On September 26, 2014, Plaintiff GENESIS MORA filed a Notice of Election to File A Civil Action. Attached hereto as Exhibit "B" is a copy of the Judgment. Attached hereto as Exhibit "C" is a copy of the Notice of Election to File A Civil Action.

44. The true names and capacities, whether individual, corporate, associate or otherwise and the true involvement of Defendants sued herein as DOES 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by fictitious names and will amend this Complaint to show the true names, capacities and involvement when ascertained. Plaintiff is informed and believes and thereon

7

alleges that each of the Defendants designated as a DOE is responsible in some manner for the events and happenings herein referred to and thereby legally caused the injuries and damages herein alleged.

45.  Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants sued herein was the agent and/or employee of each of the remaining Defendants, and each of them, was at all times acting within the purpose and scope of such agency and employment.

## COUNT I

## STRICT PRODUCT LIABILITY (Manufacturing Defect)

46.  Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

47.  Defendant was engaged in the business of manufacturing, selling and distributing Fluzone influenza vaccines in interstate commerce, throughout the United States, including the State of California.

48.  Defendant manufactured, sold and otherwise distributed the specific Fluzone influenza vaccine administered to Plaintiff G.M. on September 5, 2012, from Lot Number U4482BA.

49.  Defendant's intended results for the Fluzone influenza vaccines contained in Lot Number U4482BA were to safely and effectively provide for active immunization against influenza disease caused by influenza virus subtypes A and type B.

50.  Plaintiff alleges that the Fluzone influenza vaccine administered to Plaintiff G.M. on September 5, 2012, contained a manufacturing defect when it left the Defendant's possession.

51.  The Fluzone influenza vaccine administered to Plaintiff G.M. on September 5, 2012, was expected to and did reach Plaintiff G.M. without substantial change in its condition as manufactured, sold and distributed.

52.  Plaintiff G.M. was using the Fluzone influenza vaccine in the manner for which it was intended or in a reasonably foreseeable manner when it malfunctioned resulting in adverse reaction to her and imputable to the deviation of the manufacturing protocol due to location of manufacture, tools and equipment used and the conditions of manufacture.

53.  Plaintiff G.M. alleges that there are at least two other reports set forth in the VAERS System regarding recipients with severe adverse reactions to the Fluzone influenza vaccines contained in Lot

8

Number U4482BA which deviated from the Defendant's intended result and are likewise imputable to the deviation of the manufacturing protocol.

54. Plaintiff alleges that the Fluzone influenza vaccine she received on September 5, 2012, differed from other ostensibly identical units of the same product line resulting in adverse reaction to her and imputable to the deviation of the manufacturing protocol due to the location of manufacture, tools and equipment used and the conditions of manufacture.

55. Plaintiff G.M. alleges that there are at least two other reports set forth in the VAERS System regarding recipients with severe adverse reactions to the Fluzone influenza vaccines contained in Lot Number U4482BA which differed from other ostensible identical units of the same product line and are likewise imputable to the deviation of the manufacturing protocol.

56. As a direct and proximate result of Defendant's manufacturing, selling and distributing Fluzone influenza vaccines with manufacturing defect in interstate commerce, Plaintiff G.M. has suffered transverse myelitis which resulted in permanent paraplegia, is at risk of developing other diseases and medical conditions, necessitating invasive procedures or surgeries in the future should her condition require them or should they deteriorate further.

57. That the Fluzone influenza vaccine's manufacturing defect was a substantial factor in causing harm and damages to Plaintiff G.M.

## COUNT II

## NEGLIGENCE – NEGLIGENT MANUFACTURE

58. Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

59. Defendant owed Plaintiff G.M. a duty to use reasonable care in the manufacturing, selling, and otherwise distributing Fluzone influenza vaccines.

60. Contrary to its duty, the Defendant failed to properly manufacture Fluzone influenza vaccine so as to ascertain whether or not it would function in accordance with the manufacturer's intended result and not differ from other ostensibly identical units of the same product line of the influenza vaccines contained in Lot Number U4482BA.

9

61. Defendant was careless and negligent in the manufacture, selling and distributing of the Fluzone influenza vaccine administered to Plaintiff G.M. on September 5, 2012, which contained a manufacturing defect when it left Defendant's possession and, hence, caused harm and damages to Plaintiff G.M.

62. As a direct and proximate result of Defendant's negligent and careless manufacturing, selling and distributing of Fluzone influenza vaccine in interstate commerce, Plaintiff G.M. has suffered Transverse Myelitis, is at risk of developing other diseases and medical conditions, necessitating invasive procedures or surgeries in the future should her conditions require them or should they deteriorate further.

63. Defendant's negligence or carelessness in the manufacturing, selling, and distributing of the Fluzone influenza vaccine administered to Plaintiff G.M. was a substantial factor in causing harm and damages to Plaintiff G.M.

## COUNT III

## STRICT LIABILITY (IMPROPER WARNINGS)

64. Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

65. Defendant is in the business of manufacturing, selling, and distributing Fluzone influenza vaccines.

66. Defendant manufactured, sold and distributed the Fluzone influenza vaccine administered to Plaintiff G.M. on September 5, 2012 from Lot Number U4482BA.

67. As the manufacturer of Fluzone, Defendant possessed unique knowledge and information from annual post marketing experience during the post-approval use of Fluzone including, but not limited to, the approximate number of recipients of influenza vaccines who developed Transverse Myelitis, the nature and extent of the harm from the Transverse Myelitis, and the time frame of the onset of symptoms from Transverse Myelitis post vaccine.

68. As the manufacturer of Fluzone, Defendant also possessed knowledge of complaints recorded by VAERS of recipients of influenza vaccines who suffered Transverse Myelitis, which led to permanent paralysis to the spinal cord.

10

69.    In spite of this unique knowledge and information obtainable from post marketing experiences and VAERS, Defendant intentionally and fraudulently failed to provide proper warnings in the Prescription Information to Plaintiff G.M.'s physicians and all medical providers that Fluzone influenza vaccines can and have caused recipients to suffer Transverse Myelitis with respect to past recipients.

70.    Defendant willfully and deliberately failed to disclose to Plaintiff G.M.'s physicians and all medical providers by concealing from them regarding the true facts concerning the risk of Transverse Myelitis from receiving the Fluzone influenza vaccines.

71.    Due to Defendant's intentional and fraudulent failure to disclose to Plaintiff G.M.'s physicians and all medical providers of the increased risk of Transverse Myelitis, the Fluzone influenza vaccine was unreasonably dangerous to ordinary people, like Plaintiff G.M., who used Fluzone in a manner in which it was intended by Defendant to be used, or in manner in which Defendant could have reasonably foreseen.

72.    The risk of Fluzone influenza vaccine in causing Transverse Myelitis were well known by defendant and were reasonably scientifically knowable at the time the Fluzone influenza vaccine injured Plaintiff G.M.

73.    An ordinary user of the Fluzone influenza vaccine such as Plaintiff G.M. could not foresee the risk of Transverse Myelitis associated with Fluzone, particular in light of Defendant's intentional and fraudulent failure to disclose such risk to Plaintiff G.M.'s physicians and all medical providers.

74.    The lack of proper warnings was a substantial factor in causing Plaintiff's injuries and damages.   If Defendant had provided proper warnings of the risk of Transverse Myelitis in the Prescription Information to Plaintiff's physicians and all medical providers, said information would have been conveyed to Plaintiff G.M. and/or her Guardian Ad Litem, LORENA MORA, and Plaintiff G.M. would not have been harmed or be able to make an informed decision as such.

75.    Defendant's acts and omissions, as set forth above, were done with a willful and conscious disregard of Plaintiff's G.M.'s rights and safety, and done with oppression, fraud and malice, justifying an award of punitive damages against Defendant.

\\\

\\\

11

# COUNT IV

## <u>INTENTIONAL MISREPRESENTATION BY CONCEALMENT</u>

76.  Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

77.  Prior to September 5, 2012, when Plaintiff G.M. was administered the Fluzone influenza vaccine, Defendant was well aware that Fluzone can and have caused other recipients of influenza vaccines to suffer Transverse Myelitis.

78.  Prior to September 5, 2012, Defendant concealed or knowingly failed to disclose a material risk of Transverse Myelitis from Fluzone influenza vaccine in the Prescriptive Information intended for physicians and all medical providers.

79.  As the manufacturer of Fluzone, Defendant had unique knowledge that the vaccine caused a risk of Transverse Myelitis and had a duty to inform Plaintiff G.M.'s physicians and all medical providers who administer Fluzone influenza vaccines.

80.  At all times relevant to this Complaint, Defendant concealed or knowingly failed to disclose a material risk of Transverse Myelitis from receiving Fluzone influenza vaccine in the Prescriptive Information which Defendant had a duty to disclose.

81.  Defendant intentionally concealed and knowingly failed to suppress the material risk of Transverse Myelitis from receiving the Fluzone influenza vaccine with the intent to misrepresent to Plaintiff G.M.'s physicians and all medical providers in that Defendant knew that Plaintiff G.M.'s physicians would not prescribe Fluzone or at the minimum, disclose the risk to Plaintiff G.M., or LORENA MORA and Plaintiff G.M. and LORENA MORA would not have used Fluzone if Defendant had disclosed the true facts concerning the risk of Transverse Myelitis from receiving Fluzone.

82.  As a proximate result of Defendant's misrepresentation by concealment, Plaintiff G.M. has suffered transverse myelitis which resulted in permanent paraplegia, is at risk of developing other diseases and conditions, necessitating invasive procedures or surgeries in the future should her conditions require them or should they deteriorate further.

12

83. Defendant's acts and omissions, as set forth above, were done with a willful and conscious disregard of Plaintiff's G.M.'s rights and safety, and done with oppression, fraud and malice, justifying an award of punitive damages against Defendant.

### COUNT V

### BREACH OF EXPRESS WARRANTY

84. Plaintiff repeats and re-alleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

85. Defendant expressly warranted to Plaintiff G.M. or her Guardian Ad Litem, Lorena Mora, by and through statements or their authorized agents or sale representative, orally and in publications, package inserts and other written material intended for physicians, medical patients, and the general public that the Fluzone influenza vaccines can be used safely and effectively for people six months of age and older to help against influenza illness caused by influenza virus subtypes A and type B.

86. In using the Fluzone influenza vaccine, Plaintiff G.M. and her health care providers relied on the skill, judgment, representations and foregoing express warranties of the Defendant.

87. Said warranties and representations were false in that the aforementioned products were not safe and were unfit for the uses for which they were intended.

88. The Fluzone influenza vaccine did not conform to Defendant's express representations because it did not warn of the risk of Transverse Myelitis which Defendant knowing withheld or concealed.

89. As a direct and proximate result of Defendant's breaches of express warranty, Plaintiff G.M. has developed Transverse Myelitis resulting in permanent paraplegia and is at risk of developing other diseases and conditions and has suffered compensatory damages and is entitled to punitive damages in amounts to be proven at trial.

### COUNT VI

### BREACH OF IMPLIED WARRANTY

90. Plaintiff repeats and re-alleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

91. At the time Defendant manufactured, sold and distributed the Fluzone influenza vaccine, Defendant knew of the use for which Fluzone was intended and impliedly warranted to Plaintiff G.M.,

13

her Guardian Ad Litem LORENA MORA and their health care providers the product to be of merchantable quality and safe and fit for such use.

92.  Plaintiff G.M., her Guardian Ad Litem, LORENA MORA and their health care provider reasonably relied on the skill, judgment and implied warranty of the Defendant in using the Fluzone influenza vaccine.

93.  Fluzone was neither safe for its intended use nor of merchantable quality, as warranted by Defendant, in that it had risk of manufacture malfunction when put to their intended use as evidenced by the adverse reactions in Plaintiff G.M. and two other children as set forth in VAERS.

94.  As a direct and proximate result of Defendant's breaches of warranties, Plaintiff G.M. has developed transverse myelitis resulting in permanent paraplegia and is at risk of developing other diseases and conditions and has suffered compensatory damages and is entitled to punitive damages in amounts to be proven at trial.

WHEREFORE, Plaintiff prays that this honorable Court enter judgment against Sanofi, and in favor of the Plaintiff and to award the following relief:

a.  Award Plaintiff G.M. all damages allowed by law to compensate her for the physical injury, pain, suffering, emotional distress, mental anguish, physical disability and physical disfigurement and other losses which she has endured;

b.  Award Plaintiff G.M. damages equal to the amount of her medical and health care costs and expenses incurred to present and in the future;

c.  Award Plaintiff G.M. damages in an amount sufficient to compensate for the likely future deterioration of her medical condition as a result of the harm she has suffered from the use of Defendant's product;

d.  Award Plaintiff damages equal to any amount of lost wages and earnings;

e.  Award Plaintiff punitive/exemplary damages to the extent necessary and appropriate to punish and deter the conduct complained of herein;

\\\
\\\
\\\

14

f.      Award Plaintiff attorney's fees and costs, plus interest, as allowed by law; and

g.      Award Plaintiff such other and further legal and equitable relief as this honorable Court deems just and proper.

Dated: May 13, 2015                         LAW OFFICE OF DANNY SOONG

_____
DANNY SOONG, Esq.
Attorney for Plaintiff, GENESIS MORA, a minor,
by and through her Guardian Ad Litem, LORENA
MORA

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of this action.

Dated: May 13, 2015                         LAW OFFICE OF DANNY SOONG

_____
DANNY SOONG, Esq.
Attorney for Plaintiff, GENESIS MORA, a minor,
by and through her Guardian Ad Litem, LORENA

15

FIRST AMENDED COMPLAINT

EXHIBIT A

271/371 3113299/3113175/3113302

## HIGHLIGHTS OF PRESCRIBING INFORMATION
These highlights do not include all the information needed to use Fluzone safely and effectively. See full prescribing information for Fluzone.

Fluzone (Influenza Virus Vaccine)
Suspension for Intramuscular Injection
2012-2013 Formula
Initial US Approval 1980

--------------- INDICATIONS AND USAGE ------------------
**Fluzone** is indicated for active immunization against influenza disease caused by influenza virus subtypes A and type B contained in the vaccine. (1)
Fluzone is approved for use in persons 6 months of age and older. (1)

------------- DOSAGE AND ADMINISTRATION ---------------
• For intramuscular use only

| Age | Dose | Schedule |
|---|---|---|
| 6 months through 35 months | One or two doses², 0.25 mL each | If 2 doses, administer at least 1 month apart |
| 36 months through 8 years | One or two doses², 0.5 mL each | If 2 doses, administer at least 1 month apart |
| 9 years and older | One dose, 0.5 mL | . |

² 1 or 2 doses depends on vaccination history as per Advisory Committee on Immunization Practices annual recommendations on prevention and control of influenza with vaccines.
"-" indicates information is not applicable

------------- DOSAGE FORMS AND STRENGTHS ---------------
Suspension for injection supplied in 4 presentations: prefilled syringe (pink plunger rod), 0.25 mL; prefilled syringe (clear plunger rod), 0.5 mL; single-dose vial, 0.5 mL; multi-dose vial, 5 mL. (3)

----------------- CONTRAINDICATIONS -----------------
Severe allergic reaction to any component of the vaccine, including egg protein, or after previous dose of any influenza vaccine. (4)

-------------- WARNINGS AND PRECAUTIONS --------------
• If Guillain-Barré syndrome (GBS) has occurred within 6 weeks of previous influenza vaccination, the decision to give Fluzone should be based on careful consideration of the potential benefits and risks. (5.1)

------------------- ADVERSE REACTIONS -----------------
• In children 6 months through 8 years of age, the most common injection-site reactions were pain or tenderness (>50%) and redness (>25%); the most common solicited systemic adverse events were irritability and drowsiness (>25% of children 6 months through 35 months) and myalgia (>20% of children 3 years through 8 years). (6.1)
• In adults 18 through 64 years of age, the most common injection-site reaction was pain (>50%); the most common solicited systemic adverse events were headache and myalgia (>30%). (6.1)
• In adults ≥65 years of age, the most common injection-site reaction was pain (>20%); the most common solicited systemic adverse events were headache, myalgia, and malaise (>10%). (6.1)
**To report SUSPECTED ADVERSE REACTIONS, contact Sanofi Pasteur Inc., Discovery Drive, Swiftwater, PA 18370 at 1-800-822-2463 (1-800-VACCINE) or VAERS at 1-800-822-7967 or** www.vaers.hhs.gov.

-------------- USE IN SPECIFIC POPULATIONS --------------
• Safety and effectiveness of Fluzone has not been established in pregnant women. (8.1)
• Antibody responses to Fluzone are lower in persons ≥65 years of age than in younger adults. (8.5)

See 17 PATIENT COUNSELING INFORMATION and FDA-approved patient labeling.

Revised: June 2012

---

**FULL PRESCRIBING INFORMATION: CONTENTS***

1  INDICATIONS AND USAGE
2  DOSAGE AND ADMINISTRATION
    2.1  Dose and Schedule
    2.2  Administration
3  DOSAGE FORMS AND STRENGTHS
4  CONTRAINDICATIONS
5  WARNINGS AND PRECAUTIONS
    5.1  Guillain-Barré Syndrome
    5.2  Preventing and Managing Allergic Reactions
    5.3  Altered Immunocompetence
    5.4  Limitations of Vaccine Effectiveness
6  ADVERSE REACTIONS
    6.1  Clinical Trials Experience
    6.2  Post-Marketing Experience
7  DRUG INTERACTIONS
8  USE IN SPECIFIC POPULATIONS
    8.1  Pregnancy
    8.3  Nursing Mothers
    8.4  Pediatric Use
    8.5  Geriatric Use
11  DESCRIPTION
12  CLINICAL PHARMACOLOGY
    12.1  Mechanism of Action
13  NON-CLINICAL TOXICOLOGY
    13.1  Carcinogenesis, Mutagenesis, Impairment of Fertility
14  CLINICAL STUDIES
    14.1  Immunogenicity of Fluzone in Children 6 Months through 8 Years of Age
    14.2  Immunogenicity of Fluzone in Adults
    14.3  Immunogenicity of Fluzone in Geriatric Adults
15  REFERENCES
16  HOW SUPPLIED/STORAGE AND HANDLING
    16.1  How Supplied
    16.2  Storage and Handling
17  PATIENT COUNSELING INFORMATION

* Sections or subsections omitted from the full prescribing information are not listed.

**FULL PRESCRIBING INFORMATION:**

**1    INDICATIONS AND USAGE**

Fluzone[5] is an inactivated influenza virus vaccine indicated for active immunization against influenza disease caused by influenza virus subtypes A and type B contained in the vaccine.

Fluzone is approved for use in persons 6 months of age and older.

**2    DOSAGE AND ADMINISTRATION**

- **For intramuscular use only**

**2.1 Dose and Schedule**

The dose and schedule for Fluzone is presented in Table 1.

**Table 1: Fluzone**

| Age | Dose | Schedule |
|-----|------|----------|
| 6 months through 35 months | One or two doses[a], 0.25 mL each | If 2 doses, administer at least 1 month apart |
| 36 months through 8 years | One or two doses[a], 0.5 mL each | If 2 doses, administer at least 1 month apart |
| 9 years and older | One dose, 0.5 mL | -- |

a    1 or 2 doses depends on vaccination history as per Advisory Committee on Immunization Practices annual recommendations on prevention and control of influenza with vaccines.

"--"  indicates information is not applicable

**2.2 Administration**

Inspect Fluzone visually for particulate matter and/or discoloration prior to administration. If either of these conditions exist, the vaccine should not be administered.

Before administering a dose of vaccine, shake the prefilled syringe or single-dose or multi-dose vial. Withdraw a single dose of vaccine using a sterile needle and syringe. Use a separate sterile needle and syringe for each dose withdrawn from the multi-dose vial.

The preferred sites for intramuscular injection are the anterolateral aspect of the thigh in infants 6 months through 11 months of age, the anterolateral aspect of the thigh (or the deltoid muscle if muscle mass is adequate) in persons ≥12 months through 35 months of age, or the deltoid muscle in persons ≥36 months of age. The vaccine should not be injected into the gluteal area or areas where there may be a major nerve trunk.

Do not administer this product intravenously or subcutaneously.

Fluzone vaccine should not be combined through reconstitution or mixed with any other vaccine.

**3    DOSAGE FORMS AND STRENGTHS**

Fluzone is a suspension for injection.

Fluzone is supplied in 4 presentations:

1) Prefilled syringe (pink syringe plunger rod), 0.25 mL, for persons 6 months through 35 months of age
2) Prefilled syringe (clear syringe plunger rod), 0.5 mL, for persons 36 months of age and older.
3) Single-dose vial, 0.5 mL, for persons 36 months of age and older.
4) Multi-dose vial, 5 mL, for persons 6 months of age and older.

**4    CONTRAINDICATIONS**

A severe allergic reaction (e.g., anaphylaxis) to any component of the vaccine [see *Description (11)*, including egg protein, or to a previous dose of any influenza vaccine is a contraindication to administration of Fluzone.

**5    WARNINGS AND PRECAUTIONS**

**5.1 Guillain-Barré Syndrome**

The 1976 swine influenza vaccine was associated with an elevated risk of Guillain-Barré syndrome (GBS). Evidence for a causal relation of GBS with other influenza vaccines is inconclusive; if an excess risk exists, it is probably slightly more than 1 additional case per 1 million persons vaccinated.[1] If GBS has occurred within 6 weeks of previous influenza vaccination, the decision to give Fluzone should be based on careful consideration of the potential benefits and risks.

**5.2 Preventing and Managing Allergic Reactions**

Appropriate medical treatment and supervision must be available to manage possible anaphylactic reactions following administration of the vaccine.

**5.3 Altered Immunocompetence**

If Fluzone is administered to immunocompromised persons, including those receiving immunosuppressive therapy, the expected immune response may not be obtained.

**5.4 Limitations of Vaccine Effectiveness**

Vaccination with Fluzone may not protect all recipients.

**6    ADVERSE REACTIONS**

**6.1 Clinical Trials Experience**

Because clinical trials are conducted under widely varying conditions, adverse event rates observed in the clinical trials of a vaccine cannot be directly compared to rates in the clinical trial of another vaccine, and may not reflect the rates observed in practice.

**Children 6 Months through 8 Years of Age**

In a multi-center study conducted in the US, children 6 months through 35 months of age received two 0.25 mL doses of Fluzone, and children 3 years through 8 years of age received two 0.5 mL doses of Fluzone, irrespective of previous influenza vaccination history. The two doses (year 2006-2007 formulation) were administered 26 to 30 days apart. The safety analysis set included 97 children 6 months through 35 months of age and 163 children 3 years through 8 years of age. Table 2 and Table 3 summarize solicited injection site reactions and systemic adverse events reported within 7 days post-vaccination via diary cards.

Table 2: Frequency of Solicited Injection Site Reactions and Systemic Adverse Events Within 7 Days After Vaccination with Fluzone, Children 6 Through 35 Months of Age

| | Dose 1 (N$^a$=90-92) Percentage | | | Dose 2 (N$^a$=86-87) Percentage | | |
|---|---|---|---|---|---|---|
| | Any | Moderate$^b$ | Severe$^c$ | Any | Moderate$^b$ | Severe$^c$ |
| Injection-Site Tenderness | 47.3 | 8.8 | 0.0 | 56.3 | 3.4 | 1.1 |
| Injection-Site Erythema | 29.3 | 0.0 | 0.0 | 32.2 | 1.1 | 0.0 |
| Injection-Site Swelling | 16.7 | 0.0 | 0.0 | 14.9 | 0.0 | 0.0 |
| Injection-Site Induration | 14.4 | 0.0 | 0.0 | 16.1 | 0.0 | 0.0 |
| Injection-Site Ecchymosis | 14.4 | 1.1 | 0.0 | 14.9 | 2.3 | 0.0 |
| Fever$^d$ | 11.0 | 4.4 | 0.0 | 10.3 | 3.4 | 1.1 |
| Vomiting | 6.6 | 1.1 | 0.0 | 8.1 | 5.8 | 0.0 |
| Crying Abnormal | 31.9 | 11.0 | 0.0 | 18.6 | 7.0 | 2.3 |
| Drowsiness | 26.4 | 1.1 | 0.0 | 26.7 | 4.7 | 0.0 |
| Appetite Lost | 23.1 | 8.8 | 0.0 | 19.8 | 5.8 | 1.2 |
| Irritability | 42.9 | 19.8 | 1.1 | 34.9 | 17.4 | 4.7 |

a  N is the number of vaccinated subjects with available data for the events listed
b  Moderate - Injection-site tenderness: cries and protests when injection site is touched; Injection-site erythema, Injection-site swelling, Injection-site induration, and Injection-site ecchymosis: ≥2.5 cm to <5 cm; Fever: >101.3°F to ≤103.1°F; Vomiting: 2 to 5 episodes per 24 hours; Crying abnormal: 1 to 3 hours; Drowsiness: not interested in surroundings or did not wake up for a meal; Appetite lost: missed 1 or 2 feeds completely; Irritability: requiring increased attention
c  Severe - Injection-site tenderness: cries when injected limb is moved or the movement of the injected limb is reduced; Injection-site erythema, Injection-site swelling, Injection-site induration, and Injection-site ecchymosis: ≥5 cm; Fever: >103.1°F; Vomiting: ≥6 episodes per 24 hours or requiring parenteral hydration; Crying abnormal: >3 hours; Drowsiness: sleeping most of the time or difficulty to wake up; Appetite lost: refuses 3 feeds or refuses most feeds; Irritability: inconsolable
d  Fever - Any Fever indicates ≥100.4°F. The percentage of temperature measurements that were taken by rectal, axillary, or oral routes, or not recorded were 69.2%, 17.6%, 13.2%, and 0.0%, respectively for Dose 1; and 69.0%, 13.8%, 16.1%, and 1.1%, respectively for Dose 2

Table 3: Frequency of Solicited Injection Site Reactions and Systemic Adverse Events Within 7 Days After Vaccination with Fluzone, Children 3 Through 8 Years of Age

| | Dose 1 (N$^a$=150-151) Percentage | | | Dose 2 (N$^a$=144-145) Percentage | | |
|---|---|---|---|---|---|---|
| | Any | Moderate$^b$ | Severe$^c$ | Any | Moderate$^b$ | Severe$^c$ |
| Injection-Site Pain | 59.3 | 8.0 | 0.0 | 62.1 | 9.7 | 0.7 |
| Injection-Site Erythema | 27.8 | 3.3 | 0.7 | 27.6 | 2.1 | 0.7 |
| Injection-Site Swelling | 19.9 | 5.3 | 0.0 | 14.5 | 2.8 | 0.0 |
| Injection-Site Induration | 16.6 | 2.0 | 0.0 | 17.1 | 1.4 | 0.0 |
| Injection-Site Ecchymosis | 12.6 | 0.7 | 0.0 | 15.2 | 0.7 | 0.0 |
| Injection-Site Pruritus | 7.3 | . | . | 13.2 | . | . |
| Fever$^d$ | 11.9 | 2.6 | 2.0 | 9.7 | 1.4 | 1.4 |
| Headache | 16.7 | 2.0 | 0.7 | 11.8 | 1.4 | 1.4 |
| Malaise | 20.0 | 2.7 | 1.3 | 14.6 | 4.2 | 0.7 |
| Myalgia | 28.0 | 5.3 | 0.0 | 17.4 | 4.2 | 0.0 |

a  N is the number of vaccinated subjects with available data for the events listed
b  Moderate - Injection-site pain: sufficiently discomforting to interfere with normal behavior or activities; Injection-site erythema, Injection-site swelling, Injection-site induration, and Injection-site ecchymosis: ≥2.5 cm to <5 cm; Fever: >100.4°F to ≤102.2°F; Headache, Malaise, and Myalgia: interferes with daily activities
c  Severe - Injection-site pain: incapacitating, unable to perform usual activities, may have/or required medical care or absenteeism; Injection-site erythema, Injection-site swelling, Injection-site induration, and Injection-site ecchymosis: ≥5 cm; Fever: >102.2°F; Headache, Malaise, and Myalgia: prevents daily activities
d  Fever - Any Fever indicates ≥99.5°F. The percentage of temperature measurements that were taken by oral or axillary routes, or not recorded were 93.4%, 6.6%, and 0.0%, respectively for Dose 1; and 93.1%, 6.2%, and 0.7%, respectively for Dose 2
"."  indicates information was not collected

During the period from the first vaccination through 6 months following the second vaccination, there were no serious adverse events considered to be caused by vaccination and no deaths reported in this study.

**Adults**
Adults 18 through 64 years of age received Fluzone (year 2008-2009 formulation) in a multi-center trial conducted in the US. The safety analysis set included 1421 Fluzone recipients. Table 4 summarizes solicited injection-site reactions and systemic adverse events reported within 7 days post-vaccination via diary cards.

Table 4: Frequency of Solicited Injection-Site Reactions and Systemic Adverse Events Within 7 Days After Vaccination with Fluzone, Adults 18 Through 64 Years of Age

| | (N$^a$=1392-1394) Percentage | | |
|---|---|---|---|
| | Any | Grade 2$^b$ | Grade 3$^c$ |
| Injection-Site Erythema | 13.2 | 2.1 | 0.9 |
| Injection-Site Induration | 10.0 | 2.3 | 0.5 |
| Injection-Site Swelling | 8.4 | 2.1 | 0.9 |
| Injection-Site Pain | 53.7 | 5.8 | 0.8 |
| Injection-Site Pruritus | 9.3 | 0.1 | 0.0 |
| Injection-Site Ecchymosis | 6.2 | 1.1 | 0.4 |
| Headache | 30.3 | 6.5 | 1.6 |
| Myalgia | 30.8 | 5.5 | 1.4 |
| Malaise | 22.2 | 5.5 | 1.8 |
| Shivering | 6.2 | 1.1 | 0.6 |
| Fever$^d$ | 2.6 | 0.4 | 0.2 |

a   N is the number of vaccinated subjects with available data for the events listed
b   Grade 2 - Injection-site erythema, Injection-site induration, Injection-site swelling, and Injection-site ecchymosis: ≥2.5 cm to <5 cm; Injection-site pain and Injection-site pruritus: sufficiently discomforting to interfere with normal behavior or activities; Fever: >100.4°F to ≤102.2°F; Headache, Myalgia, Malaise, and Shivering: interferes with daily activities
c   Grade 3 - Injection-site erythema, Injection-site induration, Injection-site swelling, and Injection-site ecchymosis: ≥5 cm; Injection-site pain: incapacitating, unable to perform usual activities; Injection-site pruritus: incapacitating, unable to perform usual activities, may have/or required medical care or absenteeism; Fever: >102.2°F; Headache, Myalgia, Malaise, and Shivering: prevents daily activities
d   Fever - Any Fever indicates ≥99.5°F. The percentage of temperature measurements that were taken by oral or axillary routes, or not recorded were 99.6%, 0.0%, and 0.4%, respectively

Within 28 days and six months post-vaccination, a serious adverse event was reported by 5 (0.4%) and 20 (1.4%) Fluzone recipients, respectively. No serious adverse event was considered to be caused by vaccination. No deaths were reported during the 6 months post-vaccination.

**Geriatric Adults**
Adults 65 years of age and older received Fluzone (year 2006-2007 formulation) in a multi-center, double-blind trial conducted in the US. The safety analysis set included 1260 Fluzone recipients.

Table 5 summarizes solicited injection-site reactions and systemic adverse events reported within 7 days post-vaccination via diary cards. Onset was usually within the first 3 days after vaccination and a majority of the reactions resolved within 3 days.

Table 5: Frequency of Solicited Injection-Site Reactions and Systemic Adverse Events Within 7 Days After Vaccination with Fluzone, Adults 65 Years of Age and Older

| | N$^a$=1258-1260 Percentage | | |
|---|---|---|---|
| | Any | Moderate$^b$ | Severe$^c$ |
| Injection-Site Pain | 24.3 | 1.7 | 0.2 |
| Injection-Site Erythema | 10.8 | 0.8 | 0.6 |
| Injection-Site Swelling | 5.8 | 1.3 | 0.6 |
| Myalgia | 18.3 | 3.2 | 0.2 |
| Malaise | 14.0 | 3.7 | 0.6 |
| Headache | 14.4 | 2.5 | 0.3 |
| Fever$^d$ | 2.3 | 0.2 | 0.1 |

a   N is the number of vaccinated subjects with available data for the events listed
b   Moderate - Injection-site pain: sufficiently discomforting to interfere with normal behavior or activities; Injection-site erythema and Injection-site swelling: ≥2.5 cm to <5 cm; Fever: >100.4°F to ≤102.2°F; Myalgia, Malaise, and Headache: interferes with daily activities
c   Severe - Injection-site pain: incapacitating, unable to perform usual activities; Injection-site erythema and Injection-site swelling: ≥5 cm; Fever: >102.2°F; Myalgia, Malaise, and Headache: prevents daily activities
d   Fever - Any Fever indicates ≥99.5°F. The percentage of temperature measurements that were taken by oral route or not recorded were 98.6% and 1.4%, respectively

Within 6 months post-vaccination, 93 (7.4%) Fluzone recipients experienced a serious adverse event (N=1260). No deaths were reported within 28 days post-vaccination. A total of 7 deaths were reported during the period Day 29-180 post-vaccination: 7 (0.6%) among Fluzone recipients (N=1260). The majority of these participants had a medical history of cardiac, hepatic, neoplastic, renal, and/or respiratory diseases. No deaths considered to be caused by vaccination.

### 6.2 Post-Marketing Experience

The following events have been spontaneously reported during the post-approval use of Fluzone. Because these events are reported voluntarily from a population of uncertain size, it is not always possible to reliably estimate their frequency or establish a causal relationship to vaccine exposure. Adverse events were included based on one or more of the following factors: severity, frequency of reporting, or strength of evidence for a causal relationship to Fluzone.

- *Blood and Lymphatic System Disorders:* Thrombocytopenia, lymphadenopathy
- *Immune System Disorders:* Anaphylaxis, other allergic/hypersensitivity reactions (including urticaria, angioedema)
- *Eye Disorders:* Ocular hyperemia
- *Nervous System Disorders:* Guillain-Barré syndrome (GBS), convulsions, febrile convulsions, myelitis (including encephalomyelitis and transverse myelitis), facial palsy (Bell's palsy), optic neuritis/neuropathy, brachial neuritis, syncope (shortly after vaccination), dizziness, paresthesia
- *Vascular Disorders:* Vasculitis, vasodilatation/flushing
- *Respiratory, Thoracic and Mediastinal Disorders:* Dyspnea, pharyngitis, rhinitis, cough, wheezing, throat tightness
- *Skin and Subcutaneous Tissue Disorders:* Stevens-Johnson syndrome
- *General Disorders and Administration Site Conditions:* Pruritus, asthenia/fatigue, pain in extremities, chest pain
- *Gastrointestinal Disorders:* Vomiting

## 7   DRUG INTERACTIONS

Data evaluating the concomitant administration of Fluzone with other vaccines are not available.

## 8   USE IN SPECIFIC POPULATIONS

### 8.1 Pregnancy

Pregnancy Category C: Animal reproduction studies have not been conducted with Fluzone. It is also not known whether Fluzone can cause fetal harm when administered to a pregnant woman or can affect reproduction capacity. Fluzone should be given to a pregnant woman only if clearly needed.

### 8.3 Nursing Mothers

It is not known whether Fluzone is excreted in human milk. Because many drugs are excreted in human milk, caution should be exercised when Fluzone is administered to a nursing woman.

### 8.4 Pediatric Use

Safety and effectiveness of Fluzone in children below the age of 6 months have not been established. Safety and immunogenicity of Fluzone was evaluated in children 6 months through 8 years of age. [See *Adverse Reactions (6.1)* and *Clinical Studies (14.1)*.]

### 8.5 Geriatric Use

Safety and immunogenicity of Fluzone was evaluated in adults 65 years of age and older. [See *Adverse Reactions (6.1)* and *Clinical Studies (14.3)*.] Antibody responses to Fluzone are lower in persons ≥65 years of age than in younger adults.

## 11   DESCRIPTION

Fluzone (Influenza Virus Vaccine) for intramuscular injection, is an inactivated influenza virus vaccine, prepared from influenza viruses propagated in embryonated chicken eggs. The virus-containing allantoic fluid is harvested and inactivated with formaldehyde. Influenza virus is concentrated and purified in a linear sucrose density gradient solution using a continuous flow centrifuge. The virus is then chemically disrupted using a non-ionic surfactant, Octylphenol Ethoxylate (Triton® X-100), producing a "split virus". The split virus is further purified and then suspended in sodium phosphate-buffered isotonic sodium chloride solution.

Fluzone suspension for injection is clear and slightly opalescent in color.

Antibiotics are not used in the manufacture of Fluzone.

No presentation of Fluzone contains latex.

Fluzone is standardized according to United States Public Health Service requirements and is formulated to contain HA of each of the following three influenza strains recommended for the 2012-2013 influenza season: A/California/07/2009 NYMC X-179A (H1N1), A/Victoria/361/2011 IVR-165 (H3N2) and B/Texas/6/2011 (a B/Wisconsin/1/2010-like virus). The amounts of HA and other ingredients per dose of vaccine are listed in Table 6.

**Table 6: Fluzone Ingredients**

| Ingredient | Quantity (per dose) | |
|---|---|---|
| | Fluzone 0.25 mL Dose | Fluzone 0.5 mL Dose |
| **Active Substance: Split influenza virus, inactivated strains[a]:** | 22.5 mcg HA total | 45 mcg HA total |
| A (H1N1) | 7.5 mcg HA | 15 mcg HA |
| A (H3N2) | 7.5 mcg HA | 15 mcg HA |
| B | 7.5 mcg HA | 15 mcg HA |
| **Other:** | | |
| Sodium phosphate-buffered isotonic sodium chloride solution | QS[b] to appropriate volume | QS[b] to appropriate volume |
| Formaldehyde | ≤50 mcg | ≤100 mcg |
| Octylphenol Ethoxylate | ≤75 mcg | ≤150 mcg |
| Gelatin | 0.05% | 0.05% |
| **Preservative** | | |
| Single-Dose Presentations | None | None |
| Multi-Dose Presentation (Thimerosal) | N/A | 25 mcg mercury |

[a]   per United States Public Health Service (USPHS) requirement
[b]   Quantity Sufficient
N/A  not applicable

## 12 CLINICAL PHARMACOLOGY

### 12.1 Mechanism of Action

Influenza illness and its complications follow infection with influenza viruses. Global surveillance of influenza identifies yearly antigenic variants. For example, since 1977, antigenic variants of influenza A (H1N1 and H3N2) viruses and influenza B viruses have been in global circulation. Specific levels of hemagglutination inhibition (HI) antibody titer post-vaccination with inactivated influenza virus vaccines have not been correlated with protection from influenza virus infection. In some human studies, antibody titers $\geq 1{:}40$ have been associated with protection from influenza illness in up to 50% of subjects.[2,3]

Antibodies against one influenza virus type or subtype confer limited or no protection against another. Furthermore, antibodies to one antigenic variant of influenza virus might not protect against a new antigenic variant of the same type or subtype. Frequent development of antigenic variants through antigenic drift is the virologic basis for seasonal epidemics and the reason for the usual change of one or more new strains in each year's influenza vaccine. Therefore, influenza vaccines are standardized to contain the hemagglutinins of influenza virus strains, representing the influenza viruses likely to be circulating in the US in the upcoming winter.

Annual vaccination with the current vaccine is recommended because immunity during the year after vaccination declines, and because circulating strains of influenza virus change from year to year.

## 13 NON-CLINICAL TOXICOLOGY

### 13.1 Carcinogenesis, Mutagenesis, Impairment of Fertility

Fluzone has not been evaluated for carcinogenic or mutagenic potential, or for impairment of fertility.

## 14 CLINICAL STUDIES

### 14.1 Immunogenicity of Fluzone in Children 6 Months through 8 Years of Age

In a multi-center study conducted in the US, 68 children 6 months through 35 months of age given two 0.25 mL doses of Fluzone and 120 children 3 years through 8 years of age given two 0.5 mL doses of Fluzone were included in the per-protocol analysis set. The two doses (year 2006-2007 formulation) were administered 26 to 30 days apart. Females accounted for 42.6% of the participants in the 6 months through 35 months age group and 53.3% of the participants in the 3 years through 8 years age group. Most participants in the 6 months through 35 months and 3 years through 8 years age groups, respectively, were Caucasian (70.6% and 79.2%), followed by Hispanic (19.1% and 13.3%), and Black (7.4% and 4.2%).

The percentage of participants who received influenza vaccination during the previous influenza season was 54.4% for the 6 months through 35 months age group and 27.5% for the 3 years through 8 years age group. Table 7 shows seroconversion rates and the percentage of participants with an HI titer $\geq 1{:}40$ pre-vaccination and one month following the second dose of Fluzone.

**Table 7: Percentage (%) with Pre and Post-Vaccination HI Titers ≥1:40 and Seroconversion Following the Second Vaccine Injection with Fluzone[a] in Children 6 Months Through 35 Months and 3 Years Through 8 Years of Age**

| Antigen | Age Group | Pre-Vaccination Titer ≥1:40 % (95% CI) | Post-Vaccination[b] Titer ≥1:40 % (95% CI) | Seroconversion[c] % (95% CI) |
|---|---|---|---|---|
| | | N=68 (6 to 35 months); N=120 (3 through 8 years) | | |
| A (H1N1) | 6 through 35 months | 11.8 (5.2, 21.9) | 92.6 (83.7; 97.6) | 88.2 (78.1; 94.8) |
| | 3 through 8 years | 40.0 (31.2; 49.3) | 99.2 (95.4; 100.0) | 78.3 (69.9; 85.3) |
| A (H3N2) | 6 through 35 months | 29.4 (19.0; 41.7) | 100.0 (94.7; 100.0) | 91.2 (81.8; 96.7) |
| | 3 through 8 years | 80.0 (71.7; 86.7) | 100.0 (97.0; 100.0) | 61.7 (52.4; 70.4) |
| B | 6 through 35 months | 1.5 (0.0; 7.9) | 20.6 (11.7; 32.1) | 20.6 (11.7; 32.1) |
| | 3 through 8 years | 3.3 (0.9; 8.3) | 58.3 (49.0; 67.3) | 53.3 (44.0; 62.5) |

a  Children received two doses of Fluzone administered 26 to 30 days apart, irrespective of previous influenza vaccination history
b  Post-vaccination HI titers drawn at 28 days post-dose
c  Seroconversion: Paired samples with pre-vaccination HI titer <1:10 and post-vaccination (28 days post-dose 2) titer ≥1:40 or a minimum 4-fold increase for participants with pre-vaccination HI titer ≥1:10

### 14.2 Immunogenicity of Fluzone in Adults

Adults 18 through 64 years of age received Fluzone (year 2008-2009 formulation) in a multi-center trial conducted in the US. For immunogenicity analyses, there were 1287 participants who received Fluzone in the per-protocol analysis set. There were fewer males (35.8%) than females. The mean age was 42.6 years (ranged from 18.2 through 65.0 years). Most participants were Caucasian (80.0%), followed by Hispanic (11.0%), and Black (6.3%). Table 8 shows seroconversion rates at 28 days following vaccination and the percentage of participants with an HI titer ≥1:40 prior to vaccination and 28 days following vaccination.

**Table 8: Percentage (%) with Pre and Post-Vaccination HI Titers ≥1:40 and Seroconversion in Adult Fluzone Recipients 18 Through 64 Years of Age**

| Antigen | Pre-Vaccination Titer ≥1:40 % (95% CI) N[c]=1285-1286 | Post-Vaccination[a] Titer ≥1:40 % (95% CI) N[c]=1283-1285 | Seroconversion[b] % (95% CI) N[c]=1283-1285 |
|---|---|---|---|
| A (H1N1) | 39.1 (36.4; 41.8) | 91.7 (90.0; 93.1) | 60.5 (57.7; 63.2) |
| A (H3N2) | 33.6 (31.0; 36.2) | 91.4 (89.8; 92.9) | 74.8 (72.3; 77.1) |
| B | 41.2 (38.5; 44.0) | 89.3 (87.4; 90.9) | 54.2 (51.4; 56.9) |

[a] Post-vaccination HI titers drawn at 28 days post-dose
[b] Seroconversion: Paired samples with pre-vaccination HI titer <1:10 and post-vaccination (28 days post-dose) titer ≥1:40 or a minimum 4-fold increase for participants with pre-vaccination titer ≥1:10
[c] N is the number of vaccinated subjects with available data for the immunologic endpoint listed

### 14.3 Immunogenicity of Fluzone in Geriatric Adults

Adults 65 years of age and older received Fluzone (year 2006-2007 formulation) in a multi-center trial conducted in the US. For immunogenicity analyses, there were 1,275 participants who received Fluzone in the immunogenicity analysis set. Females accounted for 54.7% of participants. The mean age was 72.9 years (ranged from 65 through 94 years of age); 36% of participants were 75 years of age or older. Most participants were Caucasian (92.9%), followed by Hispanic (3.7%), and Black (2.7%). Table 9 shows seroconversion rates at 28 days following vaccination and the percentage of participants with an HI titer ≥1:40 prior to vaccination and 28 days following vaccination.

Table 9: Percentage (%) with Pre and Post-Vaccination HI Titers ≥1:40 and Seroconversion in Adult Fluzone Recipients 65 Years of Age and Older

| Antigen | Pre-Vaccination HI Titer ≥1:40 % (95% CI) $N^c$=1267-1268 | Post-Vaccination[a] Titer ≥1:40 % (95% CI) $N^c$=1252 | Seroconversion[b] % (95% CI) $N^c$=1248-1249 |
|---------|----------------------------------------------------|--------------------------------------------------|------------------------------------------|
| A (H1N1) | 45.9 (43.2; 48.7) | 76.8 (74.3; 79.1) | 23.1 (20.8; 25.6) |
| A (H3N2) | 68.6 (66.0; 71.2) | 96.5 (95.3; 97.4) | 50.7 (47.9; 53.5) |
| B | 27.3 (24.9; 29.9) | 67.6 (64.9; 70.2) | 29.9 (27.4; 32.6) |

[a] Post-vaccination HI titers drawn at 28 days post-dose
[b] Seroconversion: Paired samples with pre-vaccination HI titer <1:10 and post-vaccination (28 days post-dose) titer ≥1:40 or a minimum 4-fold increase for participants with pre-vaccination titer ≥1:10
[c] N is the number of vaccinated subjects with available data for the immunologic endpoint listed

### 15 REFERENCES

1 Lasky T, Terracciano GJ, Magder L, et al. The Guillain-Barré syndrome and the 1992-1993 and 1993-1994 influenza vaccines. N Engl J Med 1998;339(25);1797-802.
2 Hannoun C, Megas F, Piercy J. Immunogenicity and protective efficacy of influenza vaccination. Virus Res 2004;103:133-138.
3 Hobson D, Curry RL, Beare AS, Ward-Gardner A. The role of serum haemagglutination-inhibiting antibody in protection against challenge infection with influenza A2 and B viruses. J Hyg Camb 1972;767-777.

### 16 HOW SUPPLIED/STORAGE AND HANDLING

#### 16.1 How Supplied

Single-dose, prefilled syringe, without needle, 0.25 mL, package of 10 (does not contain latex) – NDC 49281-112-25.

Single-dose, prefilled syringe, without needle, 0.5 mL, package of 10 (does not contain latex) – NDC 49281-012-50.

Single-dose vial, 0.5 mL, package of 10 (does not contain latex) – NDC 49281-012-10.

Multi-dose vial, 5 mL, package of one (does not contain latex). The vial contains ten 0.5 mL doses – NDC 49281-390-15.

#### 16.2 Storage and Handling

Store all Fluzone presentations refrigerated at 2° to 8°C (35° to 46°F). DO NOT FREEZE. Discard if vaccine has been frozen.

Between uses, return the multi-dose vial to the recommended storage conditions at 2° to 8°C (35° to 46°F).

Do not use after the expiration date shown on the label.

### 17 PATIENT COUNSELING INFORMATION

See FDA-approved patient labeling (Patient Information).
• Inform the patient or guardian that Fluzone contains killed viruses and cannot cause influenza.
• Fluzone stimulates the immune system to produce antibodies that help protect against influenza, but does not prevent other respiratory infections.
• Annual influenza vaccination is recommended.
• Instruct vaccine recipients and guardians to report adverse reactions to their healthcare provider and/or to the Vaccine Adverse Event Reporting System (VAERS).

Fluzone is a registered trademark of Sanofi Pasteur Inc.

Manufactured by:
Sanofi Pasteur Inc.
Swiftwater PA 18370 USA

SANOFI PASTEUR

6215-6216-6217

**Patient Information Sheet**
**Fluzone®**
**Influenza Virus Vaccine**

Please read this information sheet before getting Fluzone® vaccine. This summary is not intended to take the place of talking with your healthcare provider. If you have questions or would like more information, please talk with your healthcare provider.

### What is Fluzone vaccine?
Fluzone is a vaccine that helps protect against influenza illness (flu).

Fluzone vaccine is for people who are 6 months of age and older.

Vaccination with Fluzone vaccine may not protect all people who receive the vaccine.

### Who should not get Fluzone vaccine?
You should not get Fluzone vaccine if you:
• ever had a severe allergic reaction to eggs or egg products.
• ever had a severe allergic reaction after getting any flu shot.
• are younger than 6 months of age.

Tell your healthcare provider if you or your child have or have had:
• Guillain-Barré syndrome (severe muscle weakness) after getting a flu shot.
• problems with your immune system as the immune response may be diminished.

### How is the Fluzone vaccine given?
Fluzone vaccine is a shot given into the muscle of the arm.

For infants, Fluzone vaccine is a shot given into the muscle of the thigh.

### What are the possible side effects of Fluzone vaccine?
The most common side effects of Fluzone vaccine are:
• pain, redness, swelling, bruising and hardness where you got the shot
• muscle aches
• tiredness
• headache
• fever

These are not all of the possible side effects of Fluzone vaccine. You can ask your healthcare provider for a list of other side effects that is available to healthcare professionals.

Call your healthcare provider for advice about any side effects that concern you. You may report side effects to the Vaccine Adverse Event Reporting System (VAERS) at 1-800-822-7967 or *http://vaers.hhs.gov*.

### What are the ingredients in Fluzone vaccine?
Fluzone vaccine contains 3 killed flu virus strains.

Inactive ingredients include formaldehyde, octylphenol ethoxylate, and gelatin. The preservative thimerosal is only in the 10 dose (multi-dose) vial of Fluzone vaccine.

Manufactured by:
**Sanofi Pasteur Inc.**
Swiftwater, PA 18370 USA



SANOFI PASTEUR

6215-6216-6217

EXHIBIT B

# In the United States Court of Federal Claims

### No. 13-421 V

G.G.M., a Minor, by and
Through her Guardian Ad
Litem, LORENA MORA

JUDGMENT

v.

SECRETARY OF THE
DEPT. OF HEALTH
AND HUMAN SERVICES

Pursuant to the special master's decision of July 21, 2014,

IT IS ORDERED AND ADJUDGED this date, pursuant to Vaccine Rule 11(a), that the petition is dismissed.

Hazel C. Keahey
Clerk of Court

**August 29, 2014**          By:     s/ Debra L. Samler

Deputy Clerk

NOTE: As to election, 90 days from this date, see Vaccine Rule 12.

Represented petitioners' motions for attorneys' fees and costs shall be filed within 180 days of judgment, see Vaccine Rule 13. Pro se petitioners may seek litigation costs within 180 days of judgment.

EXHIBIT C

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

## OFFICE OF SPECIAL MASTERS

GENESIS GRACE MORA, a minor, by and through her Guardian Ad Litem, LORENA MORA,

           Petitioner,

vs.

SECRETARY OF HEALTH AND HUMAN SERVICES,

           Respondent.

Case No.: __13-421V

Special Master Laura D. Millman_____

## NOTICE OF ELECTION TO FILE A CIVIL ACTION

Petitioner hereby elects, pursuant to 42 U.S.C. § 300aa-21(a), to reject the Judgment entered in the above captioned matter and to file a civil action.

By: _____

Petitioner's Counsel:
Danny C. Soong, Esq.
Law Office of Danny Soong
100 N. Barranca St., Suite 700
West Covina, CA. 91791
Tel: (626) 858-2068
Fax: (626) 858-1922
E-mail: dsoong_esq@yahoo.com

1

# PROOF OF SERVICE
## Code of Civil Procedure §§ 1013a, 2015.5

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action. My business address is 100 N. Barranca St., Suite 700, West Covina, CA. 91791. On September 1 2, 2014, I served the following document(s):

## NOTICE OF ELECTION TO FILE A CIVIL ACTION

**X**    By placing the document(s) listed above in a sealed envelope, addressed to Respondent by first class U.S. mail as set forth below, and placing the envelope for collection and mailing in the place designated for such in our offices, following ordinary business practices.

_____ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth above on this date before 5:00 p.m.

**X**    By causing a true copy thereof to be delivered by e-mail to claudia.gangi@usdoj.gov, vaccine.ecf@usdoj.gov

Ms. Claudia Gangi
Secretary of Health and Human Services
c/o Director, Division of Vaccine Injury Compensation
Officer of Special Programs
Health Resources and Services Administration
5600 Fishers Lane, Room 16C-17
Rockville, Maryland 20857

I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on September 12, 2014, at West Covina, California.

NIKKI ACUNA

2

**6**

1  MICHAEL A. ZUK, ESQ. (Bar # 83102)
   mzuk@hrllp-law.com
2  VADIM BRASLAVSKY, ESQ. (Bar # 223920)
   vbraslavsky@hrllp-law.com
3  **HERZFELD & RUBIN LLP**
4  1925 Century Park East, Suite 900
   Los Angeles, California 90067-2783
5  Telephone:  (310) 553-0451
   Facsimile:   (310) 553-0648
6

7  Attorneys for Defendant,
8  SANOFI PASTEUR INC.

9

10          **UNITED STATES DISTRICT COURT**

11    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

12  G.M., a minor, by and through her
    Guardian Ad Litem, LORENA MORA,        CASE NO.: 2:14-cv-09549-FMO (ASx)
13                                          Honorable Fernando M. Olguin
              Plaintiff,                    Courtroom: 25
14
       vs.
15                                          **DEFENDANT SANOFI PASTEUR
16  SANOFI PASTEUR INC. and DOES 1          INC.'S NOTICE OF MOTION AND
    through 100, inclusive                  MOTION TO DISMISS
17                                          PLAINTIFF'S FIRST AMENDED
              Defendants.                   COMPLAINT PURSUANT TO
18                                          RULE 12(b)(6); MEMORANDUM
                                            OF POINTS AND AUTHORITIES;
19                                          DECLARATION OF VADIM
                                            BRASLAVSKY IN SUPPORT
20                                          THEREOF; AND [PROPOSED]
                                            ORDER
21
22                                          Hearing Date:  August 27, 2015
23                                          Hearing Time: 10:00 a.m.

24                                          Complaint Served:   November 26, 2014
25

26

27

28

---

1 | **TO THE HONORABLE COURT, AND TO PLAINTIFF AND HER**
2 | **ATTORNEYS OF RECORD:**

3 |     **PLEASE TAKE NOTICE** that on Thursday, August 27, 2015 at 10:00 a.m.,
4 | or soon thereafter as the matter may be heard in Courtroom 25 of the above entitled
5 | Court, located at 312 North Spring Street, Los Angeles, CA 90012, Defendant Sanofi
6 | Pasteur Inc. ("Sanofi") will and hereby moves the Court pursuant to Rule 12(b)(6) of
7 | the *Federal Rules of Civil Procedure* for an Order dismissing Plaintiff's First
8 | Amended Complaint with prejudice.

9 |     The basis for this motion is that Plaintiff has failed to state a claim upon which
10 | relief can be granted because:

11 |     1.    Plaintiff failed to plead facts establishing a plausible cause of action for
12 |         Strict Liability – Manufacturing Defect (Count I) under the
13 |         *Twombly/Iqbal* pleading standard.

14 |     2.    Plaintiff failed to plead facts establishing a plausible cause of action for
15 |         Negligence – Negligent Manufacturing (Count II) under the
16 |         *Twombly/Iqbal* pleading standard.

17 |     3.    Plaintiff's claims for Strict Liability – Inadequate Warnings (Count III)
18 |         are preempted under the National Childhood Vaccine Injury Act of
19 |         1986, 42 U.S.C. §§300aa-1-33.

20 |     4.    Plaintiff failed to plead fraud under Misrepresentation Based on
21 |         Concealment (Count IV) with required particularity under *Federal Rule*
22 |         *of Civil Procedure* 9(b) and Plaintiff's fraud claims are barred under
23 |         *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) because
24 |         only FDA is empowered to prosecute any allegations of fraud
25 |         perpetrated on the Administration.

26 |     5.    Plaintiff failed to plead facts establishing a plausible cause of action for
27 |         Breach of Express Warranty (Count V) under the *Twombly/Iqbal*
28 |         pleading standard.

6.     Plaintiff failed to plead facts establishing a plausible cause of action for Breach of Implied Warranty (Count VI) under the *Twombly/Iqbal* pleading standard and such claims are untenable as matter of law based upon lack of privity.

First Amended Complaint therefore must be dismissed pursuant to *Federal Rule of Civil Procedure* 12(b)(6).

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on May 29, 2015.

The Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Declaration of Vadim Braslavsky, the records and files in this action, any other matters of which this Court may take judicial notice, and on such other and further arguments, documents and grounds as may be advanced before, during, and after the hearing on this matter.


DATED:  June 29, 2015          HERZFELD & RUBIN LLP



                       By:   /s/ Vadim Braslavsky
                            MICHAEL A. ZUK
                            VADIM BRASLAVSKY
                            Attorneys for Defendant,
                            SANOFI PASTEUR INC.

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ........................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND ..........................................2

III. LEGAL STANDARDS ...............................................................5

    A. Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)........5

    B. The Vaccine Act. ...............................................................6

IV. ARGUMENT ......................................................................7

    A. Counts I, II, V and VI Against Sanofi Should Be Dismissed Because Plaintiff Failed to Plead Facts Establishing a Plausible Cause of Action Under the *Iqbal/Twombly* Pleading Standard ..................................7

        1. Manufacturing Defect - (Strict Liability) ....................................8

        2. Negligence - (Negligent Manufacturing) ...................................10

        3. Plaintiff Failed to State a Plausible Claim under Either Express or Implied Warranty Theory of Products Liability...........................12

    B. Count VI for Breach of Implied Warranty Cannot Survive as a Matter of Law ...............................................................14

    C. Plaintiff's Failure to Warn Claim is Barred Under the Vaccine Act........15

    D. Count IV Against Sanofi should be Dismissed Because Plaintiff has not Satisfied the Heightened Pleading Requirements for Fraud Claims and her Claims are Barred as a Matter of Law................................18

        1. Plaintiff Failed to Plead Fraud with the Requisite Particularity Under Rule 9(b) .........................................................18

        2. Plaintiff's Fraud Claims Are Barred under *Buckman*...................20

V. CONCLUSION ....................................................................21

1

2

## TABLE OF AUTHORITIES

3

### Cases

4

5
*Am. Suzuki Motor Corp. v. Super. Ct.*,
   44 Cal. Rptr. 2d 526 (Cal. Ct. App. 1995) ...................................................... 15

6

7
*Anderson v. Owens-Corning Fiberglas Corp.*,
   53 Cal.3d 987 (1991). ...................................................................................... 19

8

9
*Andrade v. Pangborn Corp.*,
   No. C 02-3771 PVT, 2004 WL 2480708, at 23 (N.D. Cal. Oct. 22, 2004) .................. 14

10
*Ashcroft v Iqbal*,
   129 S.Ct. 1937 (2009) ............................................................................. 1, 5, 19

11

12
*Barker v. Lull Eng'g Co.*,
   20 Cal.3d 413 (1978) ........................................................................................ 9

13

14
*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 5

15

16
*Blackmon v. American Home Products Corp.*,
   328 F. Supp. 2d 659 (S.D. Tex. 2004) ............................................................. 17

17
*Buckman Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001) .......................................................................... 1, 2, 22, 23

18

19
*Centeno v. Bayer HealthCare Pharms. Inc.*,
   2014 U.S. Dist. LEXIS 136234 (S.D. Ill. Sept. 26, 2014) ............................... 16

20

21
*Chandler v. Chiron Corp.*,
   No. C-96-1047 SI, 1997 WL 464827, at 7-8 (N.D. Cal. July 28, 1997)........................ 16

22

23
*Cruz v. Sears*,
   No. CV 12-623 H (BGS), 2012 WL 2923323 (S.D. Cal January 18, 2012) .................. 11

24

25
*Decker v. GlenFed, Inc.*,
   42 F.3d 1541 (9th Cir. 1994) ...................................................................... 19, 20

26
*Dilley v. C.R. Bard, Inc.*,
   No. CV 14-01795 ODW (ASx), 2014 WL 1338877, at 4 (C.D. Cal. April 3, 2014) ..... 11

27

28
*Evraets v. Intermedics Intraocular, Inc.*
   29 Cal. App. 4th 779 (Cal. App. Ct. 1994) ............................................... 15, 16

DEFENDANT SANOFI PASTEUR INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT PURSUANT TO RULE 12(b)(6)

*Gonzalez v. Autoliv ASP, Inc.*,
   154 Cal.App.4th 780 (2007) ........................................................................ 11

*Hahn v. Mirda*,
   147 Cal.App.4th 740 (2007) ........................................................................ 20

*Harris v. Belton*,
   258 Cal.App.2d 595 (1968) ................................................................... 13, 14

*Holmes v. Merck & Co.*,
   697 F.3d 1080 (9th Cir. 2012) .................................................................... 16

*In re Toyota Unintended Acceleration*,
   754 F.Supp.2d 1208 (C.D. Cal. 2010) ........................................................ 11

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ........................................................ 19, 20, 21

*Keith v. Buchanan*,
   173 Cal.App.3d 13 (1985) ..................................................................... 13, 14

*Kimmel, Inc. v. DowElanco*,
   275 F.3d 1199 (9th Cir. 2002) .............................................................. 22, 23

*Kristine M. Rodas v. Porsche Cars North America, Inc., et al.*,
   2:14-cv-03747-PSG-MRW (C.D. Cal. 2014) .............................................. 11

*Marolda v. Symantec Corp.*,
   No. C 08-05701 MHP, 2009 WL 2252125, at 8 (N.D. Cal. July 28, 2009) .................. 20

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ........................................................................ 5

*Sherman, 2009 WL 2241664, at 3; All West Elecs., Inc. v. M-B-W, Inc.*,
   64 Cal. App. 4th 717 (5th Dist. 1998) ........................................................ 16

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (2001) ...................................................................................... 6

*Stearns v. Select Comfort Retail Corp.*,
   2009 WL 1635931, at 9-10 (N.D. Cal. June 5, 2009) ................................... 20

**Statutes**

42 U.S.C. § 300aa-21(a) .......................................................................................... 7

42 U.S.C. § 300aa-11(a)(2) .................................................................................... 7

42 U.S.C. §§ 300aa-22(b)(c) .................................................................................. 7

42 U.S.C. §§ 300aa-22(c) ...................................................................................... 7

42 U.S.C. §§ 300aa-23(d)(2) .................................................................................. 7

42 U.S.C. § 300aa-33(3) ......................................................................................... 6

*Fed. R. Civ. P.* 8 .................................................................................................... 11

*Fed. R. Civ. P.* 9(b) .................................................................................... 2, 5, 18

*Fed. R. Civ. P.* 12(b)(6) ......................................................................................... 1

**Rules of Court**

Local Rule 7-3 ...................................................................................................... 1, 4

DEFENDANT SANOFI PASTEUR INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT PURSUANT TO RULE 12(b)(6)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This action arises out of an administration of Fluzone, an influenza vaccine approved by the U.S. Food and Drug Administration ("FDA"), which was manufactured by Defendant Sanofi Pasteur Inc. ("Sanofi") and administered to Plaintiff G.M. ("G.M." or "Plaintiff") on or about September 5, 2011. ("Vaccine"). Plaintiff alleged that the Vaccine caused her to become a permanent paraplegic because the Vaccine was defectively manufactured, and because Sanofi failed to warn Plaintiff of the Vaccine's risks and side effects.

The First Amended Complaint ("FAC") sets out five state-law claims: (1) Strict Liability - Manufacturing Defect; (2) Negligence - Negligent Manufacturing; (3) Strict Liability - Inadequate Warnings; (4) Misrepresentation Based on Concealment; (5) Breach of Express Warranty; and (6) Breach of Implied Warranty.

Although labeled differently, each count sets forth virtually identical allegations that Sanofi created a defective and unsafe Vaccine, which caused the alleged injuries and that Plaintiff and/or her healthcare providers have not been warned of potential risk of Transverse Myelitis, which was allegedly known to, but concealed by Sanofi.

In essence, each count arises from, and is rooted in Plaintiff's allegation that the Vaccine was dangerous, defective and unsafe. However, the bare-bones allegations in the FAC amount to nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." See *Ashcroft v Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). Because Plaintiff fails to satisfy the Supreme Court's pleading standard under *Iqbal* and its progeny, Plaintiff's claims against Sanofi should be dismissed under *Federal Rule of Civil Procedure* 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim.

In addition, Plaintiff's fraud claims should be dismissed under *Federal Rule of Civil Procedure* 9(b) ("Rule 9(b)") for failure to plead fraud with the requisite

1  particularity, including the identity of the individual perpetrating the fraud, and the

2  substance, location, and time of the alleged fraud. Furthermore, Plaintiff's fraud

3  claims are also barred under *Buckman Co. v. Plaintiffs' Legal Comm*., 531 U.S. 341

4  (2001) because only the FDA is empowered to prosecute any claims of fraud

5  perpetrated on the FDA.

6        Moreover, Plaintiff's "failure to warn" claims are untenable as a matter of law

7  because such claims for personal injuries against a vaccine manufacturer, such as

8  Sanofi, are governed, and are barred by the *National Childhood Vaccine Injury Act*

9  *of 1986*, 42 U.S.C. §§300aa -1-33. ("Vaccine Act.")  Therefore, all of Plaintiff's

10  "failure to warn" claims are completely preempted by federal law.

11        Finally, Plaintiff failed to state plausible claim for breach of express and

12  implied warranty. In addition, cannot maintain a cause of action for breach of

13  implied warranty because of lack of privity.

14        This Motion should therefore be granted.

15        **II.     FACTUAL AND PROCEDURAL BACKGROUND**

16        On September 5, 2011, Plaintiff, then approximately two years and seven

17  months old, was administered the Vaccine at Kaiser Permanente in Baldwin Park,

18  California. (FAC at ¶¶10, 11). Two days after the administration of the Vaccine,

19  Mora started to complain of stomach pain and became unable to stand up to walk.

20        Plaintiff was taken to the Emergency Room at Kaiser Permanente in Baldwin

21  Park, California, where she was diagnosed with a paralysis and was rendered the

22  differential diagnoses of botulism, transverse myelitis and Guillain-Barre Syndrome.

23  She was hospitalized and has remained a paraplegic ever since. (FAC at ¶¶13, 14).

24        On or about June 18, 2013, Plaintiff filed a Petition for Vaccine Compensation

25  in the U.S. Court of Federal Claims ("Vaccine Court"). On or about August 29, 2014

26  the Vaccine Court entered judgment and dismissed the Petition. On or about

27  September 26, 2014, Plaintiff filed a Notice of Election to File a Civil Action and

28  initiated this matter in the Los Angeles County Superior Court on or about October

DEFENDANT SANOFI PASTEUR INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT PURSUANT TO RULE 12(b)(6)

14, 2014. (FAC at ¶43).

On December 16, 2014, Sanofi removed the action to this Court pursuant to 28 U.S.C. §1332 on the grounds that complete diversity of citizenship exists between Plaintiff and Sanofi and that Plaintiff has alleged that more than $75,000 is at issue in their dispute.

On January 21, 2015, Plaintiff filed a "Motion to Set Aside Judgment and Dismissal of Petition Based on Vaccine Rule 36 and RCFC 60(b)" in the Vaccine Court.   See, the February 27, 2015 Order of Case No. 13-421, denying Plaintiff's Motion for Relief, attached as Exhibit A to the Request for Judicial Notice ("RJN") filed and served concurrently herewith and incorporated by reference. Plaintiff requested that her vaccine claim be restored without prejudice in exchange for dismissing her civil matter against Sanofi and withdrawing her demand for arbitration with Kaiser Permanente. Exhibit A to RJN at p. 2.

Plaintiff further argued that her counsel was unaware that any design defect or failure to warn claim against the vaccine manufacturer was preempted by the Vaccine Act and that her counsel's ignorance of the law constituted 'mistake, inadvertence, surprise or excusable neglect' under rule 60(b)(1) of the Rules of the Court of Federal Claims. In the alternative, Plaintiff argued that the judgment should set aside judgment under the catch-all provision in RCFC 60(b)(6).  *Id.* at p. 3.

On February 27, 2015, the Vaccine Court issued an Order Denying Plaintiff's Motion for Relief.  *Id.* On April 28, 2015, the Court granted the Motion to Dismiss in its entirety with leave to amend. Plaintiff filed the FAC on May 14, 2015.

On February 10, 2015, Sanofi moved the Court to dismiss Complaint pursuant to Rule 12(b)(6). ("Motion to Dismiss"). Specifically, Sanofi argued that each count arose from, and was rooted in, Plaintiff's allegation that the influenza vaccine administered was dangerous, defective and unsafe; and that claims for personal injuries against a vaccine manufacturer, such as Sanofi, are governed by, and are barred by the *National Childhood Vaccine Injury Act of 1986*, 42 U.S.C. §§300aa-1-

33. ("Vaccine Act.")  Therefore, Sanofi contended that all of Plaintiff's claims were completely preempted by federal law.

On April 28, 2015, this Court issued an Order granting the Motion to Dismiss and dismissing the Complaint in its entirety with leave to amend. Exhibit A to the Declaration of Vadim Braslavsky ("Braslavsky Decl."), filed and served concurrently herewith and incorporated by reference.

The Court indicated that, "[i]n preparing the First Amended Complaint, plaintiff *shall* carefully evaluate the contentions set forth in defendant's Motion, including *whether plaintiff's product liability claims are preempted*. *Id* at p. 2. (Emphasis added). Finally, the Court ordered as follows: "If plaintiff still wishes to pursue this action, she is granted until May 14, 2015, to file a First Amended Complaint attempting to cure, *to the extent she believes is warranted by existing law*, the alleged defects *outlined in defendant's Motion*." *Id.* (Emphasis added).

This Court cautioned Plaintiff to amend the Complaint *only* if *warranted by existing law*. As discussed below, Plaintiff did not heed this Court's guidance and instead filed the FAC, which cannot withstand a Motion to Dismiss.

Finally, this Court ordered the parties to meet and confer pursuant to Local Rule 7-3 concerning any proposed Motion to Dismiss, the grounds therefor, and whether any resolution of the issues could be effected prior to the filing of such motion. The parties met and conferred as ordered at which time Plaintiff's counsel Danny Soong was advised in detail of the reasons for the proposed Motion to Dismiss, and suggestions were made regarding potential resolution. Albeit given lip service by Mr. Soong, no resolution, or attempted compromise, was forthcoming from Mr. Soong, thus necessitating this motion.[1] See Braslavsky Decl. at ¶¶4-10.

---

[1] The meet and confer was recorded by a certified shorthand reporter and the transcript will be lodged with the Court upon request.

# III.   LEGAL STANDARDS

### A.   Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6).

Plaintiff's bare-bones claims against Sanofi should be dismissed under *Fed.R.Civ.P.* 12(b)(6) & 9(b) for failure to state a claim upon which relief can be granted. The U.S. Supreme Court recently emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009); see also *Moss v. U.S. Secret Serv.,* 572 F.3d 962 (9th Cir. 2009).

To state a "plausible" claim, the complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, 129 S.Ct.* at 1949. Neither "a legal conclusion couched as a factual allegation," nor "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will suffice. *Id. at 1949-50.* In other words, if the allegations establish nothing more than "the mere possibility of misconduct," they do not establish a plausible claim for relief and the complaint should be dismissed. *Id. at 1950* see also *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 546 (2007) ("retir[ing]" the adage that "a complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim").

Furthermore, the Amended Complaint need not contain detailed factual allegations, but the Plaintiff *must* "provide the 'grounds' of his 'entitle[ment] to relief'"; this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.,* 550 U.S. at 555.

Finally, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. The court need not, however, accept as true allegations that *contradict matters properly subject to judicial notice or by exhibit.*" *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (2001) (Emphasis added).

None of the causes of action here states a plausible claim for relief.

## B.     The Vaccine Act.

Reflecting both the importance of universal childhood immunization to national health policy and a Congressional determination that preventing disease through immunization requires a comprehensive, national program, the Vaccine Act established a National Vaccine Program ("NVP") in the Department of Health and Human Services ("HHS"). See 42 U.S.C. § 300aa-1, 2. Created by Congress to "achieve optimal prevention of human infectious diseases through immunization and to achieve optimal prevention against adverse reactions to vaccines," the NVP entrusts federal agencies with national vaccine licensing, testing, research, development, production, distribution and safety evaluation. See *Id.*

Among the agencies appointed to these tasks are the FDA's Office of Biologics Research and Review, the National Institutes of Health, and the Centers for Disease Control and Prevention (along with other agencies named in the Vaccine Act, the "NVP Agencies"). See 42 U.S.C. § 300aa-1 et seq. Congress has charged these NVP Agencies, not state juries, with developing and implementing a cohesive, consistent and comprehensive national vaccine policy, and ensuring safety and efficacy in childhood vaccines. See *Id.*

The Vaccine Act also established a special court ("Vaccine Court"), as part of the United States Court of Federal Claims, to hear claims of alleged vaccine-related injury and to award compensation to injured individuals. See 42 U.S.C. §§ 300aa-11, 12.

The Vaccine Act prohibits an individual from filing a civil action for damages (over $1,000) against a vaccine manufacturer[2] unless he or she first files a petition under the Act. See 42 U.S.C. § 300aa-11(a)(2). After receiving the Vaccine Court's

---

[2] Under the Vaccine Act, "manufacturer" is defined as "any corporation, organization, or institution . . . which manufacturers, imports, processes, or distributes any vaccines set forth in the Vaccine Injury table . . ." 42 U.S.C. § 300aa-33(3).

6

1 | judgment, a petitioner may elect to reject the judgment and pursue a civil action in
2 | state or federal court. See 42 U.S.C. § 300aa-21(a).

3      However, to protect vaccine manufacturers if an elective civil action is filed
4 | after the completion of Vaccine Court proceedings, Section 22(b) of the Vaccine Act
5 | expressly limits a manufacturer's liability to cases where injury resulted from (i) a
6 | manufacturing defect or (ii) inadequate labeling as a consequence of material non-
7 | compliance with federal regulatory requirements through intentional, fraudulent or
8 | criminal conduct. See 42 U.S.C. §§ 300aa-22(b)(c), 300aa-23(d)(2). To the extent
9 | that a plaintiff could previously argue that an FDA-approved childhood vaccine was
10 | "defectively designed" and should have used some allegedly safer design, the
11 | Vaccine Act precludes litigation of that claim. See *Id*.

12      In addition, the Vaccine Act expressly preempts *any* failure to warn claims.
13 | See 42 U.S.C. 300aa-22(c):

14      Direct warnings. No vaccine manufacturer shall be liable in a civil
15      action for damages arising from a vaccine-related injury or death
16      associated with the administration of a vaccine after the effective date of
17      this part [effective Oct. 1, 1988] solely due to the manufacturer's failure
18      to provide direct warnings to the injured party (or the injured party's
19      legal representative) of the potential dangers resulting from the
20      administration of the vaccine manufactured by the manufacturer.

21 | **IV.  ARGUMENT**

22 | **A.  Counts I, II, V and VI Against Sanofi Should Be Dismissed Because**
23 | **Plaintiff Failed to Plead Facts Establishing a Plausible Cause of**
24 | **Action Under the *Iqbal/Twombly* Pleading Standard.**

25      Having gotten the proverbial second bite at the apple [by virtue
26 | of the Court's allowing Plaintiff to amend the Complaint], Plaintiff had little trouble
27 | demonstrating that her claims for manufacturing defect (Counts I and II) and
28

1　breaches of express and implied warranties (Counts V and VI) are utterly lacking in
2　any factual support.

### 1.　Manufacturing Defect – (Strict Liability).

4　　　A manufacturing defect exists if the product differs from the manufacturer's
5　intended result or from other identical units of the same product, meaning that the
6　design was appropriate but the manufacturing process deviated from the design. *In re*
7　*Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices and*
8　*Products Liability Litigation*, 754 F.Supp.2d 1208, 1222 (C.D. Cal. 2010).

9　　　To plead under the strict liability theory, "plaintiffs should 'identify/explain
10　how the [product] either deviated from [defendant's] intended result/design or how
11　the [product] deviated from other seemingly identical [product] models.'" *In re*
12　*Coordinated Latex Glove Litig.*, 99 Cal.App.4th 594, 613 (2002) (citing *Barker v.*
13　*Lull Eng'g Co.*, 20 Cal.3d 413, 429 (1978)).

14　　　In support of the First purported Count for Manufacturing Defect (Strict
15　Liability), Plaintiff alleged that, "…Fluzone…administered to Plaintiff G.M. on
16　September 5, 2012 contained a manufacturing defect when it left the Defendant's
17　possession." (FAC at ¶50). Plaintiff further alleged that, "… Fluzone…
18　malfunctioned resulting in adverse reaction to her and imputable to the deviation of
19　the manufacturing protocol due to location of manufacture, tools and equipment used
20　and the conditions of manufacture." (FAC at ¶52).

21　　　Plaintiff also alleged that, "…there are at least two other reports set forth in the
22　VAERS System regarding recipient with severe adverse reactions to the Fluzone
23　influenza vaccines contained in Lot Number U4482BA." (FAC at ¶55). Finally,
24　Plaintiff alleged that, "[a]s a direct and proximate result of Defendant's
25　manufacturing, selling and distributing Fluzone…with manufacturing defect…
26　Plaintiff G.M. has suffered transverse myelitis which resulted in permanent
27　paraplegia..." (FAC at ¶56).

28

1    In essence, *without any factual support*, Plaintiff alleged in conclusory terms
2    that "Fluzone…malfunctioned resulting in adverse reaction to her and imputable to
3    the deviation of the manufacturing protocol due to location of manufacture, tools and
4    equipment used and the conditions of manufacture." (FAC at ¶52).

5    To wit, under a manufacturing defect theory, Plaintiff has not pled sufficient
6    facts to assert a strict products liability claim. There is no discussion in the FAC
7    about *how* the Vaccine differed, deviated from other doses from Lot No. U4482BA.
8    ("Lot")[3].  Instead, Plaintiff simply concludes that the Vaccine was improperly
9    manufactured because she says so. This is simply insufficient. Plaintiff did not,
10   because she could not allege that any other doses from the Lot caused Transverse
11   Myelitis.

12   The only "facts," other than bare-bone recitation of the elements of a cause of
13   action for manufacturing defect, are two irrelevant instances wherein Plaintiff
14   presumes that vaccines from the same Lot were associated with side effects, none of
15   which [including an incident that occurred *after* the Vaccine administration] caused
16   Transverse Myelitis, the injury alleged here.

17   Specifically, Plaintiff cites an incident involving a child who was diagnosed
18   with epilepsy in 2012 "after receiving an influenza vaccine manufactured by [Sanofi]
19   from Lot U4482BA." (FAC at ¶41). This "fact" is irrelevant as the child in question
20   did not sustain the same injury as Plaintiff. Furthermore, Plaintiff failed to set forth
21   any facts supporting any conclusion that the vaccine was not properly manufactured,
22   and/or that it actually *caused* epilepsy.

23   Likewise, irrelevant is Plaintiff's reference to an incident in 2013 – *a year*
24   *after the subject vaccination* – in which a child died, "[t]he day after receiving the
25   influenza vaccine manufactured by Defendant." (FAC at ¶42). Plaintiff does not even

---

[3] Vaccines are approved by FDA and released by a manufacturer in individual Lots, aka batches.

DEFENDANT SANOFI PASTEUR INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT PURSUANT TO RULE 12(b)(6)

1  attempt to state the cause of death or make any factual allegations that the vaccine

2  was improperly manufactured and/or malfunctioned.[4]

3       Thus, Plaintiff has not sufficiently pled strict products liability on this theory.

4  **2.  Negligence – Negligent Manufacturing.**

5       To prevail on a negligence claim in California, a plaintiff must show that

6  defendant owed her a legal duty, breached the duty, and that the breach was a

7  proximate or legal cause of her injury. *Gonzalez v. Autoliv ASP, Inc.*, 154

8  Cal.App.4th 780, 793 (2007). The manufacturer of a product is "under a duty to

9  exercise reasonable care in its design so that it can be safely used as intended by its

10  buyer/consumer." *Id.*

11       Pleading breach in a products liability context requires more than the bald

12  assertion that a product is defective. See *Dilley v. C.R. Bard, Inc.*, No. CV 14-01795

13  ODW (ASx), 2014 WL 1338877, at 4 (C.D. Cal. April 3, 2014) (dismissing

14  plaintiff's "bare assertion" that defendants' mesh plugs and patches possessed a

15  defect in its design because the assertion "does not in any way identify the alleged

16  design defect that plagues all PerFix plugs and patches"). At a minimum, plaintiff

17  must plead *how* the product is defective. See *Cruz v. Sears*, No. CV 12-623 H

18  (BGS), 2012 WL 2923323 (S.D. Cal January 18, 2012), at 2 (finding that plaintiff

19  sufficiently alleged breach by stating that an automotive repair tool "fractured into

20  two pieces during normal use").

21       In addition to identifying the defect, the Complaint must also allege the *causes*

22  of the defect and alternative designs. See *In re Toyota Unintended Acceleration*, 754

---

[4] In citing to these alleged incidents, Plaintiff conflates causation with, at best, temporal association. Moreover, since the same – or even similar - injury is not alleged, such citation to these purported incidents is disingenuous at best.  For example, it may also be a "fact" that the first alleged incident involving the child who allegedly was diagnosed with epilepsy may involve an individual who drank milk the day before the first manifestation of the disease. Clearly, no rational person would argue that the fact that milk was consumed somehow caused the epilepsy to occur. Likewise, with respect to the child who allegedly died following the receipt of the Fluzone, perhaps that child had pickles the day before. Again, no rational person would argue that the consumption of pickles somehow caused the child's death. Nevertheless, Plaintiff relies on this fallacious reasoning to bootstrap her claim for manufacturing defect.

DEFENDANT SANOFI PASTEUR INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT PURSUANT TO RULE 12(b)(6)

1  F.Supp.2d at 1223 (C.D. Cal. 2010); *Kristine M. Rodas v. Porsche Cars North*

2  *America, Inc.*, *et al*.,  2:14-cv-03747-PSG-MRW (C.D. Cal. 2014).

3       Plaintiff pleads that Sanofi, as manufacturer of the Vaccine, "owed Plaintiff

4  G.M. a duty to use reasonable care in the manufacturing, selling, and otherwise

5  distributing Fluzone..." (FAC at ¶59). Plaintiff also alleges that Sanofi breached that

6  duty of reasonable care by "[being] careless and negligent in the manufacture, selling

7  and distributing of the Fluzone…which contained a manufacturing defect when it left

8  Defendant's possession, and hence, caused hard and damages to Plaintiff G.M."

9  (FAC at ¶61).

10      To wit, the FAC alleges each element of negligence, *not facts*. For instance,

11  Plaintiff's allegation of breach regarding the manufacturing defect falls below this

12  minimum standard. Plaintiff simply states that the Vaccine failed because it

13  contained a manufacturing defect and does not explain how it failed. *Id.* However,

14  these conclusory allegations regarding negligent manufacture are not sufficient to

15  plead the element of breach of Sanofi's duty of care under *Federal Rule of Civil*

16  *Procedure 8*.

17      Plaintiff does not specify whether constitution of the vaccine differed from

18  other doses in the same Lot, whether different ingredients were used, whether

19  particular piece of equipment malfunctioned due to negligent maintenance, etc.

20  In fact, Plaintiff does not even attempt to specify whether the negligent act occurred

21  during "manufacture," "selling" or "distributing" the Vaccine. *Id.* Technical

22  precision is not required, but Plaintiff must describe the malfunction with some

23  specificity beyond pointing to a vaccine and alleging that it failed.

24      In sum, Plaintiff simply has no facts to support a *plausible* claim of

25  manufacturing defect in the FAC.

26

27

28

DEFENDANT SANOFI PASTEUR INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT PURSUANT TO RULE 12(b)(6)

1      **3.**      **Plaintiff Failed to State a Plausible Claim under Either Express or**

2            **Implied Warranty Theory of Products Liability.**

3      Plaintiff's warranty claims likewise fail under the *Iqbal/Twombly* pleading

4 standard.

5      An express warranty arises *only* when a seller makes "[a]ny affirmation of fact

6 or promise" or "[a]ny description of the goods" to the *buyer* that "relates to the goods

7 and becomes part of the basis of the bargain." *Cal. Comm. Code* §2313(1)(a) and (b).

8 To demonstrate an express warranty, a plaintiff must identify the affirmation(s) of

9 fact which became the basis of the bargain, i.e., advertisements, labels, and

10 pamphlets, to show "specific and unequivocal" statements made by the defendant

11 with respect to its product. *Keith v. Buchanan*, 173 Cal.App.3d 13, 22 (1985);

12 *Harris v. Belton*, 258 Cal.App.2d 595, 605 (1968).

13      Here, Plaintiff alleged in general non-specific terms that, "Defendant expressly

14 warranted to Plaintiff G.M. or her Guardian Ad Litem…by and through statement or

15 their authorized agents or sale representative, orally and in publications, package

16 inserts and other written material intended for physicians, medical patients, and the

17 general public that the Fluzone….can be used safely and effectively for people six

18 months of age and older to help against influenza illness caused by influenza virus

19 subtypes A and type B." (FAC at ¶85).

20      Clearly, the FAC fails to identify any "specific and unequivocal" statement

21 made by Sanofi through its advertisements, labels, brochures or pamphlets that

22 would constitute affirmations of fact or promises. See *Keith*, *supra* 173 Cal.App.3d

23 at 22. At a minimum, Plaintiff must – but clearly cannot – identify the warranty that

24 became the basis of the bargain regarding healthcare provider's decision to

25 recommend and administer the vaccine. Instead, Plaintiff concludes that an express

26 warranty was breached without identifying the express warranty upon which her

27 claim is purportedly based.

28

In sum, Plaintiff's Count V for Breach of Express Warranty is untenable because Plaintiff did not, and cannot, allege or identify the express warranty or "specific and unequivocal" statements made by Sanofi that became the basis of the bargain. *Keith v. Buchanan*, supra, 173 Cal.App.3d at 22; *Harris v. Belton*, *supra* 258 Cal.App.2d at 605 (1968). At best, Plaintiff's express warranty claim is nothing more than a claim for breach of implied warranty, which Plaintiff has independently pled as her Count VI, and which as discussed below is untenable as a matter of law because of lack of privity.

Likewise, Plaintiff failed to set forth a plausible claim for breach of implied warranty. To plead a breach of the implied warranty of fitness and merchantability, a plaintiff must adequately allege that:

> (1) at the time of the purchase, the defendant was in the business of selling the product; (2) the product was not of the same quality as those generally acceptable in the trade, or was not fit for the ordinary purposes for which the product is used, or did not conform to the quality established by the parties' prior dealings or by usage of trade; (3) the plaintiff took reasonable steps to notify the defendant within a reasonable time that the product did not have the expected quality; (4) the plaintiff was harmed; and (5) the failure of the product to have the expected quality was a substantial factor in causing the plaintiff's harm.

*Andrade v. Pangborn Corp*., No. C 02-3771 PVT, 2004 WL 2480708, at 23 (N.D. Cal. Oct. 22, 2004) (citing CACI No. 1231; Cal. Comm. Code § 2314).

"The implied warranty of merchantability does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead it provides for a minimum level of quality." *Id*. (citing *Am. Suzuki Motor Corp. v. Super. Ct*., 44 Cal. Rptr. 2d 526 (Cal. Ct. App. 1995).

Here Plaintiff alleged that, "Defendant knew of the use for which Fluzone was intended and impliedly warranted to Plaintiff G.M.…Lorena Mora and their health care providers the product to be of merchantable quality and safe and fit for such use." (FAC at ¶91) Plaintiff further alleged that, "Fluzone was neither safe for its intended use nor of merchntable quality, as warranted by Defendant, in that it had risk of manufacture malfunction put to their intended use as evidenced by adverse reactions in Plaintiff G.M. and two other children as set forth in VAERS."

To wit, Plaintiff simply alleged that Defendant impliedly warranted that the Vaccine was safe, effective, fit and proper for their intended use, and that the Vaccine was not safe and was unfit for its intended uses. However, Plaintiff has not alleged facts establishing the contents of any specific warranty or the breach thereof. Because Plaintiff has alleged nothing more than the elements of an implied warranty claim, her claims should be dismissed. See *Iqbal,* 129 S.Ct. at 1949-53.

## B. Count VI for Breach of Implied Warranty Cannot Survive as a Matter of Law.

"Under California law, privity between the patient and the manufacturer of a pharmaceutical product is a necessary component of breach of implied warranty claims. See *Evraets v. Intermedics Intraocular, Inc.* 29 Cal. App. 4th 779 (Cal. App. Ct. 1994). Further, California courts have held that, in the context of prescription pharmaceuticals, the transaction is between the manufacturer and the physician, not the patient. Therefore, the plaintiff cannot maintain a claim for breach of implied warranty. See *Evraets v. Intermedics Intraocular, Inc.* 29 Cal.App.4th 779 (1994)." *Centeno v. Bayer HealthCare Pharms. Inc.*, 2014 U.S. Dist. LEXIS 136234 (S.D. Ill. Sept. 26, 2014).

Even if California law permitted a breach of implied warranty claim by a patient against a drug manufacturer, Plaintiff still failed to plead this cause of action because, privity of contract is an essential element of a warranty claim. See *Sherman,*

1   *2009 WL 2241664,* at 3; *All West Elecs., Inc. v. M-B-W, Inc*., 64 Cal. App. 4th 717,

2   724 (5th Dist. 1998).

3       Here, plaintiff does not, and cannot, allege that she or her Guardian Ad Litem

4   purchased Fluzone directly from Sanofi. Accordingly, Plaintiffs' implied warranty

5   claims should be dismissed. See *Chandler v. Chiron Corp.,* No. C-96-1047 SI, 1997

6   WL 464827, at 7-8 (N.D. Cal. July 28, 1997) (dismissing warranty claim due to lack

7   of privity between manufacturer and patient).

8       **C.    Plaintiff's Failure to Warn Claim is Barred Under the Vaccine Act.**

9       To the extent that Plaintiff's failure to warn assertion is based on a claim that

10  Sanofi did not provide direct warnings to Plaintiff, her healthcare providers, or the

11  public generally, such claims are explicitly foreclosed by the Vaccine Act.

12      Indeed, the Congress expressly found that the "failure to warn" claims are

13  preempted by the *Vaccine Act* by including the following language in the Vaccine

14  Act:

15          No vaccine manufacturer shall be liable in a civil action for damages

16          arising from a vaccine-related injury or death associated with the

17          administration of a vaccine after October 1, 1988, *solely due to the*

18          *manufacturer's failure to provide direct warnings to the injured party*

19          *(or the injured party's legal representative) of the potential dangers*

20          *resulting from the administration of the vaccine manufactured by the*

21          *manufacturer.*

22  42 U.S.C. § 300aa-22(c). (Emphasis added).

23      Vaccines are distributed and administered exclusively through physicians and

24  health professionals; Congress recognized this area as one in which the safe and

25  effective use of the product did not depend on direct warnings to persons receiving

26  vaccines (or their legal representatives). See 1986 U.S.C.C.A.N. at 6368. Indeed,

27  "the Vaccine Act clearly bars claims based on a manufacturer's failure to provide

28

1   warnings to the public or to consumers." *Blackmon v. American Home Products*
2   *Corp.*, 328 F. Supp. 2d 659, 666. (S.D. Tex. 2004).

3         A Ninth Circuit panel, in *Holmes v. Merck & Co.*, 697 F.3d 1080, 1085-1089
4   (9th Cir. 2012) concluded that the Vaccine Act preempts *all* design-defect *and*
5   *failure to warn* claims seeking compensation for injury or death caused by a
6   vaccine's unavoidable side effects, even those brought by parents in their individual
7   capacities. The panel flatly rejected the argument that because Section 11 of the
8   Vaccine Act rendered them ineligible for compensation through the Vaccine Court,
9   no other part of the Act applied. *Holmes v. Merck & Co.*, 697 F.3d at 1084.

10         Specifically, the Court noted:
11         Section 22 of the Vaccine Act meanwhile provides vaccine
12         manufacturers significant tort-liability protections by eliminating
13         liability for injuries from unavoidable side effects; *eliminating liability*
14         *for not providing direct warnings to a claimant*, and imposing a
15         presumption that a manufacturer provided proper directions and
16         warnings if the manufacturer complied with FDA requirements.
17   (Emphasis added) (Internal citations and quotes omitted)

18         Lest there be any uncertainty, the Court explicitly held: "Given the structure
19   and broad purpose of the Act as a whole, it is most reasonable to apply Section 22 to
20   *all* design defect *and failure to warn claims* arising out of a vaccine-related injury or
21   death, not just those that could have first been brought in the Vaccine Court."
22   *Holmes v. Merck & Co.*, 697 F.3d at 1087.

23         Tellingly, Plaintiff has already conceded that "she is prohibited [by the
24   Vaccine Act] from proceeding with a 'design defect' *or* 'failure to warn' claim
25   against the vaccine manufacturer." Exhibit A to RJN at p. 7. Plaintiff further
26   admitted that her counsel failed to conduct appropriate pre-filing investigation and
27   research to determine whether her "design defect" and "failure to warn" claims were
28   warranted and tenable under the existing law. Indeed, this admission was at the heart

1 of Plaintiff's request for relief from judgment, which the Vaccine Court denied
2 noting as follows:

3     Petitioner's counsel was ignorant of Bruesewitz, 131 S.Ct. 1068, and

4     section 300aa-22(c) of the Vaccine Act, and thus did not understand that

5     design defect and failure to warn claims against the vaccine

6     manufacturer are preempted by the Vaccine Act. This misunderstanding

7     of the law *clearly stemmed from counsel's failure to adequately*

8     *research both the underlying statute and relevant Supreme Court case*

9     *law. An attorney has a duty to his client to provide competent legal*

10    *service, which includes staying apprised of applicable statutory law and*

11    *case law.* Furthermore, the responsibility to research legal precedent is

12    certainly a task within the reasonable control of counsel. *Prior to filing*

13    *a petition, counsel is presumed to have familiarized himself with the*

14    *Vaccine Act and the rules of procedure applicable to the Vaccine*

15    *Program.*"

16 Exhibit A to RJN at p. 6. (Emphasis added.)

17     To wit, Plaintiff has all but admitted that her "failure to warn" claim is
18 preempted by the Vaccine Act and has therefore attempted to convert this claim into
19 allegations of fraud, which is untenable as discussed below.

20     Furthermore, even if Plaintiff's "failure to warn" claim was not preempted
21 under the Vaccine Act, which we do not concede by any means, this cause of action
22 is untenable in that Plaintiff did not, because she could not set forth any *plausible*
23 claim for failure to warn. See, e.g., *Ashcroft v. Iqbal*, *supra* 129 S.Ct. at 950 – "only
24 a complaint that states a plausible claim for relief survives a motion to dismiss."

25     Specifically, liability under a warning defect theory "requires that the
26 manufacturer knows, or should have known, of the danger of the product at the time
27 it is sold or distributed," [and that] "the plaintiff prove that defendant 'did not
28 adequately warn of a particular risk that was known or knowable in light of the

17

generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.'" *Saller*, 187 Cal.App.4th at 1238 (quoting *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal.3d 987, 1002-03 (1991)).

Here, Plaintiff alleged that, "[Sanofi] intentionally and fraudulently failed to provide proper warnings in the Prescription Information to Plaintiff G.M.'s physicians and all medical providers that Fluzone influenza vaccines can and have caused recipients to suffer Transverse Myelitis with respect to past recipients." (FAC at ¶69). Yet, Plaintiff did not, because once again, she could not set forth any *facts* in support of these formulaic, bare-bones contentions and inflammatory proclamations.

In sum, Plaintiff has all but conceded that her "failure to warn" claim is preempted by the Vaccine Act and has therefore attempted to convert this claim into allegations of fraud, which is untenable as discussed below.

**D.     Count IV Against Sanofi should be Dismissed Because Plaintiff has not Satisfied the Heightened Pleading Requirements for Fraud Claims and her Claims Are Barred as a Matter of Law.**

**1.     Plaintiff Failed to Plead Fraud with the Requisite Particularity Under Rule 9(b).**

A common law claim for fraudulent omission under California law requires: (1) concealing or suppressing a material fact; (2) a duty to disclose the fact to plaintiff; (3) intent to defraud plaintiff; (4) a change of position; and (5) damage to plaintiff as a result of the concealment or suppression. See *Hahn v. Mirda,* 147 Cal.App.4th 740, 748 (2007).

Plaintiff's fraud claims should be dismissed for failure to meet Rule 9(b)'s heightened pleading requirements: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud…" *Fed. R. Civ. P.* 9(b). To satisfy Rule 9(b), plaintiffs must allege the time, place, and content of the alleged misrepresentation or omission, *Decker v. GlenFed, Inc.,* 42 F.3d 1541, 1548 (9th Cir.

1  1994) (superseded by statute on other grounds); *Marolda v. Symantec Corp.,* No. C
2  08-05701 MHP, 2009 WL 2252125, at 8 (N.D. Cal. July 28, 2009), as well as the
3  identity of the person who made the misrepresentation or omission. *Kearns v. Ford*
4  *Motor Co.,* 567 F.3d 1120, 1125-26 (9th Cir. 2009). In other words,
5  plaintiff must plead "the who, what, when, where, and how of the misconduct
6  charged." *Id.*

7      Rule 9(b) also requires that the plaintiffs plead facts establishing that the
8  misrepresentation or omission was false. See *Decker,* 42 F.3d at 1548 ("The plaintiff
9  must set forth what is false or misleading about a statement, and why it is false.");
10 *In re Actimmune,* 614 F. Supp. 2d at 1048 (dismissing fraud claim because plaintiff
11 failed to "set forth an explanation as to why the statement or omission complained of
12 was false and misleading").

13     Plaintiff has failed to satisfy this heightened pleading standard for any of the
14 misrepresentations or omissions alleged in the complaint. Specifically, Plaintiff
15 alleged that, "Defendant concealed or knowingly failed to disclose a material risk of
16 Transverse Myelitis from Fluzone…in the Prescriptive Information intended for
17 physicians and all medical providers." (FAC at ¶78). Plaintiff also alleged that, "As a
18 proximate result of Defendant's misrepresentation by concealment, Plaintiff G.M.
19 has suffered transverse myelitis which resulted in permanent paraplegia…" (FAC at
20 ¶82)

21     However, Plaintiff has not identified the specific persons who made the
22 misrepresentations or omissions. Plaintiff's conclusory allegation that, "[d]efendant
23 concealed or knowingly failed to disclose a material risk of Transverse Myelitis" is
24 insufficient under Rule 9(b).  *Decker,* 42 F.3d at 1548*; Kearns,* 567 F.3d at 1125
25 (dismissing fraud claim because plaintiff failed to indicate who within the "sales
26 personnel" made the misrepresentation). Nor has plaintiff identified the specific time
27 or place of any of the purported misrepresentations or omissions.

28

1   In addition, plaintiff has not identified the specific content of the alleged
2   misrepresentations or omissions. Plaintiff's allegations that Sanofi "…was well
3   aware that Fluzone can and has caused other recipients…to suffer Transverse
4   Myelitis" and "concealed or knowingly failed to disclose a material risk of
5   Transverse Myelitis" is insufficient under Rule 9(b). *See, e.g., Kearns*, 567 F.3d at
6   1125-26 (dismissing fraud claim because plaintiff failed to "specify" what the
7   allegedly fraudulent materials "specifically stated").

8   Furthermore, even if Plaintiff had sufficiently alleged causation and damages,
9   Plaintiff does not sufficiently allege any omission of a fact that Sanofi was obliged to
10  disclose sufficient to meet Rule 9(b) requirements. See, e.g., *Stearns v. Select*
11  *Comfort Retail Corp.,* 2009 WL 1635931, at 9-10 (N.D. Cal. June 5, 2009).

12  Plaintiff bases her claims on the fact that she has suffered Transverse Myelitis
13  after the administration of the Vaccine. However, Plaintiff did not, because she could
14  not set forth any facts that there have ever been *any* other instances of Transverse
15  Myelitis following the administration of Fluzone, and/or that Sanofi knew about any
16  such cases. To wit, Plaintiff has not alleged facts to demonstrate either a plausible
17  safety risk from the Vaccine vis a vis Transverse Myelitis or Sanofi's lack of
18  substantiation of the Vaccine's safety with respect to this particular condition.

19  ## 2.  Plaintiff's Fraud Claims Are Barred under *Buckman.*

20  Plaintiff has clearly implied that Sanofi has perpetrated fraud on the FDA by
21  concealing from the Administration its knowledge of the Transverse Myelitis risk.
22  However, state-law claims predicated on allegations that a manufacturer made
23  misrepresentations to the FDA are prohibited by federal law. See *Buckman Co. v.*
24  *Plaintiffs' Legal Comm.*, 531 U.S. 341, 350, 353 (2001) (barring state-law "fraud-on-
25  the-FDA" claims because they "inevitably conflict with the FDA's responsibility to
26  police fraud consistently with the Administration's judgment and objectives"); see
27  also *Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1204-07 (9th Cir. 2002)
28  (applying *Buckman* to preclude a California state law claim for intentional

20

interference with a prospective economic advantage premised on the allegation that defendant knowingly submitted false information to the EPA).

As the U.S. Supreme Court explained in *Buckman*, "the federal statutory scheme amply empowers the FDA to punish and deter fraud against the Administration, and . . . this authority is used by the Administration to achieve a somewhat delicate balance of statutory objectives. The balance sought by the Administration can be skewed by allowing fraud-on-the-FDA claims under state tort law." *Id.* at 348.

Therefore, any claims premised on a contention that Sanofi misrepresented to, or concealed facts from the FDA, which has the statutory prerogative to police all representations made to it, are prohibited by *Buckman*.

## V.     CONCLUSION

For all the foregoing reasons, it is respectfully requested that the Court dismiss Plaintiff's First Amended Complaint with prejudice.

DATED:   June 29, 2015                    HERZFELD & RUBIN LLP

By:     /s/ Vadim Braslavsky
MICHAEL A. ZUK
VADIM BRASLAVSKY
Attorneys for Defendant,
SANOFI PASTEUR INC.

21

DEFENDANT SANOFI PASTEUR INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT PURSUANT TO RULE 12(b)(6)

## **DECLARATION OF VADIM BRASLAVSKY**

I, Vadim Braslavsky, declare as follows:

1.     I am an attorney licensed to practice law in the State of California and before this Court.  I am a senior associate at Herzfeld and Rubin LLP, attorneys of record for Defendant Sanofi Pasteur Inc. ("Sanofi") in this action.  I have personal knowledge of the matters set forth herein, and if called upon as a witness, I could and would competently testify thereto.

2.     I am one of the attorneys responsible for representing Sanofi in this matter.  I am, therefore, familiar with the pleadings, motions, and all related proceedings in this matter.

3.     On April 28, 2015, this Court issued an Order Granting Sanofi's Motion to dismiss with leave to amend. A true and correct copy of the Court's April 28, 2015 order, Dct. 20, is attached hereto as Exhibit A and incorporated by reference.

4.     On May 29, 2015, I have met and conferred with Danny Soong, counsel for Plaintiff, pursuant to Local Rule 7-3 in person at Mr. Soong's office wherein I discussed with Mr. Soong in detail the grounds for Sanofi's proposed Motion to Dismiss and I advised Dr. Soong that none of Plaintiff's Counts stated plausible claim under the Iqbal/Twombly standard.

5.     As the threshold matter, I reminded Dr. Soong of the Court's cautioning Plaintiff to review and analyze Sanofi's arguments made in the first Motion to Dismiss ("First Motion") concerning the Vaccine Act and its preemptive effect on all of Plaintiff's products liability claims in deciding whether to amend the complaint.

6.     I advised Mr. Soong that the First Amended Complaint ("FAC") failed to state a plausible claim as required by *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009). Specifically, I indicated that with respect to the manufacturing defect, the FAC set forth bare-bone recitation of the elements of this cause of action without setting forth specific facts. I further explained to Dr. Soong that reference to two instances of the

DEFENDANT SANOFI PASTEUR INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT PURSUANT TO RULE 12(b)(6)

1  alleged vaccine malfunction in the FAC were irrelevant in that none of them

2  involved the type of injury alleged by Plaintiff.

3      7.    With respect to the inadequate warning count, I explained to Mr. Soong

4  that, as was argued in the First Motion, all failure to warn claims were preempted

5  under Section 22(c) of the Vaccine Act. In addition, I advised Mr. Soong that the

6  FAC failed to state a plausible claim for this count because, other than bare-bone

7  recitation of the elements of this cause of action for failure to warn, Plaintiff failed to

8  set forth specific facts. Finally, I advised Plaintiff that this count failed also because

9  the subject warnings or potential risks and adverse effects have been reviewed and

10  approved by the FDA and that Plaintiff's recovery was precluded under the learned-

11  intermediary doctrine.

12      8.    Concerning the cause of action for fraudulent concealment, I explained

13  that the FAC failed to satisfy the strict pleading requirements for pleading fraud

14  under Rule 9(b) because, the FAC did not plead the time, the place of the alleged

15  misrepresentation or omission and the identity of the person making such a

16  misrepresentation or omission.

17      9.    Finally, with respect to the breach of warranty counts, I explained to

18  Mr. Soong that the FAC failed to set forth a plausible cause of action and because

19  Plaintiff's implied warranty count was untenable due to lack of the required element

20  of privity.

21      10.    We were unable to informally resolve any issues addressed by Sanofi's

22  proposed Motion to Dismiss. Mr. Soong stated that Plaintiff would not dismiss any

23  of her state law claims, even in light of the reasons which I set forth and which I

24

25

26

27

28

DEFENDANT SANOFI PASTEUR INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT PURSUANT TO RULE 12(b)(6)

stated would be included in Sanofi's Motion to Dismiss.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 29, 2015, at Los Angeles, California.



/s/ Vadim Braslavsky
VADIM BRASLAVSKY

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 1925 Century Park East, Suite 900, Los Angeles, California 90067.

On June 29, 2015, I served the foregoing document described as: **DEFENDANT SANOFI PASTEUR INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF VADIM BRASLAVSKY IN SUPPORT THEREOF; AND [PROPOSED] ORDER** on the interested parties in this action by placing a true and correct copy thereof in a sealed envelope addressed as follows:

**See attached service list.**

☐   (MAIL) I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.

☐   (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express , an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy  of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

☐   (MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed and provided them to a professional messenger service for service. A separate Personal Proof of Service provided by the professional messenger service will be filed under separate cover.

☐   (FACSIMILE) Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☐ (E-MAIL or ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☑ (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

Executed on **June 29**, **2015**, at Los Angeles, California.

_____        _____
Jason Berger                              /s/ Jason Berger
(Type or print name)                     (Signature)

PROOF OF SERVICE

*Mora vs. Sanofi Pasteur Inc.*
**SERVICE LIST**

Danny Soong
LAW OFFICES OF DANNY SOONG
100 N. Barranca Street, Suite 700
West Covina, CA 91791
Telephone: (626) 858-2068
Fax: (626) 858-1922
Counsel for Plaintiff *G.M., a minor, by and through her Guardian Ad Litem, Lorena Mora*

7

1   MICHAEL A. ZUK, ESQ. (Bar # 83102)
    mzuk@hrllp-law.com
2   VADIM BRASLAVSKY, ESQ. (Bar # 223920)
    vbraslavsky@hrllp-law.com
3   **HERZFELD & RUBIN LLP**
4   1925 Century Park East, Suite 900
    Los Angeles, California 90067-2783
5   Telephone:   (310) 553-0451
6   Facsimile:   (310) 553-0648

7
    Attorneys for Defendant,
8   SANOFI PASTEUR INC.

9

10              **UNITED STATES DISTRICT COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

12  | | |
    |---|---|
    | G.M., a minor, by and through her Guardian Ad Litem, LORENA MORA, | CASE NO.: 2:14-cv-09549-FMO (ASx) |

13  | | Honorable Fernando M. Olguin |
    | Plaintiff, | Courtroom: 25 |

14  | | |
    | vs. | **DEFENDANT SANOFI PASTEUR** |

15  | | **INC.'S NOTICE OF MOTION AND** |
    | | **MOTION FOR SANCTIONS** |

16  | SANOFI PASTEUR INC. and DOES 1 | **UNDER *FED. R. CIV. P.* 11 AND** |
    | through 100, inclusive | **THE COURT'S INHERENT** |

17  | | **AUTHORITY; MEMORANDUM** |
    | Defendants. | **OF POINTS AND AUTHORITIES;** |

18  | | **AND DECLARATION OF VADIM** |
    | | **BRASLAVSKY IN SUPPORT** |

19  | | **THEREOF** |

20  [Notice of Request and Request for
    Judicial Notice Filed and Served
21  Concurrently Herewith]

22

23  Hearing Date:  August 27, 2015
    Hearing Time: 10:00 a.m.
24

25  Complaint Served:   November 26, 2014

26

27

28

**TO THE HONORABLE COURT, AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 27, 2015 at 10:00 a.m., or soon thereafter as the matter may be heard in Courtroom 25 of the above entitled Court, located at 312 North Spring Street, Los Angeles, CA 90012, Defendant Sanofi Pasteur Inc. ("Sanofi") will and hereby move the Court for an Order sanctioning Plaintiff and/or Plaintiff's counsel by awarding to Sanofi its attorneys' fees incurred in defending against frivolous claims pursuant to *Federal Rule of Civil Procedure* 11 ("Rule 11") and Local Rule 83-7, as well as Sanofi's attorneys' fees incurred in preparing and bringing this Motion on the grounds that Plaintiff and/or her counsel filed and prosecuted this action without first conducting a reasonable inquiry to confirm that there was legal and factual support for the claims asserted in her First Amended Complaint ("FAC").

Sanofi takes the exceptional step of seeking Rule 11 sanctions because FAC has no factual or legal basis. Even cursory legal research and minimal factual inquiry by Plaintiff's counsel would have revealed the utter inappropriateness of filing this suit against Sanofi.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on May 29, 2015.

Sanofi served Plaintiff and her counsel with written notice of its intention to bring this motion under Rule 11. Plaintiff and her counsel did not dismiss this action during the 21-day safe harbor contained in Rule 11.

The Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Declaration of Vadim Braslavsky, Notice of Request and Request for Judicial Notice filed and served concurrently herewith, the records and files in this action, any other matters of which this Court may take judicial notice, and on such other and further arguments,

1   documents and grounds as may be advanced before, during, and after the hearing on

2   this matter.

3   DATED:   July 16, 2015                    HERZFELD & RUBIN LLP

4

5                                      By:    /s/ Vadim Braslavsky

6                                             MICHAEL A. ZUK
                                              VADIM BRASLAVSKY
7                                             Attorneys for Defendant,
                                              SANOFI PASTEUR INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page(s)

I.  INTRODUCTION .................................................................................................1

II. FACTUAL BACKGROUND ..............................................................................3

III. LEGAL STANDARD .........................................................................................5

IV. ARGUMENT ......................................................................................................6

    A.  FAC is Frivolous Under Rule 11 Because it is Factually and Legally Baseless.................................................................................................6
        1.  Manufacturing Defect and Negligent Manufacturing..............6
        2.  Failure to Warn.........................................................................7
        3.  Misrepresentation Based on Concealment.................................9
        4.  Breach of Express and Implied Warranty................................10

    B.  Rule 11 Warrants Monetary Sanctions Against Plaintiff and her Attorneys in the Amount of at Least $15,187.50 .........................................12
        1.  Sanctions are Appropriate Under Rule 11(c)......................... 12
        2.  Plaintiff May Not Avoid Sanctions by Pointing to Aspects of Her Case Against Sanofi or the Other Defendants That it Contends Are Not Frivolous or are Warranted by Existing Law.................................................................................13
        3.  Sanctions May Also be Awarded Under the Court's Inherent Authority.................................................................14
    C.  Monetary Sanctions in the Amount of at Least $15,187.50, Representing Attorneys' Fees Incurred by Sanofi in Bringing this Motion Should be Imposed Against Plaintiff's Attorneys ...................................................12

V.  CONCLUSION .................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ...........................................................................6

*Bruesewitz v. Wyeth LLC,*
    131 S. Ct. 1068 (U.S. 2011) ...............................................................1

*Cabell v. Petty,*
    810 F.2d 463 (4th Cir. 1987) ............................................................12

*Cafasso v. General Dynamics C4 Systems,*
    637 F.3d 1047 (9th Cir. 2011) ............................................................6

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991). ..........................................................................14

*Christian v. Mattel, Inc.,*
    286 F.3d 1118 (9th Cir. 2002) ...........................................6, 12, 14, 15

*Cross & Cross Properties, Ltd. v. Everett Allied Co.,*
    886 F.2d 497 (2nd Cir. 1989) ...........................................................13

*Decker v. GlenFed, Inc.,*
    42 F.3d 1541 (9th Cir. 1994) ..............................................................9

*Centeno v. Bayer HealthCare Pharms. Inc.,*
    2014 U.S. Dist. LEXIS 136234 (S.D. Ill. Sept. 26, 2014) ...............12

*Evraets v. Intermedics Intraocular, Inc.*
    29 Cal.App.4th 779 (1994) ...........................................................11, 12

*Fink  v. Gomez,*
    239 F.3d 989 (9th Cir. 2001) ............................................................14

*G.C. & K.B. Invs., Inc. v. Wilson,*
    326 F.3d 1096 (9th Cir. 2003) ..........................................................12

*Goldrich v. Natural Y Surgical Specialties, Inc.,*
    25 Cal. App. 4th 772 (1994) .............................................................10

*Gurary v. Nu-Tech Bio-Med, Inc.*,
   303 F.3d 212 (2nd Cir. 2002) ........................................................................13

*Halaco Eng'g Co. v. Costle*,
   843 F.2d 376 (9th Cir. 1988) ........................................................................14

*Harris v. Belton*,
   258 Cal.App.2d 595 (1968) ...................................................................10, 11

*Holgate v. Baldwin*
   425 F.3d 671 (9th Cir. 2005) ......................................................................5, 6

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ......................................................................10

*Keith v. Buchanan*,
   173 Cal.App.3d 13 (1985) .....................................................................10, 11

*Kendall v. Visa USA, Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ........................................................................6

*King v. Collagen Corp.*,
   983 F.2d 1130 (1st Cir. 1993) ......................................................................10

*Lewis v. Telephone Employees Credit Union*,
   87 F.3d 1537 (9th Cir. 1996) ........................................................................14

*Marolda v. Symantec Corp.*,
   No. C 08-05701 MHP (N.D. Cal. July 28, 2009)............................................9

*Patterson v. Aiken*,
   841 F.2d 386 (11th Cir. 1988) ......................................................................13

*Senese v. Chicago Area I.B. of T. Pension Fund*,
   237 F.3d 819 (7th Cir. 2001) ........................................................................13

*Smith v. Ricks*,
   31 F.3d 1478 (9th Cir. 1994) ........................................................................12

*Townsend v. Holman Consulting Corp.*,
   929 F.2d 1358 (9th Cir. 1991) ..................................................................6, 13

*View Engineering, Inc. v. Robotic Visions Systems, Inc.*,
   208 F.3d 981(Fed. Cir. 2000) ...........................................................13

*William O. Gilley Enterprises v. Atlantic Richfield Co.*,
   588 F.3d 659 (9th Cir. 2009) .............................................................6

*Zaldivar v. City of Los Angeles*,
   780 F.2d 823 (9th Cir. 1986). .......................................................6, 12

## Statutes

*Fed. R. Civ. P.* 8(a) ...............................................................................9

*Fed. R. Civ. P.* 9(b) .................................................................9, 10, 11

*Fed. R. Civ. P.* 11 .......................................................................passim

*Fed. R. Civ. P.* 11(a) .........................................................................13

*Fed. R. Civ. P.* 11 (b)(2)......................................................................5

*Fed. R. Civ. P.* 11(c)(1)......................................................................12

*Fed. R. Civ. P.* 11(c)(2)........................................................................5

28 U.S.C.§1332.....................................................................................4

42 U.S.C. §300aa-22(c). ....................................................................7, 8

42 U.S.C. §§300aa-1-33.......................................................................1

*Cal. Comm. Code* §2313(1)(a) and (b) ................................................10

## Court Rules

Local Rule 7-3..................................................................................14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This action arises out of an administration of an FDA-approved influenza vaccine ("Vaccine"), manufactured by Defendant Sanofi Pasteur Inc. ("Sanofi") to Plaintiff G.M. ("Plaintiff" or "G.M.") on or about September 5, 2011. Plaintiff alleged that the Vaccine caused her to become a permanent paraplegic because the Vaccine was defectively manufactured and designed, and because Sanofi failed to warn Plaintiff of the Vaccine's risks and side effects, including an alleged risk of developing Transverse Myelitis.

Specifically, the Complaint set out five state-law claims: (1) Strict Product Liability (Manufacturing Defect); (2) Strict Product Liability (Design Defect: Consumer Expectation Test); (3) Strict Product Liability (Design Defect: Risk-Benefit Test); (4) Strict Product Liability (Failure to Warn); and (5) Negligent Product Liability (Failure to Warn). Although labeled differently, each count sets forth identical allegations that Sanofi created a defective and unsafe Vaccine, which caused the alleged injuries.

On February 10, 2015, Sanofi moved the Court to dismiss Complaint pursuant to Rule 12(b)(6). ("Motion to Dismiss"). Specifically Sanofi argued that each count arose from, and was rooted in, Plaintiff's allegation that the influenza vaccine administered was dangerous, defective and unsafe; and that claims for personal injuries against a vaccine manufacturer, such as Sanofi, are governed by, and are subject to the *National Childhood Vaccine Injury Act of 1986*, 42 U.S.C. §§300aa-1-33. ("Vaccine Act").  Therefore, Sanofi contended that all of Plaintiff's claims were completely preempted by federal law.

On April 9, 2015, while the Motion to Dismiss was pending, counsel for Sanofi Michael A. Zuk wrote to Plaintiff's counsel Danny Soong, informing him that none of Plaintiff's claims set forth in the Complaint were tenable as a matter of law in that they were all preempted, citing the *National Childhood Vaccine Injury Act of*

1  *1986*, 42 U.S.C. §§300aa-1-33 and *Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068 (U.S.

2  2011). Having explained that there was no factual or legal basis for any of Plaintiff's

3  claims, Mr. Zuk also asked Mr. Soong in this same letter to voluntarily dismiss

4  Plaintiff's claims against Sanofi. Mr. Soong did not respond. Declaration of Michael

5  A. Zuk ("Zuk Decl."), ¶3, Ex. A.

6       On April 28, 2015, this Court issued an Order granting the Motion to Dismiss

7  and dismissing the Complaint in its entirety with leave to amend. See, the April 28,

8  2015 Order, attached as Exhibit A to the Request for Judicial Notice ("RJN") filed

9  and served concurrently herewith and incorporated by reference. The Court further

10 ordered as follows: "If plaintiff still wishes to pursue this action, she is granted until

11 May 14, 2015, to file a First Amended Complaint attempting to cure, *to the extent*

12 *she believes is warranted by existing law*, the alleged defects *outlined in defendant's*

13 *Motion.*" *Id.* To wit, the Court cautioned Plaintiff to amend the Complaint *only* if

14 *warranted by existing law*.

15      On May 1, 2015, Mr. Zuk wrote to Mr. Soong stating that, in view of the

16 Court's granting Sanofi's 12(b)(6) Motion to Dismiss in its entirety, any attempt to

17 amend the Complaint would be frivolous, without any basis in law or fact. Once

18 again, Mr. Zuk requested Plaintiff to voluntarily dismiss her action against

19 Sanofi. Mr. Soong did not respond.

20      Plaintiff heeded neither the Court's guidance, nor Mr. Zuk's request for

21 voluntary dismissal. Instead, on May 14, 2015, Plaintiff filed the First Amended

22 Complaint ("FAC") consisting of the following six (6) counts: (1) Strict Liability-

23 Manufacturing Defect; (2) Negligence - Negligent Manufacturing; (3) Strict Liability

24 - Inadequate Warnings; (4) Misrepresentation Based on Concealment; (5) Breach of

25 Express Warranty; and (6) Breach of Implied Warranty.

26      As discussed below, none of these counts has any basis in law or in fact. To

27 wit, Plaintiff and her counsel have blatantly disregarded their legal obligations in

28

DEFENDANT SANOFI PASTEUR INC.'S MOTION FOR SANCTIONS UNDER *FED. R. CIV. P.* 11

1  both initiating and prosecuting this matter. Instead of abiding by their obligations,

2  they have displayed a contumacious disrespect for the law, their professional

3  obligations, and the authority of this Court.

4      Based on the Plaintiff's utter inability to present sufficient facts to support any

5  plausible claim, this case presents a clear violation of Rule 11. Dismissal alone is an

6  insufficient remedy if Plaintiff and her counsel are not to be rewarded for their

7  conduct. The only appropriate response to such conduct is to sanction Plaintiff and/or

8  her counsel of record, by striking FAC and ordering payment of Sanofi's attorney

9  fees and costs for filing this motion, for responding to the Complaint and FAC, and

10  any other fees and costs incurred in connection with defending this meritless lawsuit.

11      Plaintiff's frivolous and unfounded FAC has already caused harm to Sanofi as

12  it has had to expend time, energy and attorneys' fees in submitting a response to it.

13  Pursuant to Rule 11, and/or the Court's inherent authority, the Court should remedy

14  this abuse of the legal system and deter future abuses by striking FAC and awarding

15  Sanofi all costs and attorneys' fees incurred in defending against this action.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

16

17      On September 5, 2011, Plaintiff, then approximately two years and seven

18  months old, was administered the Vaccine at Kaiser Permanente in Baldwin Park,

19  California. (FAC at ¶¶10, 11). Two days after the administration of the Vaccine,

20  Mora started to complain of stomach pain and became unable to stand up to walk.

21      Plaintiff was taken to the Emergency Room at Kaiser Permanente in Baldwin

22  Park, California, where she was diagnosed with a paralysis and was rendered the

23  differential diagnoses of botulism, transverse myelitis and Guillain-Barre Syndrome.

24  She was hospitalized and has remained a paraplegic ever since.

25  (FAC at ¶¶13, 14, 17).

26      On or about June 18, 2013, Plaintiff filed a Petition for Vaccine Compensation

27  in the U.S. Court of Federal Claims ("Vaccine Court"). On or about August 29, 2014

28  the Vaccine Court entered judgment and dismissed the Petition. On or about

DEFENDANT SANOFI PASTEUR INC.'S MOTION FOR SANCTIONS UNDER *FED. R. CIV. P.* 11

September 26, 2014, Plaintiff filed a Notice of Election to File a Civil Action and initiated this matter in the Los Angeles County Superior Court on or about October 14, 2014. (FAC at ¶43).

On December 16, 2014, Sanofi removed the action to this Court pursuant to 28 U.S.C. §1332 on the grounds that complete diversity of citizenship exists between Plaintiff and Sanofi and that Plaintiff has alleged that more than $75,000 is at issue in their dispute.[1]

On January 21, 2015, Plaintiff filed a "Motion to Set Aside Judgment and Dismissal of Petition Based on Vaccine Rule 36 and RCFC 60(b)" in the Vaccine Court.[2] See, the February 27, 2015 Order of Case No. 13-421, denying Plaintiff's Motion for Relief, attached as Exhibit B to RJN). Plaintiff requested that her vaccine claim be restored without prejudice in exchange for dismissing her civil matter against Sanofi and withdrawing her demand for arbitration with Kaiser Permanente. Exhibit A to RJN at p. 2.

Plaintiff further argued that her counsel *was unaware* that *any design defect or failure to warn claim* against the vaccine manufacturer was preempted by the Vaccine Act and that her counsel's ignorance of the law constituted 'mistake, inadvertence, surprise or excusable neglect' under rule 60(b)(1) of the Rules of the Court of Federal Claims. In the alternative, Plaintiff argued that the judgment should set aside judgment under the catch-all provision in RCFC 60(b)(6.) *Id.* at p. 3.

On February 27, 2015, the Vaccine Court issued an Order Denying Plaintiff's Motion for Relief. *Id.* On April 28, 2015, the Court granted the Motion to Dismiss in its entirety with leave to amend. Plaintiff filed the FAC on May 14, 2015.

---

[1] Sanofi argued that Removal is also proper because Plaintiff challenges the safety of an influenza vaccine. However, claims for personal injuries against a vaccine manufacturer, such as Sanofi, are governed by, and are subject to the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§300aa-1-33.

[2] The Vaccine Court treated this as a motion for relief from judgment.

### III.   LEGAL STANDARD

Rule 11 provides:

> By presenting to the court (whether by signing, filing, submitting, or
> later advocating) a pleading, written motion, or other paper, an attorney
> or unrepresented party is certifying that to the best of the person's
> knowledge, information, and belief, formed after an inquiry reasonable
> under the circumstances..., (2) the claims, defenses, and other legal
> contentions therein are warranted by existing law or by a non-frivolous
> argument for the extension, modification, or reversal of existing law or
> the establishment of new law; (3) the allegations and other factual
> contentions have evidentiary support or, if specifically so identified, are
> likely to have evidentiary support after a reasonable opportunity for
> further investigation or discovery…

*Fed. R. Civ. P.* 11.

If a plaintiff or his counsel fails to abide by these requirements, he is subject to
the imposition of sanctions, including an order directing payment to the movant of
some or all of the reasonable attorneys' fees and other expenses incurred as a
direct result of the violation. *Fed. R. Civ. P.* 11(c)(2). If the violation is only of Rule
11(b)(2) (the claims, defenses, and other legal contentions therein are warranted by
existing law or by a non-frivolous argument for the extension, modification,
or reversal of existing law or the establishment of new law), then sanctions may be
awarded only against counsel. *Fed. R. Civ. P.* 11(c)(2)(A). Otherwise, sanctions may
be imposed against both counsel and the represented parties. *Id.*

Numerous authorities interpret Plaintiffs' responsibilities under Rule 11 in
filing complaints. In *Holgate v. Baldwin,* 425 F.3d 671 (9th Cir. 2005), the
court described the test for determining whether the plaintiff violated Rule 11(b)(2)
as follows: "When [as here] a complaint is the primary focus of Rule 11 proceedings,
a district court must conduct a two-prong inquiry to determine (1) whether the

complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Id.* at 671, quoting *Christian v. Mattel, Inc.,* 286 F.3d 1118, 1127 (9th Cir. 2002). A complaint that fails this two-part test is "frivolous." *Id.* A frivolous complaint violates Rule 11, regardless of whether it was filed in good faith. See *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986).

Rule 11 sanctions may be imposed even if this two-prong test is satisfied with respect to only some of the claims asserted by the Plaintiff. *Holgate, supra,* 425 F.3d at 677. ("We have held that 'the mere existence of one non-frivolous claim' in a complaint does not immunize it from Rule 11 sanctions") quoting *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1364 (9th Cir. 1991). Both of the prongs identified in *Holgate* are satisfied in the instant action.

## IV.   ARGUMENT

**A.   FAC Is Frivolous Under Rule 11 Because it is Factually and Legally Baseless.**

**1.   Manufacturing Defect and Negligent Manufacturing.**

We submit it is undisputed that in order to set forth a legally sufficient claim, Plaintiff must allege "enough facts to state a claim for relief that is *plausible on its face.*" *Bell Atlantic Corp. v. Twombly,* supra, 550 U.S. 544, 570 (2007); *accord, Cafasso v. General Dynamics C4 Systems,* 637 F.3d 1047, 1054 (9th Cir. 2011) (Emphasis added). A Complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Kendall v. Visa USA, Inc.,* 518 F.3d 1042, 1046 (9th Cir. 2008) (quoting *Twombly,* 550 U.S. at 570); *accord, Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  Rather, Plaintiffs' "*factual allegations* must be enough to raise a right to relief *above the speculative level.*" *William O. Gilley Enterprises v. Atlantic Richfield Co.,* 588 F.3d 659, 667 (quoting *Twombly,* 550 U.S. at 554-55) (9th Cir. 2009). (Emphasis added).

Here, having gotten the proverbial second bite at the apple [by virtue

1    of the Court's allowing Plaintiff to amend the Complaint], Plaintiff had little trouble

2    demonstrating that her manufacturing defect claims are frivolous as they are utterly

3    lacking in any factual support.

4          Specifically, *without any factual support*, Plaintiff simply concluded that

5    "Fluzone…malfunctioned resulting in adverse reaction to her and imputable to the

6    deviation of the manufacturing protocol due to location of manufacture, tools and

7    equipment used and the conditions of manufacture." (FAC at ¶52). The closest

8    Plaintiff comes to alleging *any* "facts" is her reference to two irrelevant instances

9    where the Vaccine from the same Lot was possibly associated with side effects, none

10   of which [including an incident that occurred *after* the Vaccine administration]

11   caused Transverse Myelitis, the injury alleged here.

12         Specifically, Plaintiff cites an incident involving a child who was diagnosed

13   with epilepsy in 2012 "after receiving an influenza manufactured by [Sanofi] from

14   Lot U4482BA." (FAC at ¶41). This "fact" is irrelevant as the child in question did

15   not sustain the same injury as Plaintiff. Furthermore, Plaintiff failed to set forth any

16   facts supporting any conclusion that the vaccine was not properly manufactured

17   and/or that it actually *caused* epilepsy.

18         Likewise, irrelevant is Plaintiff's reference to an incident in 2013 – a year after

19   the subject vaccination – in which a child died, "[t]he day after receiving the

20   influenza vaccine manufactured by Defendant." (FAC at ¶42). Plaintiff does not even

21   attempt to state the cause of death or make any factual allegations that the vaccine

22   was improperly manufactured and/or malfunctioned.

23         In sum, Plaintiff simply has no facts to support a *plausible* claim of

24   manufacturing defect in the FAC.

25         **2.    Failure to Warn.**

26         The Congress expressly found that the "failure to warn" claims are preempted

27   by the *Vaccine Act* by including the following language in the Vaccine Act:

28

DEFENDANT SANOFI PASTEUR INC.'S MOTION FOR SANCTIONS UNDER *FED. R. CIV. P.* 11

1   No vaccine manufacturer shall be liable in a civil action for damages

2   arising from a vaccine-related injury or death associated with the

3   administration of a vaccine after October 1, 1988, *solely due to the*

4   *manufacturer's failure to provide direct warnings to the injured party*

5   *(or the injured party's legal representative) of the potential dangers*

6   *resulting from the administration of the vaccine manufactured by the*

7   *manufacturer.*

8   42 U.S.C. § 300aa-22(c). (Emphasis added).

9       In fact, Plaintiff has already conceded that "she is prohibited [by the Vaccine

10  Act] from proceeding with a 'design defect' *or* 'failure to warn' claim against the

11  vaccine manufacturer." Exhibit B to RJN at p. 7. Plaintiff further admitted that her

12  counsel failed to conduct appropriate pre-filing investigation and research to

13  determine whether her "design defect" and "failure to warn" claims were warranted

14  and tenable under the existing law. Indeed, this admission was at the heart of

15  Plaintiff's request for relief from judgment, which the Vaccine Court denied noting

16  as follows:

17      Petitioner's counsel was ignorant of Bruesewitz, 131 S.Ct. 1068, and

18      section 300aa-22(c) of the Vaccine Act, and thus did not understand that

19      design defect and failure to warn claims against the vaccine

20      manufacturer are preempted by the Vaccine Act. This misunderstanding

21      of the law *clearly stemmed from counsel's failure to adequately*

22      *research both the underlying statute and relevant Supreme Court case*

23      *law*. *An attorney has a duty to his client to provide competent legal*

24      *service, which includes staying apprised of applicable statutory law and*

25      *case law*. Furthermore, the responsibility to research legal precedent is

26      certainly a task within the reasonable control of counsel. *Prior to filing*

27      *a petition, counsel is presumed to have familiarized himself with the*

28      *Vaccine Act and the rules of procedure applicable to the Vaccine*

8

DEFENDANT SANOFI PASTEUR INC.'S MOTION FOR SANCTIONS UNDER *FED. R. CIV. P.* 11

1    *Program.*"

2    Exhibit A to RJN at p. 6. (Emphasis added).

3      Furthermore, even if Plaintiff's "failure to warn" claim was not preempted

4    under the Vaccine Act, which we do not concede by any means, this cause of action

5    is frivolous in that Plaintiff did not, because she could not set forth any *plausible*

6    claim for failure to warn. See, e.g., *Ashcroft v. Iqbal*, *supra* 129 S.Ct. at 950 – "only

7    a complaint that states a plausible claim for relief survives a motion to dismiss."

8      Indeed, in support of her allegations of the "failure to warn" claims, Plaintiff

9    alleged essentially, without setting forth any *facts*, that Sanofi "intentionally and

10   fraudulently failed to provide proper warnings in the Prescription Information to

11   Plaintiff G.M.'s physicians and all medical providers that Fluzone influenza vaccines

12   can and have caused recipients to suffer Transverse Myelitis with respect to past

13   recipients." (FAC at ¶69). Yet, Plaintiff did not, because once again, she could not

14   set forth any *fact* in support of these formulaic, bare-bones contentions and

15   inflammatory proclamations.

16     To wit, Plaintiff has all but conceded that her "failure to warn" claim is

17   preempted by the Vaccine Act and has therefore attempted to convert this claim into

18   allegations of fraud, which is untenable as discussed below.

19     **3. Misrepresentation Based on Concealment.**

20     Plaintiff fails to plead any actionable misrepresentation, with the specificity

21   required by *Federal Rules of Civil Procedure* 8(a) and 9(b), including the identity of

22   the individual perpetrating the fraud, and the substance, location, and time of the

23   alleged fraud. To wit, "[i]n alleging fraud . . . a party must state with particularity the

24   circumstances constituting fraud…" *Fed. R. Civ. P.* 9(b).

25     To satisfy Rule 9(b), plaintiffs must allege the time, place, and content of the

26   alleged misrepresentation or omission, *Decker v. Glen Fed, Inc.,* 42 F.3d 1541, 1548

27   (9th Cir. 1994) (superseded by statute on other grounds); *Marolda v. Symantec*

28   *Corp.,* No. C 08-05701 MHP, 2009 WL 2252125, at (N.D. Cal. July 28, 2009), as

1  well as the identity of the person who made the misrepresentation or omission.

2  *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125-26 (9th Cir. 2009). In other words,

3  plaintiffs must plead "the who, what, when, where, and how of the misconduct

4  charged." *Id.*

5        Plaintiff has done none of that in the FAC. Instead, using inflammatory

6  proclamations Plaintiff alleged in conclusory terms that, "Defendant concealed or

7  knowingly failed to disclose a material risk of Transverse Myelitis from Fluzone…in

8  the Prescriptive Information intended for physicians and all medical providers."

9  (FAC at ¶78). To wit, Plaintiff does not, because she cannot, allege any *facts* that

10  Sanofi made any false or misleading statements to Plaintiff or her healthcare

11  providers, or concealed any such information from them.

12        Furthermore, Plaintiff's fraud by concealment and misrepresentation claims

13  are merely an attempt to recast their failure to warn claims as fraud-based claims.

14  Plaintiff's attempt to recast their strict liability and negligence claims is improper

15  under Federal and California law. See *King v. Collagen Corp.*, 983 F.2d 1130, 1136

16  (1st Cir. 1993) ("fraud claim is, at bottom, a failure to warn claim"); See also

17  *Goldrich v. Natural Y Surgical Specialties, Inc.,* 25 Cal. App. 4th 772 (1994).

18  However, as discussed above, Plaintiff's failure to warn claims are pre-empted by

19  the Vaccine Act.

20        **4.     Breach of Express and Implied Warranty.**

21        Under California law, an express warranty arises *only* when a seller makes

22  "[a]ny affirmation of fact or promise" or "[a]ny description of the goods" to the

23  *buyer* that "relates to the goods and becomes part of the basis of the bargain." *Cal.*

24  *Comm. Code* §2313(1)(a) and (b). To demonstrate an express warranty, a plaintiff

25  must identify the affirmation(s) of fact which became the basis of the bargain, i.e.,

26  advertisements, labels, and pamphlets, to show "specific and unequivocal"

27  statements made by the defendant with respect to its product. *Keith v. Buchanan*, 173

28  Cal.App.3d 13, 22 (1985); *Harris v. Belton*, 258 Cal.App.2d 595, 605 (1968).

Here, Plaintiff alleged in general non-specific terms that, "Defendant expressly warranted to Plaintiff G.M. or her Guardian Ad Litem…by and through statement or their authorized agents or sale representative, orally and in publications, package inserts and other written material intended for physicians, medical patients, and the general public that the Fluzone….can be used safely and effectively for people six months of age and older to help against influenza illness caused by influenza virus subtypes A and type B." (FAC at ¶85).

Clearly, the FAC fails to identify any "specific and unequivocal" statement made by Sanofi through its advertisements, labels, brochures or pamphlets that would constitute affirmations of fact or promises. See *Keith*, *supra* 173 Cal.App.3d at 22. At a minimum, Plaintiff must – but clearly cannot – identify the warranty that became the basis of the bargain regarding his physician's decision to prescribe the vaccine.

Instead, Plaintiff concludes that an express warranty was breached without identifying the express warranty upon which her claim is purportedly based. At best, Plaintiff's express warranty claim is nothing more than a claim for breach of implied warranty, which Plaintiff has independently pled as her Count VI, and which as discussed below is untenable as a matter of law because of lack of privity.

In sum, Plaintiff's Count V for Breach of Express Warranty is frivolous because Plaintiff did not, and cannot, allege or identify the express warranty or "specific and unequivocal" statements made by Sanofi that became the basis of the bargain. *Keith v. Buchanan*, supra, 173 Cal.App.3d at 22; *Harris v. Belton*, *supra* 258 Cal.App.2d at 605.

Likewise, frivolous is Count VI for Breach of Implied Warranty. Indeed, "[u]nder California law, privity between the patient and the manufacturer of a pharmaceutical product is a necessary component of breach of implied warranty claims. See *Evraets v. Intermedics Intraocular, Inc.* 29 Cal. App. 4th 779 (Cal. App. Ct. 1994). Further, California courts have held that, in the context of prescription

1    pharmaceuticals, the transaction is between the manufacturer and the physician, not

2    the patient. Therefore, the plaintiff cannot maintain a claim for breach of implied

3    warranty. See *Evraets v. Intermedics Intraocular, Inc.* 29 Cal.App.4th 779 (1994)."

4    *Centeno v. Bayer HealthCare Pharms. Inc.*, 2014 U.S. Dist. LEXIS 136234 (S.D. Ill.

5    Sept. 26, 2014).

6       **B.     Rule 11 Warrants Monetary Sanctions Against Plaintiff and Her**

7            **Attorneys in the Amount of at Least $15,187.50.**

8       **1.     Sanctions are Appropriate Under Rule 11(c).**

9       Rule 11 gives the court authority to issue sanctions against an attorney who

10   signs a "pleading, written motion, [or] other paper" that is brought for any improper

11   purpose or is not well grounded in fact, warranted by existing law, or made in good

12   faith. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). "Absent

13   exceptional circumstances, a law firm must be held jointly responsible for a violation

14   committed by its partner, associate, or employee." *Fed. Rules Civ. Proc.*, Rule

15   11(c)(1).

16      Rule 11 sanctions must be assessed if the pleading filed "is frivolous, legally

17   unreasonable, or without factual foundation, even though the paper was not filed in

18   subjective bad faith." *Zaldivar v. Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986).

19   An objective standard of reasonableness governs both the "improper purpose" and

20   "frivolous" inquiries under Rule 11. *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d

21   1096, 1109 (9th Cir. 2003). Proof of subjective bad faith is not required, and

22   "Rule 11 does not prohibit merely intentional misconduct." *Cabell v. Petty*, 810 F.2d

23   463, 466 (4th Cir. 1987). "Counsel can no longer avoid the sting of Rule 11

24   sanctions by operating under the guise of a pure heart and empty head." *Smith v.

25   Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994) (Internal brackets and quotes omitted).

26

27

28

DEFENDANT SANOFI PASTEUR INC.'S MOTION FOR SANCTIONS UNDER *FED. R. CIV. P.* 11

**2. Plaintiff May Not Avoid Sanctions by Pointing to Aspects of Her Case Against Sanofi or the Other Defendants that it Contends Are Not Frivolous or are Warranted by Existing Law.**

Even assuming, arguendo, that Plaintiff can establish that her action in general, and the FAC in particular, is not entirely frivolous and not warranted by existing law as to all claims, Plaintiff could not escape Rule 11 sanctions on that basis. The main purpose of Rule 11 is to deter baseless filings. It would undermine this purpose to allow pleaders a "safe harbor" for frivolous claims simply because one non-frivolous claim is alleged. It would also promote form over substance since such claims would clearly be sanctionable if filed separately. *Townsend v. Homlan Consulting Corp.*, 914 F.2d 1136, 1141 (9th Cir. 1990).

"To adopt (the frivolous as a whole standard) would allow a party with one or more patently meritorious claims to pepper his complaint with one or more highly advantageous, yet wholly frivolous, claims…" *Cross & Cross Properties, Ltd. v. Everett Allied Co.*, 886 F.2d 497, 505 (2nd Cir. 1989); *View Engineering, Inc. v. Robotic Visions Systems, Inc.*, 208 F.3d 981, 985 (Fed. Cir. 2000). Sanctions may be imposed "where it is shown that the Rule was violated as to a portion of a pleading, even though it was not violated as to other portions." *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988); *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 926 n.3 (7th Cir. 2001); *Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 220-221 (2nd Cir. 2002).

Because Plaintiff's counsel has violated Rule 11 with filing the FAC as explained above, Sanofi requests the Court to impose sanctions against Plaintiff's counsel and in favor of Sanofi to reimburse Sanofi for its attorneys' fees incurred in opposing the unnecessary FAC, and in bringing this motion to recover those fees.

### 3. Sanctions May Also Be Awarded Under the Court's Inherent Authority.

Separate and apart from the Court's authority to impose sanctions under Rule 11, the Court also has inherent authority to do so. Whereas Rule 11 sanctions are limited to conduct arising from "pleadings, written motions, and other papers" signed by an attorney and filed in a given case (see Rule 11(a); *Christian, supra*, 286 F.3d at 1130), the Court's inherent authority is not so limited. In fact, "the inherent power 'extends to a full range of litigation abuses.'" *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) quoting *Chambers v. NASCO, Inc*., 501 U.S. 32, 46-47 (1991).

> [T]he district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct… "For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees.'"

*Fink*, 239 F.3d at 992, quoting *In re Itel Sec. Litig*., 791 F.2d 672, 675 (9th Cir. 1986). See also *Lewis v. Telephone Employees Credit Union*, 87 F.3d 1537, 1557-58 (9th Cir. 1996) ("district courts may under its inherent power 'impose sanctions for discovery abuses that may not be a technical violation of the discovery rules'") quoting *Halaco Eng'g Co. v. Castle*, 843 F.2d 376, 380 (9th Cir. 1988).

In the instant case, Plaintiff's counsel has manifested bad faith both by the complete baselessness of the action and the refusal of Plaintiff's counsel to dismiss the action even after being apprised of same by Sanofi's motion to dismiss the Complaint, the April, 9, 2015 and the May 30, 2015 letters from Sanofi's counsel, the May 29, 2015 Local Rule 7-3 in-person meet and confer with counsel regarding

DEFENDANT SANOFI PASTEUR INC.'S MOTION FOR SANCTIONS UNDER *FED. R. CIV. P.* 11

1   the baselessness of the FAC, and Sanofi's service of the instant Rule 11 motion on

2   Plaintiff's counsel by mail on June 23, 2015.

3   **C.    Monetary Sanctions in the Amount of $15,187.50, Representing**

4   **Attorneys' Fees Incurred by Sanofi in Bringing this Motion should**

5   **be Imposed Against Plaintiff's Attorneys.**

6   Under Rule 11, Sanofi is entitled to recover attorneys' fees representing time

7   "reasonably and appropriately spent in relation to both the patent frivolousness of

8   [Plaintiffs'] complaint and the services directly caused by the sanctionable

9   conduct." *Christian, supra*, 286 F.3d at 1131-32. Attorneys' fees may be awarded

10  under Rule 11 for "'services directly and unavoidably caused' by the sanctionable

11  conduct." *Id*. at 1132, quoting *Fed. R. Civ. P.* 11, advisory committee notes, 1993

12  Amendments, Subdivisions (b) and (c). Moreover, the Court has inherent authority to

13  impose sanctions for conduct wider in scope than the sanctions permitted under Rule

14  11.

15  All of the fees that Sanofi has incurred in defending the action were "directly

16  and unavoidably caused" by Plaintiff's filing and prosecution of their Complaint and

17  the FAC, and their obstinate refusal to dismiss the FAC prior to the expiration of the

18  21-day safe harbor period under Rule 11. Plaintiff and her counsel should be held

19  responsible for all of those fees under both Rule 11 and the Court's inherent

20  authority.

21  Sanofi has incurred attorneys' fees in the defense of this action of $15,187.50

22  (Braslavsky Decl., ¶6). Sanofi seeks an award of monetary sanctions in that amount

23  against Plaintiff's attorneys.

24

25

26

27

28

# V.   CONCLUSION

For all the foregoing reasons, Sanofi respectfully requests that the motion for sanctions be granted, and that the Court impose monetary sanctions against Plaintiff's counsel in the amount of $15,187.50.

DATED:   July 16, 2015                    HERZFELD & RUBIN LLP


                                 By:    /s/ Vadim Braslavsky
                                        MICHAEL A. ZUK
                                        VADIM BRASLAVSKY
                                        Attorneys for Defendant,
                                        SANOFI PASTEUR INC.

DEFENDANT SANOFI PASTEUR INC.'S MOTION FOR SANCTIONS UNDER *FED. R. CIV. P.* 11

## DECLARATION OF VADIM BRASLAVSKY

I, Vadim Braslavsky, declare as follows:

1.      I am an attorney licensed to practice law in the State of California and before this Court.  I am a senior associate at Herzfeld and Rubin LLP, attorneys of record for Defendant Sanofi Pasteur Inc. ("Sanofi") in this action.  I have personal knowledge of the matters set forth herein, and if called upon as a witness, I could and would competently testify thereto.

2.      I am one of the attorneys responsible for representing Sanofi in this matter.  I am, therefore, familiar with the pleadings in this matter.

3.      I have met and conferred with Danny Soong, counsel for Plaintiff, pursuant to Local Rule 7-3. On May 14, 2015, I contacted Mr. Soong via email informing him of Sanofi's intent to file a Motion to Dismiss and requesting an in-person meet and confer meeting. On May 29, 2015 Mr. Soong and I met and conferred in-person about Sanofi's Motion to Dismiss wherein we discussed Sanofi's position as to why all of Plaintiff's claims were untenable as a matter of law. I also asked Mr. Soong whether, at a minimum, Plaintiff would agree to dismiss Counts III-VI for Inadequate Warnings, Misrepresentation by Concealment, Breach of Express Warranty, and Breach of Implied Warranty.

4.      We were unable to informally resolve any issues addressed by Sanofi's Motion to Dismiss. Mr. Soong stated that, as it stands, Plaintiff would not voluntarily dismiss her action and that she has sufficiently and properly plead all of the counts in the FAC. Mr. Soong did advise however that he will perform additional research to ascertain whether any of the arguments I made had merit and that he might in fact dismiss the Warranty claims. I have not heard back from Mr. Soong since our May 29, 2015 meet and confer.

5.      On June 24, 2015 pursuant to *Fed. R. Civ. P.* 11(c)(2), I served the herein Motion on Plaintiff's Counsel Danny Soong via US Mail.

DEFENDANT SANOFI PASTEUR INC.'S MOTION FOR SANCTIONS UNDER *FED. R. CIV. P.* 11

6.     In accordance with the customary practice at Herzfeld & Rubin, I have maintained time records attributable to this litigation that show on a daily basis the time I spent (in tenths of an hour) and a description of each of the tasks that I performed.

7.      Our client is billed at the rate of $225.00 per hour for my time. As reflected by my time and hour descriptions, I have spent 21.5 researching in preparing Motion to Dismiss Complaint and another 15 hours researching and preparing Reply in Support of Motion to Dismiss Complaint. In addition, I have spent 18 hours researching and preparing this motion. I estimate that it will take at least another 13 hours of my time to review and analyze Plaintiff's opposition, prepare a reply brief and attend the hearing.  I will have therefore spent at least 31 hours bringing this motion and my client will incur at least $15,187.50 in attorneys' fees for my time.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 16, 2015 at Los Angeles, California.

/s/ Vadim Braslavsky
VADIM BRASLAVSKY

DEFENDANT SANOFI PASTEUR INC.'S MOTION FOR SANCTIONS UNDER *FED. R. CIV. P.* 11

1

**DECLARATION OF MICHAEL A. ZUK**

2       I, Michael A. Zuk, declare as follows:

3       1.      I am an attorney licensed to practice law in the State of California and

4  before this Court.  I am a partner at Herzfeld and Rubin LLP, attorneys of record for

5  Defendant Sanofi Pasteur Inc. ("Sanofi") in this action.  I have personal knowledge

6  of the matters set forth herein, and if called upon as a witness, I could and would

7  competently testify thereto.

8       2.      I am the attorney primarily responsible for representing Sanofi in this

9  matter.  I am, therefore, familiar with the pleadings and procedural history in this

10  matter.

11      3.      On April 9, 2015 I wrote to Plaintiff's counsel Danny Soong, informing

12  him that none of Plaintiff's claims set forth in the Complaint were tenable as a matter

13  of law in that they were all preempted, citing the *National Childhood Vaccine Injury*

14  *Act of 1986*, 42 U.S.C. §§300aa-1-33 and *Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068

15  (U.S. 2011). Having explained that there was no factual or legal basis for any of

16  Plaintiff's claims, I also asked Mr. Soong in this same letter to voluntarily dismiss

17  Plaintiff's claims against Sanofi. Mr. Soong did not respond. A true and correct copy

18  of my April 9, 2015 letter to Mr. Soong is attached hereto as Exhibit A and

19  incorporated by reference.

20      4.      On May 1, 2015, I wrote to Mr. Soong stating our position that, in view

21  of the Court's granting Sanofi's 12(b)(6) Motion to Dismiss in its entirety with leave

22  amend, any attempt to amend the Complaint would be frivolous, without any basis in

23  law or fact. Once again, I requested that Plaintiff to voluntarily dismiss her action

24  against Sanofi. I have not heard back from Mr. Soong. A true and correct copy of my

25

26

27

28

DEFENDANT SANOFI PASTEUR INC.'S MOTION FOR SANCTIONS UNDER *FED. R. CIV. P.* 11

May 1, 2015 letter to Mr. Soong is attached hereto as Exhibit B and incorporated by reference.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 16, 2015 at Los Angeles, California.

/s/ Michael A. Zuk
MICHAEL A. ZUK

4

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 1925 Century Park East, Suite 900, Los Angeles, California 90067.

On July 16, 2015, I served the foregoing document described as: **DEFENDANT SANOFI PASTEUR INC.'S NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER *FED. R. CIV. P.* 11 AND THE COURT'S INHERENT AUTHORITY; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF VADIM BRASLAVSKY IN SUPPORT THEREOF** on the interested parties in this action with a true and correct copy thereof as follows:

**See attached service list.**

☐ (MAIL) I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.

☐ (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express , an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

☐ (MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed and provided them to a professional messenger service for service. A separate Personal Proof of Service provided by the professional messenger service will be filed under separate cover.

☐ (FACSIMILE) Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☐   (E-MAIL or ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☑   (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

Executed on **July 16, 2015**, at Los Angeles, California.

_____       _____
        Jason Berger                          (Signature)
      (Type or print name)

*Mora vs. Sanofi Pasteur Inc.*
## SERVICE LIST

Danny Soong
LAW OFFICES OF DANNY SOONG
100 N. Barranca Street, Suite 700
West Covina, CA 91791
Telephone: (626) 858-2068
Fax: (626) 858-1922
Counsel for Plaintiff *Genesis Mora, a minor, by and through her Guardian Ad Litem, Lorena Mora*

**8**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | **CV 14-9549 FMO (ASx)** | Date | **October 19, 2015** |
|---|---|---|---|
| Title | **G.M. v. Sanofi Pasteur Inc., <u>et</u> <u>al.</u>** | | |

Present: The Honorable    Fernando M. Olguin, United States District Judge

| Vanessa Figueroa | None | None |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorney Present for Plaintiff(s):      Attorney Present for Defendant(s):

None Present          None Present

**Proceedings:**      **(In Chambers) Order Re: Supplemental Briefing**

Having reviewed and considered all the briefing filed with respect to defendant Sanofi Pasteur Inc.'s ("Sanofi" or "defendant"): (1) Motion to Dismiss Plaintiff's First Amended Complaint ("Dismissal Motion," Dkt. No. 28) and (2) Motion for Sanctions Under Fed. R. Civ. P. 11 and the Court's Inherent Authority ("Rule 11 Motion," Dkt. No. 33), the court believes that it would benefit from additional briefing.

Specifically, the court notes that the prescriptive information form, attached as Exhibit A to plaintiff's First Amended Complaint ("FAC," Dkt. No. 26), discloses post-approval adverse events of transverse myelitis. (<u>See</u> FAC, Exh. A at § 6.2). Section 6.2 of the prescriptive information form provides, "[t]he following events have been spontaneously reported during the post-approval use of Fluzone." (<u>Id.</u>). "Adverse events were included based on one or more of the following factors: severity, frequency of reporting, strength of evidence for a causal relationship to Fluzone." (<u>Id.</u>) Among other adverse events are "[nervous system disorders: Guillain-Barre syndrome (GBS), convulsions, febrile convulsions, myelitis (including encephalomyelitis and <u>transverse</u> <u>myelitis</u>), facial palsy. . . ." (<u>Id.</u>) (emphasis added).

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff and defendant shall each file, no later than **October 26, 2015**, a supplemental brief addressing whether each of plaintiff's six causes of action has been adequately pled in light of § 6.2 in the prescriptive information form. The supplemental brief shall not exceed eight (8) pages and shall be captioned, "[Party's] Supplemental Brief re Defendant's Motion to Dismiss."

2. Plaintiff and defendant may each file a response to the opposing party's supplemental brief, not to exceed three (3) pages, by **October 30, 2015.**

3. Additionally, the court is concerned that the parties did not adequately meet and confer regarding the Rule 11 Motion. <u>See</u> Local Rule 7-3. Accordingly, defendant's Rule 11 Motion (**Document No. 33**) is **denied without prejudice**. In the event defendant wishes to file another

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 14-9549 FMO (ASx) | Date | October 19, 2015 |
|---|---|---|---|
| Title | **G.M. v. Sanofi Pasteur Inc., et al.** | | |

motion to dismiss, then counsel for the parties shall, on **October 27, 2015, at 10:00 a.m.**[1] meet and confer in person at an agreed upon location within the Central District of California to discuss defendant's Rule 11 Motion.  In particular, the court encourages the parties to discuss what representations were made to the Vaccine Court regarding the Vaccine Act, 42 U.S.C. § 300aa-22(b)-(c).  See Sykes v. Glaxo-SmithKline, 484 F.Supp.2d 289, 304-05 (E.D. Pa. 2007) (holding that under § 300aa-22(c), failure to warn claims made directly to patient preempted; but failure to warn claims under § 300aa-22(b) were not preempted).  Defendant's motion must include copies of all meet and confer letters as well as a declaration that sets forth, in detail, the entire meet and confer process (i.e., when and where it took place, how long it lasted and the position of each attorney with respect to each disputed issue that will be the subject of the motion).  Failure to include such a declaration will result in the motion being denied.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | vdr | |

---

[1]  Counsel may agree to meet and confer at another time and place without seeking court approval for such an agreement.

FORM 30. Certificate of Service

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on  January 4, 2016
by:

        ☐ U.S. Mail

        ☐ Fax

        ☐ Hand

        ☒ Electronic Means (by E-mail or CM/ECF)

| Scott P. Dixler | /s/Scott P. Dixler |
|---|---|
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Law Firm | Horvitz & Levy LLP |
| Address | 15760 Ventura Boulevard, 18th Floor |
| City, State, Zip | Encino, California  91436-3029 |
| Telephone Number | (818) 995-0800 |
| Fax Number | (818) 995-3157 |
| E-Mail Address | sdixler@horvitzlevy.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

Reset Fields